**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, | § | |
| and on behalf of those similarly situated, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CASE NO.  8:08-CV-00166-T-27MAP** |
| **vs.** | § | |
| | § | |
| CENTEX HOMES, INC., A Florida | § | |
| Corporation | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendant Centex Homes, a Nevada General Partnership ("Centex Homes" or "the Company"), by and through its undersigned counsel and pursuant to 28 U.S.C. § 1404(a), respectfully requests that this Honorable Court transfer the instant case to the United States District Court for the Northern District of Texas, Dallas Division.  In support thereof, Defendant states as follows:

**I.     INTRODUCTION.**

Plaintiff Jason R. Odem ("Plaintiff") brought this collective action alleging that his employer, Centex Homes, violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime compensation to its employees.  Although Plaintiff filed his case in this District on behalf of himself and other alleged similarly situated current and former employees, the convenience of the parties and witnesses and the interest of justice compel a transfer to the United States District Court for the Northern District of Texas, Dallas

Division.  Indeed, that is where Centex Homes is headquartered, where voluminous documentary evidence is located, and where numerous key witnesses reside. Furthermore, the Northern District of Texas has a significantly less crowded docket than this district.  For the twelve month period ending September 30, 2007, 14,125 cases were filed in this district and 13,153 were pending, for an average per judgeship caseload of 877 cases.  In contrast, the Northern District of Texas had 5,312 cases filed and 3,888 were pending, for an average per judgeship caseload of 324 cases.  (<u>See</u> Section III. B., <u>supra</u>.)  Accordingly, Centex Homes respectfully moves to transfer venue of this case to the United States District Court for the Northern District of Texas, Dallas Division pursuant to 28 U.S.C. § 1404(a).

## II.     STATEMENT OF FACTS.

### A.     The Parties.

Centex Homes is a business specializing in homebuilding with operations in twenty (20) states and the District of Columbia.  (Exhibit 1 ¶ 3).  Centex Homes' headquarters and principal place of business are in Dallas, Texas.  (Exhibit 1 ¶¶ 2, 3, 4). Plaintiff worked for Centex Homes in Sarasota County, Florida.  (Compl. ¶ 1).  He alleges that Centex Homes violated the FLSA, 29 U.S.C. § 201 <u>et seq</u>., by failing to pay overtime for hours worked in excess of forty per week.  (Compl. ¶¶ 6, 7, 10).  Plaintiff further purports to bring this case as a collective action under 29 U.S.C. § 216(b) on behalf of "each and every salaried plus production bonus paid 'Field Manager' (or individual with identical job duties and responsibilities similarly titled) who worked for

the Defendant **nationwide** at any time within the past three (3) years." (Compl. ¶ 3) (emphasis in original).

### B.  Centex Homes Maintains Relevant Documents At Its Texas Headquarters.

Centex Homes' general human resources and pay policies and practices are developed by management and executive-level employees at the Texas corporate headquarters. (Exhibit 1 ¶ 6). Likewise, payroll records for the potential plaintiffs in this case are processed and kept in Texas, and paychecks are prepared and distributed from there as well. (Exhibit 1 ¶¶ 7, 8). Personnel files are likewise maintained at the corporate headquarters. (Exhibit 1 ¶ 7).

These records are extremely voluminous and would require a major and expensive undertaking to organize, copy, store, secure, transport back and forth, and efficiently provide for any hearing or trial in Tampa, Florida. (Exhibit 1 ¶ 9). Preparing such large volumes of documents for transportation, storing them in a secure off-site facility to protect confidential commercial and private information about the Company's employees, and generally making them available at a moment's notice, would significantly disrupt Centex Homes' business operations because of the expense, time, and personnel required to perform such tasks. (Exhibit 1 ¶ 9).

### C.  A Bulk Of Centex Homes' Key Witnesses Reside In Texas.

Centex Homes anticipates calling as witnesses many management- and executive-level corporate employees who are based at the Company's headquarters and reside in the Dallas area. (Exhibit 1 ¶¶ 10, 11). These individuals would be key witnesses to Plaintiff's and any potential opt-in plaintiffs' claims because, for example, they are

persons who: (a) develop and prepare the general expectations of employees; (b) calculate pay for employees; (c) process paychecks and payroll; and (d) maintain payroll records. (Exhibit 1 ¶ 10).

The Following is a list of ten (10) likely witnesses currently identified as working at the Company's headquarters and/or living in the Dallas area:

| NAME | TITLE |
| --- | --- |
| Penn King | Director of Executive Compensation |
| Cyndie Ewert | Director of Employee Services |
| Rachelle Mosier | Compensation Consultant |
| Chris Schmit | Director, Payroll Systems |
| Judy Hall | Director, Payroll |
| Lisa Bishop | Manager HRIS |
| Ken Garrett | Director of Construction Compliance |
| Mark Labriola | National Director of Safety |
| Doug Smith | Vice President Construction Services |
| Jeff Maroney | Construction Manager |

These ten (10) witnesses will be required to travel approximately 1,100 miles, or about seventeen hours by automobile, to attend trial in Tampa, Florida. (Exhibit 2). Having to travel to Tampa for hearings and a lengthy trial would keep these key witnesses away from their work and homes. Because many of the employee witnesses have vital responsibilities for the operation of the Company, scheduling time away from work will disrupt business operations because their responsibilities would have to be delegated to others, or simply not performed at all. (Exhibit 1 ¶¶ 12, 13).

## MEMORANDUM OF LAW

**III.    ARGUMENT.**

Under the transfer of venue statute, "a district court may transfer any civil action to any other district court or division where it might have been brought" for the "convenience of parties and witnesses," and "in the interest of justice."  28 U.S.C. § 1404(a).  Section 1404(a) was enacted as a "federal housekeeping measure, allowing easy change of venue within a unified federal system."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981).  Its purpose is "to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Am. Aircraft Sales Int'l, Inc., 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999).

In considering this motion under section 1404(a), the Court must determine: (a) whether the action could have been brought in Texas; (b) whether transfer of this action will be for the convenience of the parties and witnesses; and (c) whether transfer will be in the interest of justice.  See Central Money Mortg. Co., Inc. v. Holman, 122 F. Supp. 2d 1345, 1346 (M.D. Fla. 2000).

As explained fully below, Centex Homes satisfies its burden in that all of the statutory requisites for transfer to the Northern District of Texas are met and all relevant factors strongly favor transfer to that district.

### A.    Plaintiff Could Have Filed This Action In The Northern District Of Texas.

As a preliminary matter, under Section 1404(a), the transferee court must be one in which the case originally might have been brought.  28 U.S.C. § 1404(a).  Because the

FLSA provides the subject matter jurisdiction in this case, it could have been brought in any federal court of competent jurisdiction, which, for a corporation, is "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Jurisdiction and venue are proper where a party is incorporated, maintains its principal place of business and where a number of events giving rise to the complaint took place. Am. Aircraft, 55 F. Supp. 2d at 1351.

The Northern District of Texas's jurisdiction over Centex Homes is unquestionable. Centex Homes is headquartered within the Northern District of Texas and maintains its principal place of business there. See In re Horseshoe Entm't, 337 F.3d 429, 433 (5th Cir. 2003), cert. den., 540 U.S. 1049 (2003) (using location of corporation's principal office as a factor to establish proper venue in transferee court). Furthermore, the alleged pay policies and practices about which Plaintiff complains emanate from Centex Homes' corporate headquarters, and his paychecks were issued from there as well. (Exhibit 1 ¶¶ 6, 8). Thus, a number of events upon which Plaintiff bases his claim arose in the Northern District of Texas. Accordingly, Centex Homes clearly satisfies the first statutory element required for transfer of venue to the Northern District of Texas.

**B.    The Interest Of Justice Favors Transfer To Texas Because The Northern District of Texas Has A Less Crowded Docket.**

There is no question that transferring this case to the Northern District of Texas would serve the interest of justice. Consideration for costs, judicial economy, expeditious discovery, and trial process must be weighed in determining whether the interest of justice favors transfer. See Central Money, 122 F. Supp. at 1347 (citing Tingley Systems, Inc. v. Bay State HMO Mgt., 833 F. Supp. 882 (M.D. Fla. 1993)).

An important reason that the Court should transfer this case in the interest of justice is that the Northern District of Texas has a less crowded docket than this district. In Colorado Boxed Beef Company, this Court noted that this "is one of the busiest federal district courts in the nation." 2007 U.S. Dist. LEXIS 20749, *13 (M.D. Fla. Mar. 23, 2007). The Northern District of Texas has a less crowded docket than this district, and such consideration is relevant under a § 1404(a) transfer analysis. P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 808 (11th Cir. 2003). Statistics available on uscourts.gov show that for the twelve month period ending September 30, 2007, 14,125 cases were filed in this district and 13,153 were pending, for an average per judgeship caseload of 877 cases. (Exhibit 3). In the same time period, the Northern District of Texas had 5,312 cases filed and 3,888 were pending, for an average per judgeship caseload of 324 cases. (Exhibit 4). Thus, this district undoubtedly has a more crowded docket, which supports transferring this case to the Northern District of Texas.

Consequently, under 28 U.S.C. § 1404(a), the interest of justice clearly favors transferring this case to the Northern District of Texas.

**C.     Transferring This Action To The Northern District Of Texas Will Serve The Convenience Of The Parties And Witnesses.**

Factors affecting the convenience of parties and witnesses under 28 U.S.C. § 1404(a) strongly weigh in favor of transferring this case. Factors considered in determining whether transfer is appropriate for the convenience of parties and witnesses include:

> Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of

> relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive.

Am. Aircraft, 55 F. Supp. 2d at 1351; See also Roy v. Alliance Capital Mgmt. L.P., 2002

U.S. Dist. LEXIS 26660 *5 (M.D. Fla. Mar. 12, 2002).

> **1.** **The Court Should Give Little Weight To Plaintiff's Choice Of Forum In Balancing The Factors Affecting Whether A Transfer Of Venue Is Warranted.**

Ordinarily, there is a presumption favoring a plaintiff's choice of forum. Am. Aircraft, 55. F. Supp. 2d at 1351. However, "[w]here [as here] there are potentially hundreds . . . of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened." Ward, 2006 U.S. Dist. LEXIS 96846, at *6 (Exhibit 5) (quoting Dortch v. Financing Alternative, Inc., 2002 U.S. Dist. LEXIS 6875 (N.D. Ill. 2002) (citing Koster v. Lumbermens Mutual Casualty, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)). See also Barnett v. Alabama, 171 F. Supp. 2d 1292, 1297 (S.D. Ala. 2001) ("Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight accorded to [his] choice of forum is considerably reduced by virtue of the fact that [he] brought [his] challenge as a class action.").

Significantly, courts that have transferred similar FLSA collective actions to the district of an employer's headquarters fully agree that plaintiffs' choice to bring nationwide collective actions diminished the importance of any single plaintiff's choice of forum. See, e.g., Rowe v. Family Dollar, Inc., No. 1:03CV1737-LJM-WTL, slip op. at 1 (Exhibit 6) ("In this opt-in class action, more than the lead plaintiff's convenience must be considered. By choosing to pursue this matter as a class action, plaintiff's choice of

forum has lost its preference."); see also Broussard, 2006 U.S. Dist. LEXIS 6587, at *4-5 (Exhibit 7) ("plaintiff's choice of forum, while a factor to be considered, is neither conclusive nor determinative.") (citing In re Horseshoe Entm't, 337 F.3d at 434); Lucas v. Family Dollar Stores of Oklahoma, Inc., 2005 U.S. Dist. LEXIS 45521, at *7 (Exhibit 8) ("[B]ecause [plaintiff] is suing as a class representative, the Court finds that [plaintiff's] choice of forum is entitled to less deference"). In Ward, the court noted, "[i]n the current case, Plaintiffs' proposed collective action under the FLSA covers "all employees and former employees" who were employed as store managers. If notice is sent out pursuant to Plaintiffs' request, the case may generate thousands of opt-in plaintiffs from across the country." 2006 U.S. Dist. LEXIS 96846, at* 6. In this case, just like in Ward, "the natural epicenter for this nationwide collective action attacking [the employer] should be the Company's headquarters in [Texas], not [Tampa, Florida]." Id. at 6-7. Accordingly, Plaintiff's choice of forum is not entitled to significant weight in this Court's transfer analysis.[1]

## 2. The Cost Of Attendance And Convenience For Willing Witnesses Favors Transfer.

"This Court gives great weight to the convenience of the parties and witnesses." Am. Aircraft, 55 F. Supp. 2d at 1352. Federal courts have recognized that increased travel distances, travel expenses, and the disruption of work and home schedules all add to the cost of attendance for witnesses to appear for trial, and in this case, they weigh in

---

[1] Another reason that Plaintiff's choice of forum is not controlling is that current opt-in plaintiffs include persons who reside out-of-state in New Jersey (Milena Caterino), Georgia (Chad Boehne), and Maryland (Thomas McNish).

favor of transfer.  Courts will consider such facts and favor transfer to a forum where the

costs may be kept to a minimum.  The Fifth Circuit has reasoned:

> When the distance between an existing venue for trial of a
> matter and a proposed venue under § 1404(a) is more than 100
> miles, the factor of inconvenience to witnesses increases in
> direct relationship to the additional distance to be traveled.
> Additional distance means additional travel time; additional
> travel time increases the probability for meal and lodging
> expenses; and additional travel time with overnight stays
> increases the time which these fact witnesses must be away
> from their regular employment.  Furthermore, the task of
> scheduling fact witnesses so as to minimize the time when they
> are removed from their regular work and home responsibilities
> gets increasingly difficult and complicated when the travel time
> from the home or work site to the court facility is five or six
> hours one-way as opposed to 30 minutes or an hour.

In re Volkswagen AG, 371 F.3d 201, 204-05 (5th Cir. 2004) (citing Fed. R. Civ. P.

45(c)(2)); See also, Ward, 2006 U.S. Dist. LEXIS 96846, at *9 ("Transferring this case to

the Western District of North Carolina would save a considerable amount of resources

regarding travel for key corporate witnesses, the transportation of documents and other

evidence, and the avoidance of the disruption of work and home schedules of the

witnesses").

It is considerably more convenient to try the case in Texas.  Centex Homes'

corporate headquarters in Dallas are approximately 1,100 miles from Tampa. (Exhibit 2).

While a non-stop flight takes approximately 2 hours and 20 minutes (Exhibit 9), the time

needed to travel to the airport, check in, and navigate security will add several hours to

the trip.  Thus, travel to Tampa would cause a considerable burden to many witnesses

who have vital responsibilities for the operation of the Company.  Further, adding to the

burden these witnesses must bear is that they will have to endure this travel and the time

away from their personal lives and jobs.  Accordingly, the convenience of the witnesses compels transfer to the Northern District of Texas.

In addition to Centex Homes' executive witnesses who work and reside in Dallas, the Company faces the possibility of paying for the travel and expenses of countless other material witnesses who include trade vendors, subcontractors, and homeowners from potentially 600 neighborhoods in 20 different states and the District of Columbia encompassed by Plaintiff's purported nationwide collective action.  These persons would be able to provide a court with specific facts necessary for the individualized inquiry into each potential plaintiff's day-to-day activities that are the subject of this suit.  Witnesses expected to testify also include Centex Homes' Area Construction Managers ("Area Managers") and other Field Managers from across the country.  (Exhibit 1 ¶ 14). Transferring this action to Texas, where the Company has its headquarters and resources to provide discounted lodging and transportation, would significantly reduce costs. (Exhibit 1 ¶ 15).  Moreover, since Centex Homes' operations are spread across the country (e.g., from Hawaii and California in the West to New Jersey in the East) (Exhibit 1 ¶ 3), Dallas, Texas is conveniently located at the geographic center of Centex Homes' nationwide operations.

### 3.    Availability Of Compulsory Process To Secure Attendance Of Witnesses Balances In Favor Of Transfer.

The availability of compulsory process to secure the attendance of witnesses also tilts in favor of transfer.  A non-party can quash a subpoena for trial testimony if it requires the non-party to travel more than 100 miles to attend trial from where that person resides or regularly transacts business.  See FED. R. CIV. P. 45(c)(3).  At present, the

following three (3) former Centex Homes employees have information pertinent to Plaintiff's claims and continue to reside within the Dallas area within reach of a subpoena from the Northern District of Texas:

- Andrew Kerner, former Executive Vice President Operations Support;

- Michelle Rench, former Payroll Manager; and

- Steve Nellis, former Vice President Human Resources.

(Exhibit 1 ¶ 16). Each of these witnesses may have information related to Field Managers which pre-dates their predecessors noted in Section II. C. above. (Exhibit 1 ¶ 16). As a result, Plaintiff and possible opt-in plaintiffs wishing to subpoena such former company witnesses would clearly be better served prosecuting this case in Texas rather than in Florida. See Laffal v. Overseas Adventure Travel Partners, Inc., No. 3:99-CV-1113-J-21A, 2000 WL 362017, *2 (M.D. Fla. Mar. 31, 2000) ("It is reasonable to assume that non-employee witnesses would be greatly inconvenienced, and far less likely to appear voluntarily, if trial were held [far] from their home.").

### 4.    Ease Of Access To Sources Of Proof And The Location Of Relevant Documents Favors Transfer.

A bulk of the key documents and information are located in Texas, which further supports transfer of this case. It has been long held that the location of documentary evidence is an "important consideration" in the court's transfer analysis. Am. Aircraft, 55 F. Supp. 2d at 1353. Access to records and documents is more available to the Northern District of Texas, and thus the balance tilts towards transfer of this litigation. See Cortez v. First City Nat'l Bank, 735 F. Supp. 1021, 1024 (M.D. Fla. 1990) (granting motion to transfer venue and noting that relative ease of access to sources of proof is "an

important consideration" and that a corporation is assumed to maintain relevant documents and records at its principle place of business); <u>See</u> <u>also</u> <u>Moghaddam v. Dunkin Donuts, Inc.</u>, 2002 U.S. Dist. LEXIS 14952, *10 (S.D. Fla. 2002) ("Because the bulk of the relevant documents are located in [the transferee court], the Court finds that this factor clearly weighs in favor of transfer.").

Plaintiff alleges that Centex Homes failed to pay overtime wages. (Compl. ¶¶ 3, 6, 7, 10). He admits that "the records, to the extent any exist, concerning the number of hours worked and amounts paid to Plaintiff and other [sic] similarly situated to him, are in the possession and custody of Defendant." (Compl. ¶ 8). Plaintiff claims that Defendant's systems and practices relating to its non-payment of overtime have existed for at least the past three years. (Compl. ¶ 3). Events material to the allegations in this case include decisions affecting pay, duties and responsibilities of Field Managers across the country. The events and sources of proof are linked to general policies and payment procedures and records for more than 3,345 present and former Field Managers that are stored and maintained at Centex Homes' Texas headquarters. (Exhibit 1 ¶¶ 5, 6).

The personnel files, payroll records, general human resources and pay policies and practices, and job performance programs and practices for the Company are extremely voluminous. Preparing these documents for transportation and storing them in a secure off-site facility to protect their confidential commercial and private information about Centex Homes' employees, would cause a great disruption to Centex Homes' business operations because of the expense, time, and personnel required to perform such tasks. (Exhibit 1 ¶ 9). Consequently, the balance of factors favors transferring this case

to the Northern District of Texas to substantially lower the costs of providing access to these voluminous documents during the course of litigation and for hearings and trial.

As shown above, the relevant factors affecting the convenience of the parties and witnesses strongly support transferring this case to Dallas, Texas. Specifically, the (1) cost of attendance and convenience of witnesses, (2) the availability of compulsory process, and (3) the ease of access to sources of proof all fall heavily in favor of transferring this case and also certainly outweigh Plaintiff's original choice of forum. 28 U.S.C. § 1404(a). In fact, because there is no indication that Tampa, Florida would be more or equally convenient for the parties and witnesses in Plaintiff's collective action than Dallas, Texas, this case should be transferred to Texas – the natural epicenter for this action.

## IV.    CONCLUSION.

As shown above, the Statutory factors tilt heavily in favor or transferring this case notwithstanding Plaintiff's original choice of venue. For all of the above reasons, Defendant Centex Homes, a Nevada General Partnership, respectfully requests that this Honorable Court enter an Order: (1) granting this motion; and (2) transferring this action to the Dallas Division of the United States District Court for the Northern District of Texas.

**Rule 3.01(g) Certificate**

The undersigned hereby certifies that he conferred with counsel for Plaintiff in a good-faith effort to resolve the issues raised in the instant motion. Counsel for Plaintiff opposes the relief sought herein.

DATED: April 18, 2008.

Respectfully submitted,

LITTLER MENDELSON, P.C.
4767 New Broad Street
Orlando, Florida 32814
Telephone:    (407) 514-2637
Facsimile:    (407) 514-2638

BY:    */s/ Jeffrey B. Jones*
Jeffrey B. Jones, Esquire
Florida Bar No.: 0039950
jbjones@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, Texas 75201
Telephone:    (214) 880-8100
Facsimile:    (214) 880-0181

**OF COUNSEL:**
Steven R. McCown
Allan G. King
Jennifer Youpa

ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

On April 18, 2008, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Middle District of Florida, Tampa Division, using the electronic case files system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jeffrey B. Jones
Jeffrey B. Jones, Esquire

Firmwide:84825112.1 025155.1113

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § | |

**EXHIBIT 1**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

Declaration of Scott Richter dated April 17, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON R. ODEM, on his own behalf,
and on behalf of those similarly situated,

        Plaintiff,

v.

CENTEX HOMES, INC., A Florida
Corporation

        Defendant.

CASE NO.  8:08-CV-00166-T-27MAP

## DECLARATION OF SCOTT RICHTER

    I, Scott Richter, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on personal knowledge:

    1.     I am currently employed by Centex Homes, a Nevada General Partnership ("Centex Homes" or "the Company").  I began working for Centex Homes in 1986.  I was promoted to the Division President of the LA/Ventura Division in 1990, and was Division President of the Minnesota Division from 1996 through 2006. Most recently I served as Executive Vice President – Mid Central Region, which covered the company's operations in Colorado, Minnesota, Illinois and the St. Louis area.  I currently hold the position of Executive Vice President Operations Support.

    2.     As Executive Vice President Operations Support, I am familiar with almost every aspect of Centex Homes' nationwide operations.  In my position, I help plan and direct the general activities of all Centex Homes operations to meet or exceed our Company's goals related to homebuilding, sales, profitability, operating costs, and development.  I am familiar with the

Company's procedures related to human resources and the processing of payroll. My office is located at Centex Homes' corporate headquarters in Dallas, Texas, and I frequently travel to review, and obtain information about, our operations around the country.

3.      Centex Homes is a business specializing in homebuilding. Centex Homes operates approximately 600 neighborhoods in 20 states and the District of Columbia throughout the United States. Specifically, Centex Homes operates in Texas, Hawaii, California, Nevada, Arizona, New Mexico, Colorado, Minnesota, Missouri, Illinois, Indiana, Ohio, Michigan, Florida, Georgia, Tennessee, North Carolina, South Carolina, Virginia, New Jersey and the District of Columbia. Plaintiff's employment was with Centex Homes, a Nevada General Partnership. Centex Homes managing General Partner is Centex Real Estate Corporation, a Nevada Corporation whose principal place of business is in Dallas Texas. The other partners of Centex Homes are citizens of Delaware and Nevada and have their principal places of business in Nevada and Texas. Centex Homes does not have a partner who is a citizen of Florida.

4.      Centex Homes is headquartered in Dallas, Texas, which is located in Dallas County and within the Dallas-Fort Worth-Arlington metropolitan area.

5.      Based upon the size of the Company's operations, the number of potential present and former Centex Homes Field Managers nationwide from January 24, 2005 to the present may exceed 3,345 persons.

6.      Centex Homes' general human resources and pay policies and practices are developed by management and executive-level employees who work at the Company's headquarters. The policies and practices are general tools to help Field Managers make their business more profitable.

7.      Payroll records are processed and kept at Centex Homes' headquarters. Although

2

some of this information is computerized, some of it exists only in hard copy form and is stored at Centex Homes' Dallas-area headquarters. For example, hard copies of personnel action notices and employee evaluations are kept in hard copy form in the employee's personnel file. All such employee personnel files are kept at the Dallas headquarters.

8.      Employee paychecks are also prepared at, and distributed from, the Company's Dallas headquarters.

9.      If physically produced, the corporate documents and records, such as, payroll records, general human resources and pay policies and practices, for all of Centex Homes' Field Managers nationwide would be extremely voluminous and would require a major and expensive undertaking to organize, copy, store, secure, and transport outside of the Dallas area. Physically producing, transporting, storing, and securing such documents outside of the Dallas area would also disrupt Centex Homes' business operations because of the expense, time, and personnel required to perform such tasks.

10.     Witnesses who will likely be called to testify for the Company include Centex Homes management and executive-level employees who: (a) develop and prepare Centex Homes' pay policies and practices; (b) calculate or approve rates of pay for employees; (c) process paychecks and payroll; and (d) maintain payroll records. In addition, witnesses who may be called to testify include individuals who help oversee Field Manager operations for the Company. These witnesses generally work at the Company's headquarters.

11.     Such likely witnesses include the following persons, all of whom work at the Company's headquarters and/or live in the Dallas, Texas metropolitan area:

3

| NAME | TITLE |
|---|---|
| Penn King | Director of Executive Compensation |
| Cyndie Ewert | Director of Employee Services |
| Rachelle Mosier | Compensation Consultant |
| Chris Schmit | Director, Payroll Systems |
| Judy Hall | Director, Payroll |
| Lisa Bishop | Manager HRIS |
| Ken Garrett | Director of Construction Compliance |
| Mark Labriola | National Director of Safety |
| Doug Smith | Vice President Construction Services |
| Jeff Maroney | Construction Manager |

12.     These likely witnesses who reside in the Dallas area will be required to travel more than one thousand one hundred miles and 17 hours by automobile to attend trial if held in Tampa, Florida.

13.     Attendance at hearings and a lengthy trial in Tampa will require these key witnesses to be away from their work and homes, which would substantially disrupt Centex Homes' business operations and the personal schedules of the witnesses. Moreover, because these likely witnesses hold key responsibilities for the operation of the Company, scheduling time away from work would be difficult because their responsibilities would have to be

delegated to others, or simply not performed at all.

14.    Key witnesses expected to testify in this case would also include trade vendors, subcontractors, and homeowners from potentially 600 neighborhoods in 20 different states and the District of Columbia.  These persons would be able to provide the court with fact-specific, individualized information regarding particular Field Managers' day-to-day activities.  Witnesses expected to testify also include Centex Homes' Area Construction Managers ("Area Managers") and other Field Managers from across the country.  Field Managers report to the Company's Area Managers.

15.    Of course, if the Field Managers and Area Managers must leave their neighborhoods and areas to testify at a hearing or trial in Tampa, the business operations of their respective neighborhoods and areas would be disrupted because of the costs involved in accommodating the employees' absences from their neighborhoods and areas.  Although this is a cost that Centex Homes would bear regardless of the venue for trial, holding trial in the Dallas area would reduce those travel costs for Centex Homes for employees who do not reside in the Tampa area.  This is because Centex Homes has negotiated discount lodging rates at Dallas area hotels, there are numerous direct flights to many destinations from both Dallas-Fort Worth International Airport and Dallas Love Field, and because Centex Homes would not need to pay for the use of rental cars for many of its witnesses who could be transported by Centex Homes' personnel already working at the Company's headquarters.

16.    In addition to current Centex Homes' employees, there are several potentially important witnesses who reside in the Dallas area who are no longer employees of Centex Homes.  These employees include the former Executive Vice President Operations Support, Andrew Kerner, Payroll Manager, Michelle Rench, and Vice President Human Resources, Steve

5

Nellis. Each of these witnesses may have information regarding Field Managers which pre-dates

their predecessors noted above.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 4/17/08

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, | § | |
| and on behalf of those similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 8:08-CV-00166-T-27MAP |
| | § | |
| CENTEX HOMES, INC., A Florida | § | |
| Corporation, | § | |
| | § | |
| Defendant. | § | |

**EXHIBIT 2**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT THEREOF**

MapQuest Driving Directions from Dallas, Texas to Tampa, Florida

# MAPQUEST.

## A: Dallas, TX

| | | |
|---|---|---|
| **START** | **1:** Start out going NORTHEAST on FEDERAL ST toward N ERVAY ST. | 0.2 mi |
| | **2:** Turn RIGHT onto N HARWOOD ST. | 0.2 mi |
| | **3:** Keep RIGHT at the fork to continue on N HARWOOD ST. | 0.2 mi |
| | **4:** Turn LEFT onto COMMERCE ST. | 0.2 mi |
| RAMP | **5:** Turn SLIGHT LEFT to take the I-45 S ramp toward I-30. | 0.2 mi |
| EAST 30 | **6:** Merge onto I-30 E/US-67 N. | 6.5 mi |
| EAST 80 | **7:** Keep RIGHT to take US-80 E via EXIT 53B toward TERRELL. | 19.1 mi |
| EAST 557 | **8:** Take TX-557 SPUR E toward I-20 E/SHREVEPORT. | 3.7 mi |
| EXIT | **9:** Take the I-20 E exit. | 0.1 mi |
| EXIT | **10:** Take the exit. | 0.6 mi |
| EAST 20 | **11:** Merge onto I-20 E via the exit on the LEFT toward SHREVEPORT/TYLER (Passing through LOUISIANA, then crossing into MISSISSIPPI). | 372.2 mi |
| EXIT | **12:** Take the US-49 S exit, EXIT 47A, toward HATTIESBURG. | 0.5 mi |
| SOUTH 49 | **13:** Merge onto US-49 S via EXIT 47A toward RICHLAND/HATTISBURG. | 82.7 mi |
| SOUTH 59 | **14:** Merge onto I-59 S toward NEW ORLEANS/GULF COAST. | 8.1 mi |
| EAST 98 | **15:** Merge onto US-98 E via EXIT 59 toward LUCEDALE/MOBILE (Crossing into ALABAMA). | 87.1 mi |
| | **16:** Turn LEFT onto W I-65 SERVICE RD N. | 0.1 mi |
| SOUTH 65 | **17:** Merge onto I-65 S. | 5.4 mi |
| EAST 10 | **18:** Merge onto I-10 E via EXIT 0 on the LEFT toward FLORIDA (Crossing into FLORIDA). | 342.0 mi |
| SOUTH 75 | **19:** Merge onto I-75 S via EXIT 296A toward TAMPA. | 161.4 mi |

**20:** Merge onto I-275 S via EXIT 274 toward TAMPA/ST PETERSBURG.                    15.9 mi

**21:** Take EXIT 45A toward DOWNTOWN EAST-WEST.                    0.5 mi

**22:** Take the JEFFERSON ST ramp toward DOWNTOWN/EAST.                    0.2 mi

**23:** Turn SLIGHT LEFT onto N ORANGE AVE.                    0.2 mi

**24:** Turn RIGHT onto E TYLER ST.                    0.3 mi

**25:** Turn LEFT onto N TAMPA ST/US-41 BR S/FL-685 S. Continue to follow N TAMPA ST/US-41 BR S.                    0.3 mi

**26:** End at Tampa, FL

Estimated Time: 17.0 hours    Estimated Distance: 1108.06 miles

**B: Tampa, FL**

**Total Time: 17.0 hours    Total Distance: 1108.06 miles**

Directions and maps are informational only. We make no warranties on the accuracy of their content, road conditions or route usability or expeditiousness. You assume all risk of use. MapQuest and its suppliers shall not be liable to you for any loss or delay resulting from your use of MapQuest. Your use of MapQuest means you agree to our Terms of Use

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § | |

## EXHIBIT 3

**to**

## DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Judicial Caseload Profile for the Middle District of Florida

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **FLORIDA MIDDLE** | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 14,125 | 8,310 | 8,462 | 8,742 | 8,395 | 7,579 | U.S. | Circuit |
| | Terminations | 8,823 | 8,336 | 8,460 | 8,414 | 7,545 | 8,095 | | |
| | Pending | 13,153 | 6,631 | 6,613 | 6,607 | 6,413 | 5,596 | | |
| | % Change in Total Filings — Over Last Year | 70.0 | | | | | | 1 | 1 |
| | % Change in Total Filings — Over Earlier Years | | 66.9 | 61.6 | 68.3 | 86.4 | | 2 | 1 |
| | Number of Judgeships | 15 | 15 | 15 | 15 | 15 | 15 | | |
| | Vacant Judgeship Months** | 4.5 | 3.8 | .0 | 9.4 | .0 | 11.4 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 942 | 554 | 564 | 583 | 559 | 505 | 2 | 1 |
| | FILINGS — Civil | 844 | 449 | 467 | 484 | 459 | 421 | 3 | 1 |
| | FILINGS — Criminal Felony | 74 | 80 | 75 | 78 | 82 | 68 | 43 | 5 |
| | FILINGS — Supervised Release Hearings** | 24 | 25 | 22 | 21 | 18 | 16 | 46 | 4 |
| | Pending Cases | 877 | 442 | 441 | 440 | 428 | 373 | 8 | 1 |
| | Weighted Filings** | 569 | 559 | 598 | 634 | 621 | 534 | 10 | 2 |
| | Terminations | 588 | 556 | 564 | 561 | 503 | 540 | 11 | 1 |
| | Trials Completed | 21 | 18 | 21 | 24 | 25 | 23 | 43 | 8 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 7.3 | 7.1 | 7.1 | 7.3 | 7.0 | 7.1 | 30 | 4 |
| | From Filing to Disposition — Civil** | 6.8 | 8.6 | 8.3 | 8.7 | 8.0 | 10.4 | 12 | 3 |
| | From Filing to Trial** (Civil Only) | 19.0 | 19.2 | 20.0 | 20.2 | 20.2 | 19.3 | 18 | 4 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 107 | 135 | 81 | 49 | 74 | 116 | | |
| | Civil Cases Over 3 Years Old** — Percentage | .9 | 2.5 | 1.5 | .9 | 1.4 | 2.5 | 5 | 1 |
| | Average Number of Felony Defendants Filed Per Case | 1.4 | 1.5 | 1.6 | 1.5 | 1.5 | 1.5 | | |
| | Jurors — Avg. Present for Jury Selection | 35.34 | 35.46 | 35.26 | 33.55 | 40.29 | 34.96 | | |
| | Jurors — Percent Not Selected or Challenged | 31.5 | 28.7 | 28.5 | 30.4 | 40.5 | 34.4 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 12660 | 547 | 6228 | 1803 | 125 | 93 | 1175 | 699 | 378 | 306 | 792 | 6 | 508 |
| Criminal* | 1091 | 44 | 331 | 250 | 120 | 134 | 18 | 75 | 15 | 51 | 20 | 12 | 21 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § |
| Plaintiff, | § § |
| vs. | § CASE NO. 8:08-CV-00166-T-27MAP § |
| CENTEX HOMES, INC., A Florida Corporation, | § § § |
| Defendant. | § § |

**EXHIBIT 4**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Judicial Caseload Profile for the Northern District of Texas

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **TEXAS NORTHERN** | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 5,312 | 5,646 | 5,895 | 6,560 | 6,985 | 6,591 | | |
| | Terminations | 5,580 | 5,745 | 6,179 | 7,191 | 6,111 | 6,413 | | |
| | Pending | 3,888 | 4,326 | 4,390 | 4,686 | 5,455 | 4,496 | | |
| | % Change in Total Filings — Over Last Year | | -5.9 | | | | | 67 | 8 |
| | % Change in Total Filings — Over Earlier Years | | | -9.9 | -19.0 | -24.0 | -19.4 | 75 | 7 |
| Number of Judgeships | | 12 | 12 | 12 | 12 | 12 | 12 | | |
| Vacant Judgeship Months** | | .0 | .0 | .0 | 8.5 | 2.4 | 18.4 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 443 | 470 | 491 | 547 | 582 | 549 | 40 | 6 |
| | FILINGS — Civil | 351 | 376 | 399 | 452 | 479 | 462 | 35 | 5 |
| | FILINGS — Criminal Felony | 69 | 64 | 61 | 66 | 78 | 64 | 50 | 5 |
| | FILINGS — Supervised Release Hearings** | 23 | 30 | 31 | 29 | 25 | 23 | 49 | 4 |
| | Pending Cases | 324 | 361 | 366 | 391 | 455 | 375 | 61 | 9 |
| | Weighted Filings** | 470 | 493 | 495 | 548 | 581 | 520 | 37 | 6 |
| | Terminations | 465 | 479 | 515 | 599 | 509 | 534 | 36 | 6 |
| | Trials Completed | 19 | 24 | 29 | 28 | 27 | 24 | 51 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 6.9 | 7.2 | 7.1 | 6.7 | 5.9 | 6.3 | 23 | 3 |
| | From Filing to Disposition — Civil** | 6.8 | 7.4 | 8.6 | 7.4 | 7.2 | 6.6 | 12 | 2 |
| | From Filing to Trial** (Civil Only) | 19.4 | 20.0 | 20.7 | 21.7 | 18.6 | 18.7 | 20 | 3 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 42 | 146 | 49 | 29 | 126 | 69 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 1.4 | 4.3 | 1.4 | .8 | 2.8 | 1.8 | 8 | 1 |
| | Average Number of Felony Defendants Filed Per Case | 1.5 | 1.5 | 1.6 | 1.5 | 1.5 | 1.7 | | |
| | Jurors — Avg. Present for Jury Selection | 43.20 | 39.54 | 40.42 | 51.06 | 50.46 | 56.30 | | |
| | Jurors — Percent Not Selected or Challenged | 40.2 | 36.2 | 34.8 | 43.9 | 54.9 | 54.1 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 4213 | 165 | 101 | 1665 | 79 | 59 | 173 | 524 | 212 | 232 | 559 | 2 | 442 |
| Criminal* | 815 | 13 | 116 | 146 | 126 | 199 | 65 | 36 | 28 | 32 | 17 | 8 | 29 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf,<br>and on behalf of those similarly situated, | §<br>§<br>§ | |
| Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida<br>Corporation, | §<br>§<br>§ | |
| Defendant. | §<br>§ | |

## EXHIBIT 5

### to

## DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

*Ward v. Family Dollar Stores, Inc.*, 2006 U.S. Dist. LEXIS 96846
(N.D. Ala. Sept. 29, 2006)

LEXSEE 2006 US DIST LEXIS 96846



Cited
As of: Apr 17, 2008

**SHAWN ERIC WARD, et al., Plaintiffs, vs. FAMILY DOLLAR STORES, INC., Defendant.**

**CV-06-CO-01060-W**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, WESTERN DIVISION**

*2006 U.S. Dist. LEXIS 96846*

**September 29, 2006, Decided**
**September 29, 2006, Filed**

**COUNSEL:** [*1] For Shawn Eric Ward, on behalf of himself and others similarly situated, Isaiah Raheem Wilder, on behalf of himself and others similarly situated, Augusta Ayers, on behalf of himself and others similarly situated, Christopher Anderson, on behalf of himself and others similarly situated, Phillip W. Mitchell, Plaintiffs: Gregory O Wiggins, Herman N Johnson, Jr, LEAD ATTORNEYS, WIGGINS CHILDS QUINN & PANTAZIS, Birmingham, AL; J Allen Schreiber, P Mark Petro, LEAD ATTORNEYS, SCHREIBER & PETRO PC, Birmingham, AL.

For Family Dollar Stores, Inc., Defendant: James N Boudreau LEAD ATTORNEY, LITTLER MENDELSON PC, Philadelphia, PA; Jerry Howard Walters, Jr, LEAD ATTORNEY, LITTLE MENDELSON, P.C., Charotte, NC; John A Ybarra, LEAD ATTORNEY, LITTLER MENDELSON PC, Chicago, IL; Terry Price, LEAD ATTORNEY, FORD & HARRISON LLP, Birmingham, AL.

**JUDGES:** L. SCOTT COOGLER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** L. SCOTT COOGLER

**OPINION**

OPINION & ORDER

The Court has for consideration Defendant Family Dollar Stores, Inc.'s (Family Dollar's) Motion for Transfer (Doc. 11), filed on June 19, 2006. Plaintiffs filed the current action on June 1, 2006, alleging that Family Dollar willfully and intentionally failed to pay overtime to managerial [*2] employees who worked more than forty hours per week in violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.* (Doc. 1, P 8.) Plaintiffs submit that this case should be treated as a "collective action" under *29 U.S.C. § 216(b)* on behalf of themselves and other similarly situated managers of Family Dollar stores nationwide. *Id.* at P 7. Defendant submits to the Court that this case should be transferred to the United States District Court for the Western District of North Carolina pursuant to *28 U.S.C. § 1404(a)* ("*§ 1404(a)*") for the convenience of the witnesses and parties, it would serve the interests of justice, many of the related documents and accounting records are located in North Carolina, and because it would be in the public interest. (Doc. 11.)

"The decision to transfer a case to another district is left to the sound discretion of the trial court." *Brown v. Connecticut General Life Ins. Co., 934 F.2d 1196, 1197 (11th Cir. 1991)* (quoting *Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981), cert. denied, 456 U.S. 918, 102 S. Ct. 1775, 72 L. Ed. 2d 178 (1982)*). Section 1404(a) governs the transfer of civil actions from one district court to another: "For the convenience of parties and witnesses, [*3] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a).* The purpose of *1404(a)* is "to prevent avoidable waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconven-

ience and expense." *Lemke v. St. Margaret Hospital, 594 F. Supp. 25, 27 (N.D. Ill. 1983).*

A court's analysis of a *§ 1404(a)* motion to transfer involves a two-step inquiry. "First, the court must determine whether the actions could 'originally have been brought in the proposed transferee district court;' then, the court must determine whether the action should be transferred 'for the convenience of the parties [and] in the interest of justice.'" *C.M.B. Foods, Inc. v. Corral of Middle Georgia, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005)* (quoting *Folkes v. Haley, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999)*) (internal citations omitted). Therefore, the threshold question is whether Plaintiffs could have initiated this action in the United States District Court for the Western District of North Carolina, and there does not appear to be any question that Plaintiffs could [*4] have brought this suit against Family Dollar in that court. Because the FLSA is the basis for the Court's subject matter jurisdiction in this case, Plaintiffs could have filed their lawsuit in any federal court of competent jurisdiction. For a corporation, this means "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *28 U.S.C. § 1391(c).* Family Dollar is headquartered within the Western District of North Carolina; therefore, it "resides" there for personal jurisdiction purposes. *See also In re Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir. 2003), cert. denied, 540 U.S. 1049, 124 S. Ct. 826, 157 L. Ed. 2d 698 (2203)* (holding that the location of a corporation's principal office is a permissible factor in establishing proper venue in a transferee court).

After determining that the case could have been brought in the United States District Court for the Western District of North Carolina, this Court "must determine whether the interests of justice would be served by a transfer of venue." *First Federal Savings & Loan v. Berger, 672 F. Supp. 1454, 1456-57 (M.D. Ga. 1987)* (citing *Dove v. Massachusetts Mutual Life Ins. Co., 509 F. Supp. 248, 250 (S.D. Ga. 1981)*). [*5] In making this determination, courts generally consider the following factors: "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system." *Gould v. National Life Ins. Co., 990 F. Supp. 1354, 1357 (M.D. Ala. 1998).* However, it is the burden of the moving party to demonstrate that the "balance of the *1404(a)* interests favors transfer." *First Federal Savings, 672 F. Supp. at 1457; see also Martin v. South Carolina Bank, 811 F. Supp. 679, 683 (M.D. Ga. 1992).*

While "some initial weight must be given to [Plaintiffs'] choice of forum," the Court must give equal weight if Defendant is able to show: "(1) the witnesses who would be inconvenienced are key witnesses and their testimony cannot be effectively presented by depositions; and (2) [that] other actions invoking the same or substantially similar subject matter are pending in the transferee district." *First Federal Savings, 672 F. Supp. at 1457.* [*6] Also, "[w]here there are potentially hundreds, if not thousands of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened." *Dortch v. Financing Alternative, Inc., 2002 U.S. Dist. LEXIS 6875, 2002 WL 598518, at *2 (N.D. Ill. April 17, 2002)* (citing *Koster v. Lumbermens Mutual Casualty, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947)*); *see also Barnett v. Alabama, 171 F. Supp. 2d 1292, 1297 (S.D. Ala. 2001)* ("Although a plaintiff's choice of forum generally should not be lightly disturbed, the weight accorded to [his] choice of forum is considerably reduced by virtue of the fact that he brought his challenge as a class action.").

In the current case, Plaintiffs' proposed collective action under the FLSA covers "all employees and former employees" who were employed as store managers. (Doc. 1, P 8.) Defendants contend that the class would potentially include more than 15,000 present and former Family Dollar managerial employees in approximately 6,080 stores in 44 states and the District of Columbia. (Doc. 12, p. 6.) If notice is sent out pursuant to Plaintiffs' request, the case may generate thousands of opt-in plaintiffs from across the country. *Id.* Therefore, Defendants believe that "the [*7] natural epicenter for this nationwide collective action attacking Family Dollar should be the Company's corporate headquarters in North Carolina - not Birmingham, Alabama, where only *eleven* Family Dollar Stores are located." (Doc. 12, p. 7.) Plaintiffs respond that although the management of Family Dollar stores is centralized in the Store Operations Department, the department is run through a set of managers located throughout the United States. (Doc. 19, p. 8.) Plaintiffs also focus on the nine individual plaintiffs currently in the case, eight of whom live in Alabama, and the ninth lives in Florida. *Id.* at 9. However, as stated above, due to the fact that there may be thousands of opt-in plaintiffs, the original choice of forum is not entitled to the same level of deference as it would be if this was not an FLSA collective action. *Dortch, 2002 U.S. Dist. LEXIS 6875, 2002 WL 598518, at *2.* [1]

1    Moreover, at a hearing held in Tuscaloosa, Alabama, on August 23, 2006, counsel for defendant stated on the record that his client would agree to a tolling agreement which will allow Plaintiffs to refile their individual cases in this Court using the date they filed this case for the

purposes of the statute of limitations. [*8] (Tr. at 38-39, 52-53.) This Court recognized the fact that if the Western District of North Carolina does not treat this case as a collective action it would be "ridiculous" to have eight plaintiffs from Alabama litigating claims in North Carolina, but this has been cured by Defendant agreeing to toll the statute of limitations such that Plaintiffs can dismiss their action in North Carolina and refile their individual claims in this Court.

Defendant has identified approximately thirty-seven employee witnesses that will be called to testify who currently work out of the corporate headquarters in North Carolina. "[W]hen considering the practical need to adjudicate in a forum convenient for the parties and material witnesses, courts generally examine the location of principal material witnesses, 'the relative ease of access to sources of proof,' and the ability of the parties to bear the expense of changing the forum." *A.J. Taft Coal Co., Inc. v. Barnhart, 291 F. Supp. 2d 1290, 1311 (N.D. Ala. 2003)* (quoting *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)*). If the case is not transferred, these witnesses would be required to travel approximately three hundred and ninety miles to attend [*9] trial in Tuscaloosa, Alabama. Transferring this case to the Western District of North Carolina would save a considerable amount of resources regarding travel for key corporate witnesses, the transportation of documents and other evidence, and the avoidance of the disruption of work and home schedules of the witnesses.

A "persuasive reason for transferring [an] action is that a related action involving the same issues is currently pending in the [transferee court]." *Mirasco, Inc. v. American National Fire Ins. Co., 2000 U.S. Dist. LEXIS 19461, at *15 (N.D. Ga. July 5, 2000)*. Transferring a case to a court in which a case involving substantially similar facts is currently pending "promote[s] judicial economy by preventing the duplication of judicial effort and avoiding the possibility of inconsistent results." *Id.* In *Martin,* the district court determined that although a "plaintiff's choice of forum is entitled to deference, it is not a more important factor than the presence of related proceedings in the transferee district." *Martin, 811 F. Supp. at 686.* On July 14, 2006, Judge W. Louis Sands, Chief Judge of the United States District Court for the Middle District of Georgia, transferred [*10] a case factually similar to the one at bar to the Western District of North Carolina. *Grace v. Family Dollar Stores, Inc., 6:04-CV-22 (WLS) (Doc. 91), 2006 U.S. Dist. LEXIS 96854 (M.D. Ga. July 14, 2006).* [2] The very same law firm represents the plaintiffs in both *Grace* and this case. Therefore, they will have to travel to North Carolina to conduct depositions, attend hearings, examine physical evidence, and attend trial regardless of whether this case

is transferred to that district. For these reasons, the Court's deference to Plaintiffs's choice of forum is "considerably weakened." *Dortch, 2002 U.S. Dist. LEXIS 6875, 2002 WL 598518, at *2.*

    2   Judge Sands denied Plaintiffs' motion for reconsideration on August 15, 2006. *Id.* at Doc. 96.

The Court is also of the opinion that the interests of justice favor transfer to the Western District of North Carolina. As stated above, at least one other case is currently pending before that Court which involves substantially similar facts, the same attorneys, and the very same witnesses and physical evidence. *See Grace, 6:04-CV-22 (WLS), 2006 U.S. Dist. LEXIS 96854.* "Indeed, *Section 1404(a),* was [*11] 'designed to prevent' situations 'in which two cases involving precisely the same issues are simultaneously pending in different district courts.'" *Grace, 6:04-CV-22 (WLS), 2006 U.S. Dist. LEXIS 96854 at *6* (quoting *Ferens v. John Deere Co., 494 U.S. 516, 531, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990)*). To proceed with simultaneous cases in two different courts "would unnecessarily lead to 'the wastefulness of time, energy and money.'" *Id.* Accordingly, the pendency of similar or related actions in a transferee venue will often be the most compelling reason for a court to transfer a case. *See, e.g., Martin, 811 F. Supp. at 685-86* (". . . the most compelling reason for transfer is that there are related proceedings pending in the Northern District of Alabama."). Transferring the current case to the Western District of North Carolina "would promote uniformity of results, avoid duplicative court proceedings, and would be in the best interest of efficiency and justice." *Lucas v. Family Dollar Stores of Oklahoma, Inc., CIV-04-536-M, 2005 U.S. Dist. LEXIS 45521, at *10-11 (W.D. Okla. March 14, 2005)* (transferring the case to the Western District of North Carolina). Perhaps most importantly, it would prevent Plaintiffs from obtaining a "second bite" at class notice and certification if [*12] it is denied by the Western District of North Carolina. [3]

    3   At the hearing, Plaintiffs' counsel stated on the record that "if the court in North Carolina does what we expect it to do, deny notice, we would certainly probably move this court for notice . . . ." (Tr. at 35.) This is exactly the type of forum shopping that can be prevented by transferring a case to another district under *§ 1404(a).* It would waste judicial resources to allow Plaintiffs to pursue parallel paths to class notice and certification simply because they believe that their chances of success are greater in the Eleventh Circuit than they are in the Fourth Circuit.

Accordingly, Defendant's motion to transfer (Doc. 11) is GRANTED. The Clerk of Court is hereby directed

2006 U.S. Dist. LEXIS 96846, *

to TRANSFER this case to the United States District Court for the Western District of North Carolina.

Done this 29th day of September 2006.

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § | |

**EXHIBIT 6**

to

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT THEREOF**

*Rowe v. Family Dollar, Inc.*, No. 1:03CV1737-LJM-WTL, slip opinion
(S.D. Ind. Jan. 26, 2004)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DENNIS S. ROWE, SR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:03-cv-1737-LJM-WTL |
| | ) | |
| FAMILY DOLLAR, INC., | ) | |
| Defendant. | ) | |

<u>ORDER</u>

Pending before this Court is defendant's Motion to Change Venue to North Carolina, the

corporate headquarters of defendant.  Rowe has filed this action alleging that Family Dollar has

failed to properly pay overtime in violation of 29 U.S.C. 201.  The matter has been brought as a

Class Action which severely impacts the analysis of the venue.  In any venue analysis the Court must

consider the plaintiff's choice of forum, the convenience of the witnesses and the parties, and the

sites of the material events and relative access to sources of proof.  Public interests are also

implicated.

Ordinarily, the plaintiff's choice of forum is given some deference.  When the request for

class certification is included, the deference to plaintiff's choice must yield to other considerations.

Family Dollar has a multitude of stores in 43 states.  In this opt-in class action more than the lead

plaintiff's convenience must be considered.  By choosing to pursue this matter as a class action,

plaintiff's choice of forum has lost it's preference.

The witnesses who made the allegedly unlawful decisions on payroll will all be in North

Carolina. The records that reflect those decisions will be in North Carolina.  Most, if not all, of the

documentary evidence will be at the corporate headquarters.  A substantial number of depositions

of corporate officials is in the offing.  A trial in North Carolina will most certainly be less disruptive to the operation of defendant's business.  These factors all weigh heavily for venue to be changed to North Carolina.

The public interests do not out-weigh these private interests.  There is no presumption that a local North Carolina jury cannot be fair just because the defendant's corporate headquarters are there.  Certainly the appropriate North Carolina Federal Court can manage the case in as efficient a manner as this Court.

Defendant has met its burden of showing that both public and private interests will be served by the transference of this class action to the Western District of North Carolina.  For all the reasons outlined above, the defendant's Motion for Change of Venue is GRANTED and this cause is now ordered transferred to the Western District of North Carolina.

IT IS SO ORDERED this 26th day of January, 2004.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Ronald E. Weldy
ABRAMS & WELDY
weldy@abramsweldy.com

Amy Joan Adolay
KRIEG DEVAULT
aadolay@kdlegal.com

Elizabeth Gardner Russell
KRIEG DEVAULT
egr@kdlegal.com

2

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § | |

**EXHIBIT 7**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED**
<u>**MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

*Broussard v. Family Dollar Store, Inc.*, 2006 U.S. Dist. LEXIS 6587
(W.D. La. Jan. 31, 2006)

LEXSEE 2006 U.S. DIST. LEXIS 6587



Cited
As of: Apr 17, 2008

**DORA BROUSSARD, on behalf of herself and all others similarly situated VERSUS FAMILY DOLLAR STORE, INC., et al**

**CIVIL ACTION NO. 05-0892**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA, LAFAYETTE DIVISION**

*2006 U.S. Dist. LEXIS 6587*

**January 31, 2006, Decided**

**COUNSEL:** [*1] For Dora Broussard, on behalf of herself and all others similarly situated, Plaintiff: L Clayton Burgess, Brenda B Maturin, Law Office of L Clayton Burgess, Lafayette, LA.

For Family Dollar Stores Inc, Family Dollar Stores of Louisiana Inc, Defendants: Gregory Guidry, Onebane Law Firm, Lafayette, LA; John A Ybarra, Littler Mendleson, Chicago, IL; Yvette V Gatling, Littler Mendelson, Houston, TX.

**JUDGES:** REBECCA F. DOHERTY, UNITED STATES DISTRICT JUDGE. MAGISTRATE JUDGE HILL.

**OPINION BY:** REBECCA F. DOHERTY

**OPINION**

**RULING**

Before this Court is defendant's Motion to Transfer Venue [Doc. # 6], pursuant to *28 U.S.C. § 1404(a)*, wherein defendant seeks to transfer the above-entitled case to the Western District of North Carolina. Plaintiff opposes the motion. All briefing has now been completed and the motion has been taken under advisement.

Plaintiff Dora Broussard filed this suit against her former employer, Family Dollar Stores, Inc. Plaintiff, who resides in Lafayette, Louisiana, was employed by Family Dollar as a Store Manager in Lafayette. [1] In the Complaint, plaintiff alleges that Family Dollar willfully and intentionally failed to pay overtime for managerial

[*2] employees who worked fifty (50) to ninety (90) hours a week, in violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.* [2] Plaintiff purports to bring this matter as a "collective action, as authorized by *29 U.S.C. § 216(b)*," on behalf of herself and other similarly situated managerial employees of Family Dollar. [3] Family Dollar now moves the Court to transfer this action, pursuant to *28 U.S.C. § 1404(a)*, to the United States District Court for the Western District of North Carolina, Charlotte Division, where Family Dollar is headquartered and where four (4) opt-in FLSA cases making essentially the same claim have been transferred.

> 1  Plaintiff's Complaint, PP3, 11, 13.
> 2  Plaintiff's Complaint, PP4, 8, 15.
> 3  Plaintiff's Complaint, P5.

*28 U.S.C. § 1404(a)* provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil [*3] action to any other district or division where it might have been brought." Congress enacted this provision as a "federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft v. Reyno, 454 U.S. 235, 254, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1991)* (internal quotations omitted). The purpose of *28 U.S.C. § 1404(a)* is "to prevent the waste of time, energy and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)* (citing *Continental Grain Co., v. Barge F.B.L., 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)*) (internal quotations omitted). The decision

2006 U.S. Dist. LEXIS 6587, *

to transfer is within the sound discretion of the district court, determined by an individualized, case-by-case consideration of convenience and fairness. *Stewart Org v. Ricoh Corporation, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988).*

Courts must perform a two-prong analysis before granting a motion to transfer venue. The first inquiry is whether the proposed transferring district is one in which the action originally could have been brought. The second inquiry is whether the transfer of venue [*4] will serve the convenience of the parties and the interests of justice. In *In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).* In the Fifth Circuit, a determination of "'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." Id. Private concerns include:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*Id.* Public factors include:
> (1) the administrative difficulties from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.*

Typically, great weight is given to plaintiff's choice of forum. *Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir. 1966).* However, plaintiff's choice of forum, while a factor to be considered, [*5] is neither conclusive nor determinative. *In re Horseshoe Entertainment, 337 F.3d 429, 434 (5th Cir. 2003).* Moreover, federal courts have long recognized that, "where there are potentially hundreds, if not thousands, of plaintiffs from many different states, deference to the plaintiffs' chosen forum is considerably weakened." *Koster v. Lumberman Mutual Casualty, 330 U.S. 518, 524, 67 S. Ct. 828, 91 L. Ed. 1067 (1947).* Although the Fifth Circuit has not addressed the issue to this Court's knowledge, other courts have given significantly less deference to plaintiff's choice of forum when a plaintiff sues derivatively or is a class representative or when the causes of action did not

conclusively arise within the forum. *See e.g. Countryman on Behalf of Upstate New York Pension and Retirement Fund v. Stein, Roe & Farnham, 681 F. Supp 479, 482-483 (N.D. Ill. 1987)* (citing Koster);*Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997).*

In the instant matter, defendant argues this action should be transferred to the Western District of North Carolina because: (1) the action could have originally been brought in that district; [*6] (2) plaintiff's choice of forum should be given no weight due to the fact that she has alleged a nationwide collective action under the FLSA involving defendant's 6,523 stores in 44 states and the District of Columbia; (3) witnesses expected to testify on defendant's behalf include management and executive-level employees who are based at defendant's headquarters and reside in North Carolina; (4) transportation and lodging of out-of-state employee witnesses would be more convenient in Charlotte, North Carolina than in Lafayette, Louisiana; (5) potential plaintiffs are more likely to come from North Carolina than from Louisiana due to the fact that Family Dollar operates 313 stores in North Carolina, as opposed to 214 stores in Louisiana; (6) several former managerial employees of Family Stores reside in North Carolina and would not be subject to compulsory process in Louisiana; (7) material events and sources of proof are centered at defendant's headquarters in North Carolina; (8) the Western District of North Carolina has a smaller and faster moving civil docket; and (9) prior FLSA collection actions against Family Dollar Stores making essentially the same claims have been transferred [*7] to the Western District of North Carolina and, therefore, that court is familiar with this litigation.

Plaintiff does not dispute that this action could have been brought in the Western District of North Carolina. Rather, plaintiff counters that: (1) certification as a collective action should be decided before transfer; (2) plaintiff's choice of forum should not be disturbed; (3) transferring this case would inconvenience plaintiffs, and "defendants are scattered throughout the country anyway;" [4] (presumably, plaintiff will have numerous witnesses who live in this district and, therefore, it is no more convenient to litigate this matter in North Carolina than in Louisiana); (4) defendant's argument regarding ease of access to documents should be disregarded because plaintiff believes that most of the documents are stored electronically; (5) the majority of the conduct at issue occurred across the country and not in North Carolina; and (7) a transfer of this matter to North Carolina will result in delay and prejudice because, to plaintiff's knowledge, the other collective actions' allegations have not been addressed by the North Carolina court.

4  Plaintiff's opposition brief, page 12.

[*8] This Court finds that in the instant matter, the witnesses who made the allegedly unlawful decisions regarding payroll are located in North Carolina; the records that reflect those decisions are in North Carolina as well. The issues involved in this case are not unique to Louisiana, but rather, are corporate-wide decisions. Most, if not all, of the relevant documentary evidence is likely located at Family Dollar's corporate headquarters in North Carolina. It appears the vast majority of witnesses reside in North Carolina, and defendant has adequately shown that the testimony of these witnesses will be necessary to its case. A trial in North Carolina will be less destructive to the operations of defendant's business than requiring all of defendant's witnesses to attend trial in Louisiana. Finally, there are hundreds, if not thousands, of potential plaintiffs to this action. This Court cannot say that this forum, rather than North Carolina, would be more convenient for these plaintiffs and their witnesses. There may be no one convenient forum for *all* of the potential plaintiffs and their witnesses. All of these factors weigh heavily in this Court's decision regarding venue, and [*9] plaintiff has not convinced this Court, in light of defendant's arguments, that public and private interests will be better served by maintaining this potential collective action in the Western District of Louisiana.

Accordingly, after weighing all relevant factors, the Court concludes that this case should be transferred to the Western District of North Carolina.

For the foregoing reasons, the Motion to Transfer Venue is GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 31 day of January, 2006.

REBECCA F. DOHERTY

UNITED STATES DISTRICT JUDGE

## ORDER

Considering the foregoing Ruling:

IT IS HEREBY ORDERED that the Motion to Transfer Venue [Doc. # 6], filed by Family Dollar Store, Inc., et al, is hereby GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 31 day of January, 2006.

REBECCA F. DOHERTY

UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JASON R. ODEM, on his own behalf,   §
and on behalf of those similarly situated,   §
      §
    Plaintiff,   §
      §
vs.   §  CASE NO. 8:08-CV-00166-T-27MAP
      §
CENTEX HOMES, INC., A Florida   §
Corporation,   §
      §
    Defendant.   §

## EXHIBIT 8

to

## DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

*Lucas v. Family Dollar Stores of Oklahoma, Inc.*, 2005 U.S. Dist. LEXIS 45521
(W.D. Okla. Mar. 9, 2005)

1 of 1 DOCUMENT



Cited
As of: Apr 17, 2008

**BARBARA LUCAS, and other persons similarly situated, Plaintiffs, vs. FAMILY DOLLAR STORES OF OKLAHOMA, INC., Defendant.**

**Case No. CIV-04-536-M**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

*2005 U.S. Dist. LEXIS 45521*

**March 9, 2005, Decided
March 9, 2005, Filed**

**COUNSEL:** [*1] For Barbara Lucas, Other persons similarly situated, Plaintiff: Benjamin McCullar, Kelli A McCullar, Benjamin McCullar PC, Shawnee, OK.

For Family Dollar Stores of Oklahoma Inc, Defendant: Adam W Childers, Crowe & Dunlevy-OKC, Oklahoma City, OK; Allan G King, Steven L Rahhal, W Joseph Miguez, III, Littler Mendelson-DALLAS, Dallas, TX.

**JUDGES:** VICKI MILES-LaGRANGE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** VICKI MILES-LaGRANGE

**OPINION**

**ORDER**

Before the Court is defendant's Motion to Sever and Transfer, filed August 10, 2004. On September 9, 2004, plaintiff Barbara Lucas ("Lucas") filed her response, and on September 27, 2004, defendant filed its reply.

I. Introduction

Defendant Family Dollar Stores of Oklahoma, Inc. [1] employed Lucas for approximately five (5) years in its stores in Shawnee and Tecumseh, Oklahoma. While employed with defendant, Lucas periodically worked as an Assistant Store Manager and was eventually promoted to Store Manager. Defendant terminated Lucas' employment in November, 2002.

1    Family Dollar Stores of Oklahoma, Inc. is wholly owned by Family Dollar Stores, Inc. through other wholly owned corporate entities. Family Dollar Stores, Inc. is headquartered in Matthews, North Carolina.

On April 28, 2004, [*2] plaintiff filed the instant action against defendant alleging that defendant failed to pay Lucas and others similarly situated overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and that defendant's Oklahoma district managers and supervisors discriminated against Lucas and others similarly situated in violation of the Age Discrimination in Employment Act ("ADEA"). Defendant now moves to sever plaintiffs' FLSA claim and to transfer that claim to the United States District Court for the Western District of North Carolina, where defendant is headquartered and where three other nationally-pled collective actions alleging the same FLSA claim are already pending.

II. Discussion

A. Severance of FLSA Claim

*Federal Rule of Civil Procedure 21* provides, in pertinent part, that "[a]ny claim against a party may be severed and proceeded with separately." *Fed. R. Civ. P. 21.* A claim may be severed solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever claims for the purpose of permitting the transfer of those claims. *Apache Prods. Co. v. Em-*

2005 U.S. Dist. LEXIS 45521, *

ployers Ins. of Wausau, 154 F.R.D. 650, 660 (S.D. Miss. 1994); [*3] Cain v. New York State Bd. of Elections, 630 F. Supp. 221, 225-26(E.D.N.Y. 1986).

> [A] court considering a severance mo-
> tion should weigh the following factors in
> making its determination:
>
>> (1) whether the claims
>> arise out of the same trans-
>> action or occurrence; (2)
>> whether the claims present
>> some common questions of
>> law or fact; (3) whether
>> settlement of the claims or
>> judicial economy would be
>> facilitated; (4) whether
>> prejudice would be
>> avoided if severance were
>> granted; and (5) whether
>> different witnesses and
>> documentary proof are re-
>> quired for the separate
>> claims.
>
> Further, [t]he decision whether to
> grant a severance motion is committed to
> the sound discretion of the trial court.

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003) (internal quotations and citations omitted).

Having carefully reviewed plaintiffs' Complaint and the parties' submissions, and in light of this Court's finding that plaintiffs' FLSA claim should be transferred as set forth below, the Court finds that severance of plaintiffs' FLSA claim is appropriate in this case. Specifically, the Court finds that plaintiffs' FLSA claim and ADEA claim do not arise out of the same [*4] transaction or occurrence, do not present common questions of law or fact, and require different witnesses and documentary proof. Plaintiffs' FLSA claim challenges defendant's classification of management employees as exempt from the FLSA's overtime pay requirements, whereas plaintiffs' ADEA claim challenges defendant's allegedly discriminatory practice of replacing employees over the age of 40 with younger employees. A review of these claims reveals no factual or legal overlap. Further, the Court finds that judicial economy would be facilitated by severing plaintiffs' FLSA claim and transferring it to the United States District Court for the Western District of

North Carolina, where three substantially similar lawsuits are pending.

Accordingly, the Court finds that defendant's motion to sever should be granted.

B. Transfer of FLSA Claim

> 28 U.S.C. § 1404(a) provides:
>
>> For the convenience of parties and wit-
>> nesses, in the interest of justice, a district
>> court may transfer any civil action to any
>> other district or division where it might
>> have been brought. [2]

28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to prevent the waste of time, energy and money and to protect litigants, witnesses and [*5] the public against unnecessary inconvenience and expense." Jacobs v. Lancaster, 526 F. Supp. 767, 769 (W.D. Okla. 1981) (citing Van Dusen v. Barrack, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964); Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)).

> 2   In her response, Lucas does not dispute that
> this action could have been brought in the United
> States District Court for the Western District of
> North Carolina. Rather, Lucas asserts the balance
> of conveniences and interests of justice favors re-
> taining the FLSA claim in this Court.

"The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991). However, shifting the inconvenience from one party to another is not a permissible justification for transferring the case. Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992). A district court has discretion to adjudicate motions to transfer based upon an "individualized, case-by-case consideration of convenience and fairness." Chrysler Credit Corp., 928 F.2d at 1516 (internal quotations and citations omitted).

> Among the factors [a district court]
> should consider is [*6] the plaintiff's
> choice of forum; the accessibility of wit-
> nesses and other sources of proof, includ-
> ing the availability of compulsory process
> to insure attendance of witnesses; the cost
> of making the necessary proof; questions
> as to the enforceability of a judgment if
> one is obtained; relative advantages and
> obstacles to a fair trial; difficulties that
> may arise from congested dockets; the

possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id* [3]

3 In the case at bar, the following factors are not relevant: (1) questions of the enforceability of a judgment if one is obtained; (2) difficulties that may arise from congested dockets; (3) the possibility of the existence of questions arising in the area of conflict of laws, and (4) the advantage of having a local court determine questions of local law. Whether the FLSA has been violated is a federal question, and both district courts are equally competent to hear and decide issues of federal law.

1. Lucas' choice of forum

"Unless the balance [*7] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Chicago, Rock Island and Pacific R.R. Co. v. Hugh Breeding, Inc., 232 F.2d 584, 587 (10th Cir. 1956)* (quoting *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1957)*). However, significantly less deference is given to a plaintiff's choice of forum when the plaintiff sues as a class representative. *Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998); Georgouses v. Natec Res., Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997).* Accordingly, because Lucas is suing as a class representative, the Court finds that Lucas' choice of forum is entitled to less deference. Further, the Court finds that the fact that Lucas is suing only on behalf of Oklahoma Family Dollar Store Managers and Assistant Store Managers does not entitle Lucas' choice of forum to additional deference. While many of the potential plaintiffs may reside in this district, it is also highly likely that many of these potential plaintiffs live in the Eastern or Northern Districts of Oklahoma and that several of the potential plaintiffs have moved and reside in states other than Oklahoma.

2. Convenience of the parties [*8] and witnesses and access to sources of proof

Having carefully reviewed the parties' submissions, the Court finds the convenience of the parties and the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure the attendance of witnesses, does not weigh heavily in favor of transferring plaintiffs' FLSA claim. Although it

is clear that North Carolina would be a more convenient forum for defendant -- defendant's headquarters are in North Carolina and all of defendant's relevant documents and witnesses are located in North Carolina -- it is also clear that Oklahoma would be a more convenient forum for Lucas -- she resides in Oklahoma; all of her witnesses are located either in Oklahoma or Texas, and many of her relevant documents are located in Oklahoma or Texas.

3. Interests of justice

Courts have concluded that "the presence of a related case in the transferee forum is a powerful reason to grant a change of venue." *Blanning v. Tisch, 378 F. Supp. 1058, 1061 (E.D. Pa. 1974)* (internal citations omitted); *see also Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936 (E.D. Va. 2001); Gould, 990 F. Supp. at 1360-61; Rohde v. Central R.R. of Ind., 951 F. Supp. 746, 749 (N.D. Ill. 1997);* [*9] *Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 233 (D.N.J. 1996); Martin v. South Carolina Bank, 811 F. Supp. 679, 685-86 (M.D. Ga. 1992); Martin-Trigona v. Meister, 668 F. Supp. 1 (D.D.C. 1987); Berg v. First Am. Bankshares, Inc., 576 F. Supp. 1239, 1243 (S.D.N.Y. 1983); Supco Auto. Parts, Inc. v. Triangle Auto Spring Co., 538 F. Supp. 1187, 1192 (E.D. Pa. 1982).* Further, as the United States Supreme Court has stated: "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that *§ 1404(a)* was designed to prevent." *Ferens v. John Deere Co., 494 U.S. 516, 531, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990)* (internal quotations and citation omitted). Additionally,

[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; (4) inconsistent results [*10] can be avoided.

*Blanning, 378 F. Supp. at 1061* (internal quotations and citation omitted).

There are currently pending in the United States District Court for the Western District of North Carolina three collective actions brought on behalf of Family Dollar Store Managers and Assistant Store Managers nationwide. In all three of these actions, the plaintiffs allege

2005 U.S. Dist. LEXIS 45521, *

that Family Dollar, Inc. failed to pay overtime compensation in violation of the FLSA, the same claim plaintiffs make in the instant action.

Having carefully reviewed the parties' submissions, the Court finds the existence of the pending related actions in North Carolina strongly, and conclusively, weighs in favor of transferring plaintiffs' FLSA claim to the United States District Court for the Western District of North Carolina. Even though the instant action is limited to Oklahoma Family Dollar Store Managers and Assistant Store Managers, the Court finds that the instant action and the actions currently pending in North Carolina involve the same legal and factual issues and most, if not all, the same witnesses and documentary evidence. The Court further finds that a transfer of plaintiffs' FLSA claim would promote uniformity [*11] of results, avoid duplicative court proceedings, and would be in the best interest of efficiency and justice.

Accordingly, the Court finds that plaintiffs' FLSA claim should be transferred to the United States District Court for the Western District of North Carolina.

III. Conclusion

For the reasons set forth above, the Court GRANTS defendant's Motion to Sever and Transfer [docket no. 25]. Accordingly, the Court, pursuant to *Federal Rule of Civil Procedure 21*, SEVERS plaintiffs' FLSA claim (First Cause of Action in plaintiff's Complaint) and, pursuant to *28 U.S.C. § 1404(a)*, TRANSFERS plaintiffs' FLSA claim to the United States District Court for the Western District of North Carolina. The Clerk is directed to send a certified copy of the Complaint [docket no. 1] and defendant's Answer [docket no. 8] to the Clerk of the United States District Court for the Western District of North Carolina, along with a certified copy of this Order.

**IT IS SO ORDERED this 9th day of March, 2005.**

VICKI MILES-LaGRANGE

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, | § | |
| and on behalf of those similarly situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 8:08-CV-00166-T-27MAP |
| | § | |
| CENTEX HOMES, INC., A Florida | § | |
| Corporation, | § | |
| | § | |
| Defendant. | § | |

**EXHIBIT 9**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Time for Air Travel from Dallas, Texas to Tampa, Florida

**American**Airlines°

CLOSE WINDOW

**Round-Trip Search by Schedule**
Fares are not guaranteed until tickets are purchased.

| Your Request: | | |
|---|---|---|
| Thu, Apr 17 | 3:00 PM | DFW - Dallas/Fort Worth International |
| | | TPA - Tampa International |
| Fri, Apr 18 | 3:00 PM | TPA - Tampa International |
| | | DFW - Dallas/Fort Worth International |
| Service Preference: Economy | | |

**Departing**

| Carrier | Flight # | Departing City | Date & Time | Arriving City | Date & Time | Aircraft Type | Cabin | Flight Miles | Meals | Travel Time |
|---|---|---|---|---|---|---|---|---|---|---|
| AMERICAN AIRLINES | 1316 | DFW Dallas/ Fort Worth | Apr 17, 2008 04:55 PM | TPA Tampa | Apr 17, 2008 08:15 PM | M80 | Economy | 929 | 🍽️ | 2 hr 20 min |
| AMERICAN AIRLINES | 1498 | DFW Dallas/ Fort Worth | Apr 17, 2008 01:50 PM | TPA Tampa | Apr 17, 2008 05:10 PM | M80 | Economy | 929 | 🍽️ | 2 hr 20 min |
| AMERICAN AIRLINES | 1032 | DFW Dallas/ Fort Worth | Apr 17, 2008 12:25 PM | TPA Tampa | Apr 17, 2008 03:45 PM | M80 | Economy | 929 | 🍽️ | 2 hr 20 min |
| AMERICAN AIRLINES | 674 | DFW Dallas/ Fort Worth | Apr 17, 2008 08:55 PM | TPA Tampa | Apr 18, 2008 12:10 AM | M80 | Economy | 929 | 🍽️ | 2 hr 15 min |
| AMERICAN AIRLINES | 2356 | DFW Dallas/ Fort Worth | Apr 17, 2008 03:05 PM | ORD Chicago | Apr 17, 2008 05:25 PM | M83 | Economy | 802 | 🍽️ | 6 hr 40 min |
| AMERICAN AIRLINES | 782 | ORD Chicago | Apr 17, 2008 07:15 PM | TPA Tampa | Apr 17, 2008 10:45 PM | M80 | Economy | 1012 | 🍽️ | |
| AMERICAN AIRLINES | 2360 | DFW Dallas/ Fort Worth | Apr 17, 2008 04:00 PM | ORD Chicago | Apr 17, 2008 06:20 PM | M80 | Economy | 802 | 🍽️ | 5 hr 45 min |
| AMERICAN AIRLINES | 782 | ORD Chicago | Apr 17, 2008 07:15 PM | TPA Tampa | Apr 17, 2008 10:45 PM | M80 | Economy | 1012 | 🍽️ | |
| AMERICAN AIRLINES | 2352 | DFW Dallas/ Fort Worth | Apr 17, 2008 01:55 PM | ORD Chicago | Apr 17, 2008 04:15 PM | M83 | Economy | 802 | 🍽️ | 7 hr 50 min |
| AMERICAN AIRLINES | 782 | ORD Chicago | Apr 17, 2008 07:15 PM | TPA Tampa | Apr 17, 2008 10:45 PM | M80 | Economy | 1012 | 🍽️ | |
| AMERICAN AIRLINES | 1046 | DFW Dallas/ Fort Worth | Apr 17, 2008 05:25 PM | MIA Miami | Apr 17, 2008 09:05 PM | 757 | Economy | 1121 | 🍽️ | 5 hr 5 min |
| AMERICAN AIRLINES | 1570 | MIA Miami | Apr 17, 2008 10:30 PM | TPA Tampa | Apr 17, 2008 11:30 PM | 738 | Economy | 204 | N/A | |
| AMERICAN AIRLINES | 1046 | DFW Dallas/ Fort Worth | Apr 17, 2008 05:25 PM | MIA Miami | Apr 17, 2008 09:05 PM | 757 | Economy | 1121 | 🍽️ | 14 hr 15 min |
| AMERICAN AIRLINES | 1234 | MIA Miami | Apr 18, 2008 07:40 AM | TPA Tampa | Apr 18, 2008 08:40 AM | 738 | Economy | 204 | N/A | |
| **Alert:** Overnight flight or connection. | | | | | | | | | | |
| AMERICAN AIRLINES | 86 | DFW Dallas/ Fort Worth | Apr 17, 2008 01:00 PM | ORD Chicago | Apr 17, 2008 03:15 PM | 777 | Economy | 802 | 🍽️ | |

| AMERICAN AIRLINES | 782 | ORD Chicago | Apr 17, 2008 07:15 PM | TPA Tampa | Apr 17, 2008 10:45 PM | M80 | Economy | 1012 | $\cdot$ | 8 hr 45 min |
|---|---|---|---|---|---|---|---|---|---|---|

### Returning

| Carrier | Flight # | Departing | | Arriving | | Aircraft Type | Cabin | Flight Miles | Meals | Travel Time |
|---|---|---|---|---|---|---|---|---|---|---|
| | | City | Date & Time | City | Date & Time | | | | | |
| AMERICAN AIRLINES | 1195 | TPA Tampa | Apr 18, 2008 02:40 PM | DFW Dallas/ Fort Worth | Apr 18, 2008 04:25 PM | M80 | Economy | 929 | $\cdot$ | 2 hr 45 min |
| AMERICAN AIRLINES | 1133 | TPA Tampa | Apr 18, 2008 04:25 PM | DFW Dallas/ Fort Worth | Apr 18, 2008 06:10 PM | M80 | Economy | 929 | $\cdot$ | 2 hr 45 min |
| AMERICAN AIRLINES | 1395 | TPA Tampa | Apr 18, 2008 01:05 PM | DFW Dallas/ Fort Worth | Apr 18, 2008 02:50 PM | M80 | Economy | 929 | $\cdot$ | 2 hr 45 min |
| AMERICAN AIRLINES | 1523 | TPA Tampa | Apr 18, 2008 07:15 PM | DFW Dallas/ Fort Worth | Apr 18, 2008 08:55 PM | M80 | Economy | 929 | $\cdot$ | 2 hr 40 min |
| AMERICAN AIRLINES | 2193 | TPA Tampa | Apr 18, 2008 10:30 AM | DFW Dallas/ Fort Worth | Apr 18, 2008 12:10 PM | 738 | Economy | 929 | $\cdot$ | 2 hr 40 min |
| AMERICAN AIRLINES | 1087 | TPA Tampa | Apr 18, 2008 09:35 AM | DFW Dallas/ Fort Worth | Apr 18, 2008 11:15 AM | M80 | Economy | 929 | $\cdot$ | 2 hr 40 min |
| AMERICAN AIRLINES | 1053 | TPA Tampa | Apr 18, 2008 07:15 AM | DFW Dallas/ Fort Worth | Apr 18, 2008 08:55 AM | M80 | Economy | 929 | $\cdot$ | 2 hr 40 min |
| AMERICAN AIRLINES | 1039 | TPA Tampa | Apr 18, 2008 06:05 AM | DFW Dallas/ Fort Worth | Apr 18, 2008 07:40 AM | M80 | Economy | 929 | $\cdot$ | 2 hr 35 min |
| AMERICAN AIRLINES | 1011 | TPA Tampa | Apr 18, 2008 04:20 PM | MIA Miami | Apr 18, 2008 05:20 PM | 738 | Economy | 204 | N/A | 4 hr 55 min |
| AMERICAN AIRLINES | 1973 | MIA Miami | Apr 18, 2008 06:10 PM | DFW Dallas/ Fort Worth | Apr 18, 2008 08:15 PM | 757 | Economy | 1121 | $\cdot$ | |
| AMERICAN AIRLINES | 1011 | TPA Tampa | Apr 18, 2008 04:20 PM | MIA Miami | Apr 18, 2008 05:20 PM | 738 | Economy | 204 | N/A | 7 hr 45 min |
| AMERICAN AIRLINES | 1820 | MIA Miami | Apr 18, 2008 09:05 PM | DFW Dallas/ Fort Worth | Apr 18, 2008 11:05 PM | 738 | Economy | 1121 | $\cdot$ | |

**CLOSE WINDOW**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON R. ODEM, on his own behalf,          §
and on behalf of those similarly situated, §
                                           §
          Plaintiff,                       §
                                           §
vs.                                        §   CASE NO. 8:08-CV-00166-T-27MAP
                                           §
CENTEX HOMES, INC., A Florida              §
Corporation,                              §
                                           §
          Defendant.                       §

**Attachment**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

*Colorado Boxed Beef Co. v. Coggins, et al.*, 2007 U.S. Dist. LEXIS 20749
(M.D. Fla. Mar. 23, 2007)

LEXSEE 2007 U.S. DIST. LEXIS 20749

**COLORADO BOXED BEEF COMPANY, Plaintiff, v. G. MICHAEL COGGINS, ROBERT J. ZEMAN, and SHERWOOD FOOD DISTRIBUTORS, Defendants.**

**Case No.: 8:07-cv-00223-T-24-MAP**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

*2007 U.S. Dist. LEXIS 20749*

**March 23, 2007, Decided**

**COUNSEL:** [*1] For Colorado Boxed Beef Company, Plaintiff: Christopher Carl Marquardt, LEAD ATTORNEY, Alston & Bird, LLP*, Atlanta, GA; Erin L. Connolly, LEAD ATTORNEY, Patrick L. Coyle, LEAD ATTORNEY, Alston & Bird LLP, Atlanta, GA.

For G. Michael Coggins, Robert J. Zeman, Defendants: Benjamin I. Fink, LEAD ATTORNEY, Berman Fink Van Horn, P.C., Atlanta, GA; Kenneth N. Winkler, LEAD ATTORNEY, Elarbee, Thompson, Sapp & Wilson, LLP, Atlanta, GA; Robert T. Quackenboss, LEAD ATTORNEY, Kenneth L. Dobkin, Hunton & Williams, Atlanta, GA; Richard M. Pierro, Jr., Allen, Norton & Blue, P.A., Tampa, FL.

For Sherwood Food Distributors, Defendant: Benjamin H. Hill, III, LEAD ATTORNEY, Brian L. Josias, LEAD ATTORNEY, David Thomas Knight, LEAD ATTORNEY, Hill, Ward & Henderson, P.A., Tampa, FL; Kenneth L. Dobkin, LEAD ATTORNEY, Kurt A. Powell, LEAD ATTORNEY, Robert T. Quackenboss, LEAD ATTORNEY, Hunton & Williams, Atlanta, GA.

For G. Michael Coggins, Robert J. Zeman, Counter Claimants: Benjamin I. Fink, LEAD ATTORNEY, Berman Fink Van Horn, P.C., Atlanta, GA; Kenneth N. Winkler, LEAD ATTORNEY, Elarbee, Thompson, Sapp & Wilson, LLP, Atlanta, GA; Richard M. Pierro, Jr., Allen, Norton & Blue, P.A., Tampa, [*2] FL.

For Colorado Boxed Beef Company, Counter Defendant: Christopher Carl Marquardt, LEAD ATTORNEY, Alston & Bird, LLP*, Atlanta, GA; Erin L. Connolly, LEAD ATTORNEY, Patrick L. Coyle, LEAD ATTORNEY, Alston & Bird LLP, Atlanta, GA.

**JUDGES:** SUSAN C. BUCKLEW, United States District Judge.

**OPINION BY:** SUSAN C. BUCKLEW

**OPINION**

**ORDER**

This cause comes before the Defendants' Motion to Transfer Venue (Doc. No. 16) and Alternative Motion for a Stay of Proceedings (Doc. No. 17). Plaintiff opposes the motions. (Doc. No. 23). The Court held a hearing on these motion on March 22, 2007.

**I. Factual Background**

The following facts are derived primarily from Plaintiff's complaint and attachments thereto, but they also come from other documents filed in this case and statements made at the hearing: Plaintiff Colorado Boxed Beef Company ("CBBC") is a Florida corporation with its principal place of business in Florida. CBBC is a wholesale distributor of meats and grocery items. Since 1997, Defendants G. Michael Coggins and Robert Zeman served as the highest ranking management employees in CBBC's Atlanta division.

In connection with their employment, Zeman and Coggins signed employment [*3] agreements and non-competition and confidentiality agreements. (Doc. No. 2, Ex. A-D). Generally, the non-competition and confidentiality agreements provide that Coggins and Zeman agreed that for a period of two years after their employment was terminated, they would not: (1) disclose to others, or use for their own benefit, CBBC's confidential information, (2) be employed by, or render aid or advice to, any business entity located east of the Mississippi River that was in the same business as CBBC, (3) solicit

current or prospective customers of CBBC, or (4) solicit employees of CBBC.

Paragraph eleven of the employment agreements incorporates the terms of the non-competition and confidentiality agreements into the employment agreements. Paragraph eighteen of the employment agreements provides: "This Agreement shall be governed by the laws of the State of Florida. The parties hereby consent to the jurisdiction of the State of Florida in any litigation arising out of this Agreement and agree that such litigation shall be exclusively initiated and maintained in Polk County, Florida." Paragraph fifteen of the employment agreements provides: "Employee's employment, and all of the rights [*4] and responsibilities of the parties hereunder (except only for said notes), shall terminate in the event that [CBBC] is dissolved or the Atlanta Division ceases doing business as a viable profit-making division of [CBBC]."

In 2006, the Atlanta division of CBBC had difficulty servicing all of its customers. CBBC considered selling its Atlanta division to Defendant Sherwood Food Distributors ("Sherwood"). In connection with the negotiations, Sherwood and CBBC entered into a confidentiality agreement, which provided that any litigation to enforce the agreement may be brought in the courts of the State of Florida. (Doc. No. 2, Ex. E). By the end of November 2006, negotiations between Sherwood and CBBC ended.

On December 4, 2006, CBBC terminated Coggins and Zeman's employment. CBBC gave three reasons for their terminations, including that the Atlanta division had ceased doing business as a viable profit-making division of CBBC. (Doc. No. 16, Ex. K). Thereafter, on February 24, 2007, Sherwood hired Coggins and Zeman. Coggins became the General Manager of Sherwood's Atlanta Division, and Zeman became the Division Controller. Sherwood competes with the Atlanta division of CBBC. CBBC [*5] contends that Sherwood is stealing its employees and customers and that Zeman and Coggins are helping Sherwood do this by violating their employment agreements and non-competition and confidentiality agreements.

## II. Procedural History

CBBC filed two lawsuits relating to these allegations. First, on January 10, 2007, CBBC filed the instant case in state court in Polk County, Florida. In the instant case, which was removed to this Court on February 2, 2007, CBBC alleges the following claims: breach of contract against Coggins and against Zeman relating to their alleged violation of the non-competition, non-solicitation, and confidentiality provisions of their employment agreements; breach of the confidentiality agreement by Sherwood; breach of fiduciary duty and loyalty, tortious interference, misappropriation of trade

secrets, unfair competition, fraud, and unjust enrichment against Coggins and Zeman; and a claim for attorneys' fees against all Defendants. Thereafter, on March 13, 2007, CBBC filed a motion for a temporary restraining order against Coggins and Zeman in this case, in which it requested that the Court enjoin Zeman and Coggins from (1) working for or assisting [*6] Sherwood or any other competitor in any state east of the Mississippi River, (2) disclosing or using CBBC's confidential information, and (3) soliciting or encouraging CBBC's employees or customers from terminating their relationships with CBBC.

The day after CBBC filed the Florida lawsuit, it filed another lawsuit in Georgia state court against Sherwood. Sherwood removed the case on February 14, 2007, and the case is currently pending in the Northern District of Georgia. In the Georgia case, CBBC asserts the following claims against Sherwood relating to its competition with CBBC's Atlanta division: tortious interference, misappropriation of trade secrets, violation of Georgia's Uniform Deceptive Trade Practices Act, unfair competition, unjust enrichment, and attorneys' fees. Sherwood asserted a counterclaim against CBBC in the Georgia case, seeking a declaratory judgment that Coggins and Zeman's non-competion agreements are unenforceable. Zeman and Coggins have filed a motion to intervene as counterclaim plaintiffs in the Georgia case.

Currently pending before the Northern District of Georgia court is a motion for a preliminary injunction against Sherwood that CBBC filed in Georgia [*7] state court on January 11, 2007. In the motion for preliminary injunction, CBBC seeks to enjoin Sherwood from making misrepresentations about CBBC and from raiding CBBC's employees. The case has been heavily litigated in the Northern District of Georgia. The court ordered expedited discovery, held an evidentiary hearing on the motion for preliminary injunction on March 8th and 9th, and scheduled closing arguments on the motion for preliminary injunction for March 23rd.

## III. Motion to Transfer

Defendants filed the instant motion to transfer this case to the Northen District of Georgia, pursuant to *28 U.S.C. § 1404(a)*. *Section 1404(a)* provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

When considering whether to transfer a case pursuant to *§ 1404(a)*, a court considers the following factors: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the [*8] availability of process to compel the attendance of unwilling witnesses;

Case 3:08-cv-01196-L     Document 23     Filed 04/18/08     Page 54 of 77     PageID 681

Page 3
2007 U.S. Dist. LEXIS 20749, *

(6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n. 1 (11th Cir. 2005)*(citation omitted). However, a forum selection clause is a significant factor that figures centrally in the determination, and venue mandated by a valid forum selection clause will rarely be outweighed by other *§ 1404(a)* factors. See *In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)*(citation omitted).

The burden is on Defendants to demonstrate that this case should be transferred to the Northern District of Georgia in the interests of convenience and justice under *§ 1404(a)*. See id. The Court notes that "[s]ection *1404(a)* provides for transfer to a more convenient forum, but not to one which is likely to prove equally convenient or inconvenient." *Johnston v. Foster-Wheeler Constructors, Inc., 158 F.R.D. 496, 503 (M.D. Ala. 1994)*(citation omitted). [*9] Furthermore, "[i]n determining the propriety of transfer, the Court must give considerable weight to Plaintiff's choice of forum. Only if Plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process should this Court disregard the choice of forum and transfer the action." See *Response Reward Systems, L.C. v. Meijer, Inc., 189 F. Supp.2d 1332, 1339-40 (M.D. Fla. 2002)*(citations omitted). For the reasons stated below, the Court finds that the *§ 1404(a)* factors weigh strongly in favor of transfer, and as such, this case should be transferred to the Northern District of Georgia.

The first step in the Court's analysis is to determine whether this case could have been filed in the Northern District of Georgia. Since the alleged acts occurred in the Northern District of Georgia, the Court finds that the case could have been filed there.

The next step in this Court's analysis is to consider the *§ 1404(a)* factors and the forum selection clause. While this Court acknowledges that valid forum selection clauses are given significant weight, the Court finds that the forum selection clause in [*10] Coggins and Zeman's employment agreements is not enforceable.

The forum selection clause contained in paragraph eighteen of the employment agreements provides that "any litigation arising out of this Agreement . . . shall be exclusively initiated and maintained in Polk County, Florida." However, paragraph fifteen of the employment agreements provides that "all of the rights and responsibilities of the parties hereunder . . . shall terminate in the event that . . . the Atlanta Division ceases doing business as a viable profit-making division." One of the reasons

given by CBBC for terminating Zeman and Coggins' employment was that the Atlanta Division had ceased doing business as a viable profit-making division of CBBC. Since the Atlanta Division had ceased doing business as a viable profit-making division of CBBC, the rights under the employment agreements have terminated, including the right to limit the resolution of the parties' dispute to a particular forum.

Even if the forum selection clause was enforceable, the Court finds that it still would not be given significant weight in this analysis, because it mandates a state court as the agreed-upon forum. [1] Since the contractually [*11] agreed-upon forum in the forum selection clause in the employment agreements is not a forum that the Court can transfer this case to under *§ 1404(a)*, the Court finds that the contractually agreed-upon forum should not be given significant weight in the Court's analysis. Furthermore, the Court notes that CBBC stated at the hearing that the forum selection clause in the employment agreements only applies to two of the ten claims asserted in CBBC's complaint (the breach of contract claims against Zeman and Coggins). (Hearing transcript, p. 29).

> 1 Since the only courts located in Polk County, Florida are state courts, the forum selection clause mandates that a state court located in Polk County is the agreed-upon forum. See, e.g., *Sizemore v. Able Body Temp. Servs, 981 F. Supp. 1451, 1454 (M.D. Al. 1997)*(construing a forum selection clause that provided that venue shall lie exclusively in Pinellas County, Florida to limit the forum to state courts located in Pinellas County because there were no federal courts located in Pinellas County). The Court rejects CBBC's argument that based on *Links Design, Inc. v. Lahr, 731 F. Supp. 1535 (M.D. Fla. 1990)*, the forum selection clause in the instant case mandates venue in state court or a federal court that encompasses Polk County. In Links, the forum selection clause provided that "the proper venue . . . shall be in Polk County, Florida." *Id. at 1536*. The Links court found the provision to be ambiguous, because it was unclear whether a claim controlled by the forum selection clause had to remain in state court in Polk County or whether it could be removed to a federal district court encompassing Polk County. See id. No such ambiguity is present in the instant case, because the forum selection clause provides that litigation shall be exclusively initiated and *maintained* in Polk County, Florida.

[*12] As explained below, based on the *§ 1404(a)* factors, the Court finds that this case should be transferred to the Northern District of Georgia. In support of

their contention that the case should be transferred, Defendants argue: (1) All of the alleged acts occurred in Georgia; (2) It would be more convenient for the parties to litigate in Georgia, because Coggins, Zeman, and Sherwood are Georgia residents; (3) The employee witnesses of CBBC and Sherwood are located in Georgia (and making them travel to Florida would disrupt business operations); (4) The vast majority of non-party witnesses (other competitors [2], former CBBC employees, and warehouse operators) are located in Georgia; [3] (5) Defendants will be unable to compel the testimony of non-party witnesses that reside in Georgia, because they reside more than 100 miles away from this Court; (6) The Georgia lawsuit filed by CBBC is based on the same facts as this case, and as such, it is in the interest of judicial economy to try this case there (especially given that the Georgia case has progressed further than this case); (7) The resolution of this dispute affects third-party customers and distributors located in the Atlanta [*13] market, as well as employment opportunities for citizens of Atlanta; (8) The tort claims are governed by Georgia law; and (9) This Court is one of the busiest federal district courts in the nation. The Court finds that these factors show that the balance of convenience weighs strongly in favor of transfer.

2  Defendants contend that the testimony of other competitors who considered purchasing CBBC's Atlanta division will be relevant to show why Sherwood did not purchase the Atlanta division. Additionally, Defendants contend that the testimony of other competitors will be relevant regarding why former CBBC employees left CBBC to be employed by competitors.

3  For example, Defendants have submitted the affidavits of three former customers of CBBC who state that they could testify regarding (1) why they no longer do business with CBBC, (2) why they do business with Sherwood, and (3) whether Coggins and/or Sherwood agents made misrepresentations to CBBC customers. (Doc. No. 16, Ex. E-G). These former CBBC customers state that they would be greatly inconvenienced if they had to travel to Florida to testify. (Doc. No. 16, Ex. E-G).

Defendants have also submitted the affidavit of Richard Carver, the CEO and President of a warehouse company that warehoused CBBC's inventory in November of 2006. (Doc. No. 16, Ex. P). Carver states in his affidavit that (1) he has knowledge regarding CBBC's allegations regarding the coordination of inventory to his warehouse space in November 2006; and (2) it has employed and currently employs several former CBBC employees and may be able to offer testi-

mony concerning the reasons that these employees left CBBC. (Doc. No. 16, Ex. P). Carver states that he would be greatly inconvenienced if he had to travel to Florid to testify. (Doc. No. 16, Ex. P).

[*14]  The Court notes that a plaintiff's choice of forum should be given deference, that CBBC is headquartered in Florida, and that CBBC contends that its senior management employees who are potential witnesses work and reside in Florida. However, since CBBC will already be litigating its claims against Sherwood in the Northern District of Georgia due to filing that lawsuit in Georgia (which is based on the same set of facts as this case), CBBC can hardly argue that it will be inconvenienced by having to litigate this case in the Northern District of Georgia also. Furthermore, judicial economy is served by having both cases litigated in the same court.

The Court also notes that the convenience of the witnesses weighs strongly in favor of the Northern District of Geogia. Since the alleged wrongful acts occurred in the Northen District of Georgia, most of the witnesses and documentary evidence will be located there. Furthermore, the fact that this Court is located more than 100 miles away from Georgia is another factor that weighs in favor of transfer.

Based on the above, the Court finds that the *§ 1404(a)* factors weigh heavily in favor of transferring this case to the Northen District [*15] of Georgia. As such, the Court will grant Defendants' motion to transfer this case.

**IV. Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendants' Motion to Transfer Venue (Doc. No. 16) is **GRANTED;**

(2) The Clerk is directed to transfer this case to the Atlanta Division of the Northern District of Georgia;

(3) Defendants' Alternative Motion for a Stay of Proceedings (Doc. No. 17) is **DENIED AS MOOT;** and

(4) The Clerk is directed to close this case.

**DONE AND ORDERED** this 23rd day of March, 2007.

Susan C. Bucklew

2007 U.S. Dist. LEXIS 20749, *

United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § | |

**Attachment**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

*Dortch v. Financing Alternative, Inc.*, 2002 U.S. Dist. LEXIS 6875
(N.D. Ill. Apr. 16, 2002)

LEXSEE 2002 US DIST LEXIS 6875



Cited
As of: Apr 17, 2008

**KATHERINE DORTCH, Plaintiff, v. FINANCING ALTERNATIVE, INC., Defendant.**

**No. 01 C 7416**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2002 U.S. Dist. LEXIS 6875*

**April 16, 2002, Decided
April 17, 2002, Docketed**

**DISPOSITION:**     [*1] Defendant's motion to transfer case granted. Case transferred to the United States District Court for the Eastern District of Virginia.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** On behalf of herself and two allegedly national classes of persons, plaintiff consumer sued defendant corporation for alleged violations of the Truth in Lending Act and the Credit Repair Organizations Act. The corporation moved to transfer venue pursuant to *28 U.S.C.S. § 1404(a)*.

**OVERVIEW:** The consumer, and Illinois resident, contracted to buy a computer and printer from the corporation on an installment plan that required her to make 13 payments, by authorizing automatic, electronic withdrawals from her checking account, before the computer was to be shipped to her. Allegedly, when the thirteenth withdrawal was rejected due to insufficient funds in the account, the corporation required her to make 13 more payments to purchase the computer. After making two more payments, the consumer closed her checking account and sued. The corporation was incorporated and had its only office in Virginia. It argued, persuasively, that Virginia was the more appropriate forum for the parties' litigation. In a putative class action, the named plaintiff's choice of forum was entitled to less deference than in a standard lawsuit. In addition, compelling factors, including convenience of witnesses, the situs of

material events, and the relation of the respective forums to the dispute, weighed heavily in favor of transfer.

**OUTCOME:** The court granted the motion.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN1] For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. *28 U.S.C.S. § 1404(a)*. A transfer is proper if: (1) venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN2] District courts have broad discretion to grant or deny motions to transfer, and the burden is on the moving party to establish that the transfer is warranted.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*

2002 U.S. Dist. LEXIS 6875, *

*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*

[HN3] When ruling on a motion to transfer venue, when evaluating the relative convenience of the parties and witnesses, the court considers: (1) the plaintiff's initial forum choice, (2) the convenience of witnesses, (3) the relative ease of access to other evidence, (4) the situs of material events, and (5) the relative convenience of the parties in litigating in the respective forums.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > Choice of Forum*

[HN4] Regarding a motion to transfer venue, the plaintiff's initial choice of forum is usually afforded substantial deference, especially when it is the plaintiff's home forum. The plaintiff's choice in forum should generally be supplanted by the court when trying the case in the plaintiff's chosen forum will result in vexation and oppression to the defendant that far outweighs the convenience to the plaintiff. However, there are other factors to consider, and the weight given to the plaintiff's choice can vary depending on the circumstances of each individual case. Significantly less deference is given to the plaintiff's choice when the plaintiff sues derivatively or as a class representative or when the cause of action did not conclusively arise within the forum. Where there are potentially hundreds, if not thousands, of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*

[HN5] The convenience of the witnesses who will testify at trial is one of the most important factors when deciding on an appropriate forum. However, the defendant will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience. Courts go beyond simply looking at the number of witnesses and weigh the quality and nature of their proposed testimony. The defendant is obligated to specify particular witnesses to be called and explain the nature of their testimony. In order to overcome the deference to the plaintiff's forum choice on the issue of witness convenience, the defendant must show that the testimony of these particular witnesses is necessary to his case. As a practical matter, it is usually assumed that witnesses within the control of the parties, such as employees of the defendant, will appear voluntarily. Therefore, more attention should be given to the location of the non-party witnesses and those witnesses not within the control of the parties.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*

[HN6] Regarding a motion to transfer venue, transferring records is not a heavy burden to bear in light of modern photocopying and other means of transferring information.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*

[HN7] Regarding a motion to transfer venue, the analysis of the interest of justice focuses on the efficient administration of the court system, as opposed to the private considerations of the litigants. This includes considering: (1) the relative familiarity of the courts with the applicable law, (2) the relation of the respective forums with the issue in the case, and (3) the relative congestion of the court dockets.

**COUNSEL:** For KATHERINE DORTCH, plaintiff: Christopher V. Langone, Mark T. Lavery, Langone Law Firm, Chicago, IL.

For FINANCING ALTERNATIVES, INC., defendant: Elizabeth Gwynn Doolin, Craig Michael Bargher, Peterson & Ross, Chicago, IL.

**JUDGES:** JOHN W. DARRAH, United States District Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Katherine Dortch ("Dortch"), brought this action against Defendant, Financing Alternatives, Inc. ("FAI"), individually and on behalf of two alleged national classes of persons similarly situated. Count I of the complaint, brought by Dortch individually and on behalf of Class A, alleges the Defendant violated the Truth in Lending Act. Count II, brought by Dortch individually and on behalf of Class B, alleges the Defendant violated the Credit Repair Organizations Act. Currently before the Court is FAI's Motion to Transfer Venue pursuant to *28 U.S.C. § 1404(a)*.

This action arose out of an order, placed by Dortch with FAI for a computer and printer were to be delivered to Dortch [*2] pursuant to an installment sale contract. Dortch is an Illinois resident. FAI is a Virginia Corpora-

tion which has its only office in Virginia. FAI sells computers with payment plans which, it claims, allow individuals with poor credit or no credit history to make purchases without paying the full cash price up front. FAI solicits customers through advertisements in national publications, direct mail advertising, television commercials, and through the internet.

Dortch telephoned FAI and placed an order for a computer and printer after seeing an advertisement on television. The contract she entered into with FAI provided for thirteen consecutive weekly payments of $ 39.99 and the shipment of the computer and printer upon completion of the payments. Payments were debited by FAI via wire from Dortch's checking account.

According to FAI, when it attempted to debit the thirteenth payment, the attempt was rejected due to insufficient funds in Dortch's account. As a result, FAI required Dortch to make payments for an additional thirteen weeks in order to receive the computer and printer. FAI claims that Dortch agreed to make the additional thirteen payments; and, subsequently, FAI debited [*3] two more payments from Dortch's account. After these two payments, Dortch closed the checking account from which FAI was debiting the weekly payments.

Dortch brought the current action both individually and on behalf of those similarly situated in two alleged national classes (Class A and Class B) pursuant to *Federal Rule of Civil Procedure 23(b)*. Dortch has not yet moved to certify either class.

FAI has moved to transfer the cause of action to the United States District Court for the Eastern District of Virginia, pursuant to *28 U.S.C. § 1404(a)*.

[HN1] "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. A transfer is proper if: (1) venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice. *Law Bulletin Publishing, Co., v. LRP Publications, Inc., 992 F. Supp. 1014, 1017 (N.D. Ill. 1998)(Law Bulletin)*. [HN2] District courts have broad discretion to grant or deny [*4] motions to transfer, and the burden is on the moving party to establish that the transfer is warranted. *Heller Financial, Inc., v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir. 1989) (Heller)*.

**1. Venue**

Both parties agree that venue is proper in both this and the Virginia court.

**2. Convenience of the Parties or Witnesses**

[HN3] When evaluating the relative convenience of the parties and witnesses, the court considers: (1) the plaintiff's initial forum choice, (2) the convenience of witnesses, (3) the relative ease of access to other evidence, (4) the situs of material events, and (5) the relative convenience of the parties in litigating in the respective forums. *Amoco Oil Co. v. Mobil Oil Corp., 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (Amoco); Georgouses v. Natec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997)(Georgouses)*.

*Plaintiff's Initial Choice of Venue*

[HN4] The plaintiff's initial choice of forum is usually afforded substantial deference, especially when it is the plaintiff's home forum. The plaintiff's choice in forum should generally be supplanted by the Court when trying the case [*5] in the plaintiff's chosen forum will result in vexation and oppression to the defendant that far outweighs the convenience to the plaintiff. *Kamel v. Hill-Rom Company, Inc., 108 F.3d 799, 802 (7th Cir. 1997)*. However, there are other factors to consider, and the weight given to the plaintiff's choice can vary depending on the circumstances of each individual case. *Georgouses, 963 F. Supp. at 730; Law Bulletin, 992 F. Supp. at 1017*. Significantly less deference is given to the plaintiff's choice when the plaintiff sues derivatively or as a class representative or when the cause of action did not conclusively arise within the forum. *Countryman on Behalf of Upstate New York Pension and Retirement Fund v. Stein, Roe & Farnham, 681 F. Supp. 479, 483-484 (N.D. Ill. 1987)(Countryman)*, citing *Koster v. Lumbermens Mutual Casualty, 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947) (Koster)*. Where there are potentially hundreds, if not thousands, of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened. *Koster, 330 U.S. at 524.* [*6]

Here, Dortch brought this lawsuit individually and as a member of two separate national classes that would include hundreds, if not thousands, of plaintiffs from many different states. Although the classes are not yet certified, when compared to the overall dollar amount at stake in this case, Dortch's portion of the total could turn out to be a rather insignificant amount.

In addition, Dortch's cause of action did not conclusively arise within this forum. The events giving rise to the causes of action in Dortch's case are the representations made to her by FAI. FAI has its office in Virginia, and any forms or contracts sent to the Plaintiff were sent from Virginia. Any representations that were made to the Plaintiff via television or printed advertisements originated in the Virginia office. Also, all telephone conversa-

tions between the Plaintiff and FAI employees took place with the FAI employees located in Virginia, and any representations made in those conversations by FAI were made from Virginia. Furthermore, any decisions made by FAI to engage in any of the alleged activities were made in FAI's home office in Virginia. *See Evangelical Lutheran Church in America v. Atlantic Mutual Insurance Co., 973 F. Supp. 820, 822-23 (N.D. Ill. 1997)* [*7] (situs of events giving rise to an action by an insured against insurer who denied coverage deemed to have occurred at the insurer's home office, where the decision to deny coverage was made).

Based on the above, Dortch's choice of forum is not conclusively dispositive but, rather, is considered as one factor among many factors in determining whether transfer is appropriate.

*Convenience of Witnesses*

[HN5] The convenience of the witnesses who will testify at trial is one of the most important factors when deciding on an appropriate forum. *Law Bulletin, 992 F. Supp. at 1018.* However, the defendant will not be granted a transfer merely by presenting a long list of witnesses and claiming their inconvenience. *Law Bulletin, 992 F. Supp. at 1018.* Courts go beyond simply looking at the number of witnesses and weigh the quality and nature of their proposed testimony. *Law Bulletin, 992 F. Supp. at 1018.* The defendant is obligated to specify particular witnesses to be called and explain the nature of their testimony. *Heller, 883 F.2d at 1293.* In order to overcome the deference to the plaintiff's forum choice on the issue [*8] of witness convenience, the defendant must show that the testimony of these particular witnesses is necessary to his case. *General Portland Cement Co. v. Perry, 204 F.2d 316, 319 (7th Cir. 1953)(General Portland).* As a practical matter, it is usually assumed that witnesses within the control of the parties, employees of the Defendant in this case, will appear voluntarily. Therefore, more attention should be given to the location of the non-party witnesses and those witnesses not within the control of the parties. *Spherion Corp. v. Cincinnati Financial Corp., 183 F. Supp.2d 1052, 1058 (N.D. Ill. 2002).*

FAI has produced a list of witnesses and brief descriptions of their testimony. Given the nature of the complaint and the subject matter of the proposed testimony of FAI's witnesses, it appears that this testimony could be relevant and, indeed, necessary to FAI's defense. FAI lists four current employees as potential witnesses along with five other witnesses who are not within the control of FAI. Notably, the testimony of one Nicole Webb, a former FAI employee, is claimed to include details of a telephone conversation with Dortch which describes [*9] the information given to Dortch about the

financial arrangements and the terms of the contract between Dortch and FAI. Contrary to the Plaintiff's claims, testimony of this sort is quite relevant to FAI's defense.

Dortch claims that this case mainly involves form contracts and the disclosures made therein and that the Defendant has not sustained its burden of showing that the witnesses to be called are necessary. Dortch also claims that witness testimony will be limited to laying foundation for the form documents and advertising materials of FAI. However, in light of the alleged claims, it appears that witness testimony will be relevant to far more than simply laying the foundation for documentary evidence. Count II of the Plaintiff's complaint contains claims under *15 U.S.C. 1679b* against FAI for "engaging...in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair corporation". Whatever communications took place between Dortch and FAI will certainly be relevant to FAI's defense. Because FAI's [*10] witnesses are the only source of this information, other than the Plaintiff herself, the availability of these witnesses is important. Given that this testimony will come from witnesses in Virginia who are not within the control of FAI, this factor weighs heavily in favor of transferring venue to Virginia.

*Relative Ease of Access to Other Evidence*

FAI claims that virtually all the evidence in this case, other than FAI's witnesses' testimony, will consist of the production of FAI's business records, all of which are located in Virginia. FAI also claims that these records are voluminous, and bringing them to Illinois would interrupt its business activities. This consideration is of very little weight in the present case. [HN6] Transferring records is not a heavy burden to bear in light of modern photocopying and other means of transferring information. *DiRienzo v. Philip Services Corp., 232 F.3d 49, 66 (2nd Cir. 2000).* Accordingly, this factor weighs neither in transfer nor of retention.

*Situs of the Material Events*

As previously discussed, the situs of the material events took place primarily in Virginia. The importance of the events that occurred at the [*11] location of each individual plaintiff will be relatively minor compared to those that took place in Virginia. Due to the fact that this is an alleged national class action, the logical epicenter of the material events in this case is FAI's offices in Virginia. Accordingly, this factor weighs in favor of transfer.

**3. Interest of Justice**

[HN7] The analysis of the interest of justice focuses on the efficient administration of the court system, as opposed to the private considerations of the litigants. *Amoco, 90 F. Supp. 2d at 961*. This includes considering: (1) the relative familiarity of the courts with the applicable law, (2) the relation of the respective forums with the issue in the case, and (3) the relative congestion of the court dockets. *Amoco, 90 F. Supp. 2d at 961*; *Georgouses, 963 F. Supp. at 730*.

*Relative Familiarity of the Courts with the Applicable Law*

Since federal subject matter jurisdiction is based on a federal question, the United States District Court for the Eastern District of Virginia has equal footing with this Court in its ability to interpret the applicable law.

*Relation of the Respective* [*12]    *Forums with the Issues*

The relation of the Plaintiff's claims to the Illinois forum is weakened by the fact that Dortch brings this claim as an alleged national class action. *Countryman, 681 F. Supp. at 483*. Although the Plaintiff's class has not yet been certified, there is potentially a great number plaintiffs spread throughout the country. As such, Illinois bears no more relation to the Plaintiff's claims than does any other state where other plaintiffs may reside. On the other hand, all of the plaintiffs' transactions bear a strong relation to Virginia. While Dortch may be inconvenienced by a transfer to Virginia, there is nothing in the record to suggest that the remaining plaintiffs will be inconvenienced less by litigating in Illinois than in Virginia. *See Georgouses, 963 F. Supp. at 730*. Since Virginia is the location of the Defendant's offices and the state of its incorporation, it would seem that Virginia is a more appropriate forum. *See Georgouses, 963 F. Supp. at 730*. Accordingly, this factor weighs in favor of transfer.

*Relative Congestion of the Court Dockets*

Also weighing in favor of transferring this case [*13] to Virginia is the relative congestion of the court dockets. However, as admitted by the Defendant, the difference in time to disposition in the Virginia court verses this Court is less than one month. Accordingly, this factor weighs neither in transfer nor in retention.

In sum, transfer to the Eastern District of Virginia is proper. Although Dortch chose this forum, her choice is but one of many factors which the Court considers. The relative ease of access to other evidence, the relative familiarity of the courts with the applicable law, and the relative congestion of the court dockets do not weigh in favor of either transfer or retention. However, compelling factors, including the convenience of witnesses, the situs of material events, and the relation of the respective forums with the issues, weigh heavily in favor of transfer. *See Amoco, 90 F. Supp. 2d at 962-63* (transferring cause of action because situs of material events, relative ease of access to sources of proof, and relation to respective forum weighed in favor of transfer).

Based on the above, FAI's Motion to Transfer this case to the United States District Court for the Eastern District of Virginia [*14] is granted.

Dated: April 16, 2002

JOHN W. DARRAH

United States District Judge

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § | |

**Attachment**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT THEREOF**

*Laffal v. Overseas Adventure Travel Partners, Inc.*, 2000 WL 362017
(M.D. Fla. Mar. 31, 2000)

**Westlaw.**

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2000 WL 362017 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 362017)**

---

**C**Laffal v. Overseas Adventure Travel Partners, Inc.
M.D.Fla.,2000.
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida.
Ken LAFFAL, Plaintiff,
v.
OVERSEAS ADVENTURE TRAVEL PARTNERS
INC., a Delaware Corporation, and Wineland-
Thomson Adventures, Inc., formerly known as
Overseas Adventure Travel, a Massachusetts
Corporation, Defendant.
**No. 3:99-CV-1113-J-21A.**

March 31, 2000.

*ORDER*

NIMMONS, J.

**\*1** This cause comes before the Court on Defendants'
Joint Motion to Dismiss on Grounds of Forum Non
Conveniens or, in the Alternative, to Transfer Under
28 U.S.C. § 1404(a) (Dkt.9), Defendants'
Memorandum in support thereof (Dkt.10), Plaintiff's
Response thereto (Dkt.13), and Defendants' Reply to
Plaintiff's Response (Dkt.20).

I. Facts

Plaintiff is a photographer who specializes in travel
photography. He resides in St. Augustine, Florida.
Plaintiff licenses the use of his photographs to
various individuals and companies for use in
publications. In 1989, Plaintiff sent some 360
photographs to Defendant, a corporation located in
Massachusetts, in order to solicit business. The
parties struck a deal to license the use of those
photographs in travel brochures until 1991.
Subsequent to 1991, some of the photographs have
been used in travel brochures produced by
Defendants.

Plaintiff filed suit in the Middle District of Florida
claiming copyright violations, fraud, and breach of
contract.

II. Applicable Legal Principles

A motion to transfer venue is governed by 28 U.S.C.
§ 1404(a).Section 1404(a) is the statutory
codification of the common law doctrine of forum
non conveniens. See*Tampa Bay Storm v. Arena
Football League, Inc.,* 932 F.Supp. 281, 282
(M.D.Fla.1996). Under § 1404(a), a district court has
the discretion to transfer any civil action to any
district where it could have originally been brought
for (1) the convenience of the parties, (2) the
convenience of the witnesses, and (3) the interests of
justice. See*Van Dusen v. Barrack,* 376 U.S. 612, 84
S.Ct. 805, 11 L.Ed.2d 945 (1964); *Robinson v.
Giarmarco & Bill, P.C.,* 74 F.3d 253, 260 (11th
Cir.1996). The purpose behind § 1404 is "to prevent
the waste 'of time, energy and money' and 'to protect
litigants, witnesses and the public against
unnecessary inconvenience and expense." ' *Van
Dusen,* 376 U.S. at 616, 84 S.Ct. at 809.

"The plaintiff's choice of forum should not be
disturbed unless the movant can show that it is
clearly outweighed by other
considerations."*Robinson,* 74 F.3d 260quoting*Howell
v. Tanner,* 650 F.2d 610, 616 (5th Cir. Unit B 1981).
Where the plaintiff's choice of forum is not connected
with either the parties or with the subject matter of
the lawsuit, the defendant generally encounters less
difficulty in meeting his burden. See*Patel v. Howard
Johnson Franchise Sys., Inc.,* 928 F.Supp. 1099,
1101 (M.D.Ala.1996).

The following are some of the considerations deemed
important: (1) relative ease of access to sources of
proof, (2) ability to obtain witnesses, (3) court
congestion and jury duty generated by controversies
having no relation to the forum, (4) the desirability of
having localized controversies decided at home, and
(5) the difficulties attendant to resolving conflict-of-
laws problems and applying foreign law. *Seguridad
v. Transytur Line,* 707 F.2d 1304, 1307 (11th
Cir.1983).[FN1] This list is not meant to be exhaustive,
"but merely to suggest the range of relevant
considerations."*Id.*

> FN1.*See also*Tampa Bay,* 932 F.Supp at 282
> (Factors that must be considered are: (1)
> plaintiff's initial choice of forum; (2) the
> convenience of the parties and witnesses; (3)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 362017 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 362017)**

the relative ease of access to sources of proof; (4) the availability of compulsory process for witnesses; (5) the location of relevant documents; (6) the financial ability to bear the costs of the change; (7) and "all other practical problems that make trial of the case easy, expeditious, and inexpensive.")

## III. Arguments of the Parties

**\*2** Defendants argue that the District of Massachusetts is the more appropriate forum. Defendants contend that the alleged incidents occurred in Massachusetts; all the witnesses, except the Plaintiff, reside in Massachusetts; and all the sources of proof are located in Massachusetts. Defendants also contend that because the contract at issue was negotiated and executed in Massachusetts, the proper forum for Plaintiff's action is there. Additionally, Defendants contend that, because the transaction was initiated by Plaintiff at the Defendants' places of business, and he actually visited them there, Plaintiff would not be unduly burdened by traveling to Massachusetts to prosecute his claim.

Plaintiff contends that, because the alternative forum is not abroad, dismissal is improper. Plaintiff argues that the Plaintiff's choice of forum, especially when it is his home forum, is given substantial deference. To overcome that deference, the Defendant must demonstrate that the balance of conveniences clearly weigh in favor of transfer; the Plaintiff contends they do not. Plaintiff argues that transferring the case to Massachusetts will simply move the inconveniences from the Defendants to the Plaintiff.

Plaintiff contends that, although the Defendants have a larger number of witnesses, the important factor for consideration is materiality, not quantity. Plaintiff argues that, because the only issue is what compensation is due him, his testimony is of primary importance. Plaintiff also argues that he has copies of the pertinent documents; therefore, all the proof that is required for the case is located in Florida. Plaintiff also contends that there is no focal point of this case, and because the contract negotiations occurred via telephone, Florida is just as appropriate a forum as Massachusetts.

## IV. Discussion

Under 28 U.S.C. § 1404(a), it is within the Court's discretion to grant a request for transfer if such a transfer is more convenient for the parties, more convenient for the witnesses, and in the interests of justice. Plaintiff's point that their choice of forum is due substantial deference is well taken. However, in this case, the factors considered in evaluating the request for transfer weigh heavily in favor of transfer.

One of the most important factors for consideration is the convenience of the witnesses. Here, the Plaintiff has not shown that any witness, other than himself, is necessary for his case. The Defendants have shown, via the affidavit of Lawrence Fox (Dkt.11), that they will have at least five witnesses, all of whom reside in Massachusetts. Additionally, not all of the witnesses are employed by Defendants. It is reasonable to assume that a non-employee witness would be greatly inconvenienced, and far less likely to appear voluntarily, if the trial were held 1145 miles from their home. The District of Massachusetts could compel their appearance; this Court could not. The convenience of and ability to obtain witnesses weighs in favor of a transfer.

**\*3** The next consideration is the relative ease of access to sources of proof. Plaintiff claims that he has all the proof needed for the determination of the infringement charge. Defendants point out that there are other charges in the complaint as well, namely breach of contract and fraud. Documents, memoranda, canceled checks, etc. are all located in Massachusetts. Additionally, the original businesses that were parties to the transaction have either gone out of business or been acquired by other corporations. The court in Massachusetts is in a much better position to oversee what is likely to be a complicated discovery process. Also, if Plaintiff has all the proof required to present his case as he claims, he loses nothing if the case is transferred. If Plaintiff discovers that he needs additional evidence, then he will benefit from the transfer. Relative ease of access to proof clearly weighs in favor of a transfer.

Another factor to consider is the financial ability to bear the cost of a change of venue. At first blush, this factor appears to weigh against transfer because a large company has more resources than one person. However, if the case were to remain here, there

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 362017 (M.D.Fla.)

**(Cite as: Not Reported in F.Supp.2d, 2000 WL 362017)**

would be a greater burden to Defendants than Plaintiff would bear on a transfer. If the case remained in Florida, Defendants would bear the expense of sending at least three employee-witnesses (Fox Aff. At 4, Dkt. 11) to the trial. The expenses would include normal travel costs plus the expense associated with disrupting their business for the duration of the trial. The Plaintiff, on the other hand, is a professional photographer who can work wherever he is. His business will be disrupted exactly the same amount no matter where the trial is held. Plaintiff's only expense would be travel. Plaintiff in this case is better able to bear the cost of a transfer than Defendant is able to bear the cost of the case remaining here.

There is a preference for localized conflicts being settled at home. But, as Plaintiff points out in his response to the motion (Dkt.13), "[t]his case does not lend itself to a locus investigation in the same way an accident case, for example, might."(Dkt. 13 at 11). Although mentioning it in their brief (Dkt. 10 at fn. 1), Defendants have not raised the issue of personal jurisdiction. The transfer ordered herein renders such issue moot and comports with judicial efficiency and is in the interest of justice.

V. Conclusion

Upon consideration of the foregoing, it is hereby ORDERED:

1. Defendant's Motion to Dismiss on Grounds of Forum Non Convenies or, in the Alternative, to Transfer Under 28 U.S.C. § 1404(a)(Dkt.9) is GRANTED to the extent that the case is transferred to the District of Massachusetts.

2. The Clerk is DIRECTED to transfer this case to the District of Massachusetts.

M.D.Fla.,2000.
Laffal v. Overseas Adventure Travel Partners, Inc.
Not Reported in F.Supp.2d, 2000 WL 362017 (M.D.Fla.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § | |

**Attachment**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT THEREOF**

*Moghaddam et al. v. Dunkin Donuts, Inc.*, 2002 U.S. Dist. LEXIS 14952
(S.D. Fla. Aug. 13, 2002)

LEXSEE 2002 U.S. DIST. LEXIS 14952

⚠
Caution
As of: Apr 17, 2008

**MANOOCHEHR FALLAH MOGHADDAM, a natural person, SOUTH FEDERAL HIGHWAY DONUTS, INC., 330262 DONUTS, INC., 330545 DONUTS INC., CENTRAL BROWARD DONUTS, INC., 304939 DONUTS, INC., 306157 DONUTS, INC., 300904 DONUTS, INC., and 308402-306047 DONUTS, INC., all Florida Corporations, Plaintiffs, vs. DUNKIN DONUTS, INC., a Delaware corporation, Defendant.**

**CASE NO. 02-60045-CIV-ZLOCH**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

*2002 U.S. Dist. LEXIS 14952*

**August 13, 2002, Decided**
**August 13, 2002, Filed**

**SUBSEQUENT HISTORY:** Transferred to, Motion denied by *Manoochehr Fallah Moghaddam v. Dunkin' Donuts, Inc., 2003 U.S. Dist. LEXIS 19996 (D. Mass., Nov. 7, 2003)*

**DISPOSITION:** [*1] Defendant, Dunkin Donuts Inc.'s Motion To Transfer Venue To District of Massachusetts granted. All pending motions denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, donut shop franchisees, sued defendant franchiser for improper use of franchising fees. This was filed as a class action. The case was filed in United States District Court for the Southern District of Florida. The franchiser moved to transfer the case to the United States District Court for the District of Massachusetts pursuant to *28 U.S.C.S. § 1404.*

**OVERVIEW:** The franchiser's alleged wrongdoing would have occurred at its principle place of business in Massachusetts. The district court found that the operative facts occurred outside the district chosen by the franchisees. Because this was a class action, and because the operative facts underlying the action occurred in the District of Massachusetts, the district court found that the

franchisees' choice of forum was entitled to less than normal deference. The convenience of witnesses also favored transfer since many lived and worked in Massachusetts, as well as the fact that much of the documentation was located there. For these same reasons, transfer of the case would have promoted public interest.

**OUTCOME:** The district court granted the motion to transfer venue.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN1] For the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. *28 U.S.C.S. § 1404(a).*

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN2] Whether a district court should transfer a matter to another district pursuant to *28 U.S.C.S. § 1404(a)* requires a two-part inquiry. First, the court must determine whether the plaintiffs could have brought this action in

the other district. Second, the court must determine whether the convenience of the parties and witnesses and the interests of justice weigh in favor of transfer. In making this second determination, the court considers such factors as: (1) the plaintiffs' choice of forum; (2) convenience of the parties and witnesses; (3) availability of compulsory process for witnesses; (4) access to sources of proof and location of relevant documents; (5) financial ability of the parties to bear the costs of change; and (6) the public interest.

***Civil Procedure > Venue > Federal Venue Transfers > General Overview***
[HN3] A plaintiff's choice of forum is generally afforded considerable deference where an action is brought in the district wherein the plaintiff resides.

***Civil Procedure > Venue > Federal Venue Transfers > General Overview***
[HN4] A plaintiff's choice of forum will be afforded less deference where an action is a class action. Where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

***Civil Procedure > Venue > Federal Venue Transfers > General Overview***
[HN5] A plaintiff's choice of forum will be afforded less deference when the operative facts underlying an action occurred outside the district chosen by the plaintiff.

***Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers***
***Civil Procedure > Venue > Motions to Transfer > Convenience of Parties***
***Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses***
[HN6] In a motion to transfer venue under *28 U.S.C.S. § 1404*, the convenience of the parties, especially where the case is a class action, is largely irrelevant to whether the cause should be transferred. The convenience of witnesses, however, is a primary, if not the most important, factor in passing on a motion to transfer under *28 U.S.C.S. § 1404(a)*.

***Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers***

[HN7] Relative ease of access to sources of proof is an important consideration in a motion to transfer venue pursuant to *28 U.S.C.S. § 1404*.

***Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers***
***Contracts Law > Negotiable Instruments > Transfers***
[HN8] While the relative bargaining power and financial positions of the parties can be a significant factor in a decision to transfer venue under *28 U.S.C.S. § 1404*, it alone cannot defeat transfer where other factors clearly favor transfer.

**COUNSEL:** Lawrence B. Lambert, Esq., For Defendant.

Robert Zarco, Esq., For Plaintiffs.

**JUDGES:** WILLIAM J. ZLOCH, Chief United States District Judge.

**OPINION BY:** WILLIAM J. ZLOCH

**OPINION**

**ORDER TRANSFERRING ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

THIS MATTER is before the Court upon the Defendant, Dunkin Donuts, Inc.'s Motion To Transfer Venue To The United States District Court For The District Of Massachusetts (DE 8). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

I. *Background*

The Plaintiffs own and operate Dunkin Donuts stores in Broward County, Florida pursuant to several franchise agreements entered into with the Defendant, Dunkin Donuts, Inc. (hereinafter "DDI"). Relevant to the instant Motion are Sections 3 and 4 of those agreements. Section 4 obligates the franchisees to pay an advertising and marketing fee of five (5) percent of the gross sales realized at any individual Dunkin Donuts store to DDI. Section [*2] 3 of the franchise agreements requires DDI to place these fees into a marketing and advertising fund known as the Dunkin Donuts of America, Inc. Franchise Owners' Advertising and sales Promotion Fund (hereinafter "the Fund"). The Fund is an advertising cooperative of Dunkin Donuts stores throughout the United States and is used to promote the sales and public reputation of Dunkin Donuts stores.

In their Class Action Complaint (DE 1, Ex. A), the Plaintiffs allege that DDI has sought to enforce the terms

of its franchise agreements and to collect advertising fees by filing numerous lawsuits against DDI franchisees throughout the United States. According to the Plaintiffs, these lawsuits ended either in judgments for DDI or settlements the results of which were that the franchisees paid to DDI whatever amounts were owed under their respective franchise agreements. The Plaintiffs further allege that through DDI's Loss Prevention Program numerous franchisees have remitted hundreds of thousands of dollars to DDI after having been found to have under reported their gross sales. Finally, the Plaintiffs allege that DDI has failed to use the fees it has collected from its franchisees for advertising [*3] purposes as required by Section 3 of the franchise agreements.

As a result of the foregoing, the Plaintiffs commenced the above-styled cause by filing a Class Action Complaint in state court on behalf of all current and former franchisees of DDI who executed franchise agreements with DDI between January 1, 1989 and August 31, 1999. (Compl. P 25.) The Plaintiffs' allege breach of contract (Count I), breach of covenant of good faith and fair dealing (Count II), breach of fiduciary duty (Count III), conversion (Count IV), and accounting (Count V). DDI timely removed the above-styled cause to federal court based upon diversity jurisdiction (DE 1). In the instant Motion, DDI seeks to transfer the above-styled cause to the United States District Court for the District of Massachusetts pursuant to *28 U.S.C. § 1404*.

## II. *Motion To Transfer*

The Court notes that Title *28, United States Code, Section 1404(a)* provides:

> [HN1] For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*28 U.S.C. § 1404* [*4]  *(a)*. [HN2] Whether the Court should transfer this matter to the District of Massachusetts pursuant to *§ 1404(a)* requires a two-part inquiry. First, the Court must determine whether the Plaintiffs could have brought this action in the District of Massachusetts. *See Mason v. Smithkline Beecham Clinical Lab.'s, 146 F. Supp.2d 1355, 1359 (S.D.Fla. 2001)*. Second, the Court must determine whether the convenience of the parties and witnesses and the interests of justice weigh in favor of transfer. *Id.* In making this second determination, the Court considers such factors as (1) the Plaintiffs' choice of forum; (2) convenience of the parties and witnesses; (3) availability of compulsory process for witnesses; (4) access to sources of proof and location of

relevant documents; (5) financial ability of the parties to bear the costs of change; and (6) the public interest. *Id.* With these legal principles in mind, the Court now turns to DDI's Motion.

In support of its Motion, DDI argues that (1) this case could have been brought in the District of Massachusetts; (2) the Plaintiffs' choice of forum is entitled little deference because the operative facts took place in Massachusetts [*5]  and because this is a class action; (3) the convenience of the parties and witnesses weigh in favor of transfer because the operative facts occurred in Massachusetts and all of DDI's witnesses who have knowledge of DDI's business affairs work and reside in Massachusetts; and (4) the public interest factors weigh in favor of Massachusetts because that is where DDI has its principle place of business. The Plaintiffs' respond by arguing that (1) their choice of forum is entitled to deference; (2) DDI's witnesses are all employees of DDI and their availability should not be considered; (3) access to proof does not weigh in favor of transfer because some documents are located here in South Florida and other documents will be exchanged during discovery; and (4) the Court should not consider public interest factors because DDI has failed to show that the private interests weigh in favor of transfer, and even if the Court were to consider the public interest, it weighs against transfer.

Because the parties do not dispute that this matter could have been brought in the District of Massachusetts, the Court will turn immediately to determine whether out of convenience of the parties and witnesses, [*6]  and in the interests of justice, it should transfer this matter to the District of Massachusetts.

### A. *Plaintiffs' Choice of Forum*

The Court notes that [HN3] a plaintiff's choice of forum is generally afforded considerable deference where, as here, the action is brought in the district wherein the plaintiff resides. *Mason, 146 F. Supp.2d at 1360*. However, the Court further notes that [HN4] a plaintiff's choice of forum will be afforded less deference where, as here, the action is a class action. *Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1358 (M.D.Ala. 1998)*. As stated by the United States Supreme Court:

> Where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.

2002 U.S. Dist. LEXIS 14952, *

*Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947); see also Bolton v. Tesoro Petroleum Corp., 549 F. Supp. 1312, 1313-14 (E.D.Pa. 1982)* [*7] (same). The Court further notes that [HN5] a plaintiff's choice of forum will be afforded less deference when the operative facts underlying the action occurred outside the district chosen by the plaintiff. *Gould, 990 F. Supp. at 1358; Bolton, 549 F. Supp. at 1315.* Here, the Plaintiffs have alleged that DDI failed to use fees recovered in litigation or through its Loss Prevention Program for advertising purposes as required by its franchise agreements. Any wrongdoing on behalf of DDI would have occurred at its principle place of business, in Randolph Massachusetts. Therefore, the Court finds that the operative facts occurred outside the district chosen by the Plaintiffs.

Because this is class action, and because the operative facts underlying the action occurred in the District of Massachusetts, the Court finds that the Plaintiffs' choice of forum is entitled to less than normal deference. *Gould, 990 F. Supp. at 1359.*

B. *Convenience of the Parties and Witnesses*

Next, the Court notes that [HN6] the convenience of the parties is largely irrelevant to whether the above-styled cause should be transferred to the District of Massachusetts. *Central Money Mortgage Company, Inc. v. Holman, 122 F. Supp.2d 1345, 1346 (M.D.Fla. 2000).* [*8] The convenience of witnesses, however, is "a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)." *McEvily v. Sunbeam-Oster Co., Inc., 878 F. Supp. 337, 344-45 (D.R.I. 1994).* Here, the Court notes that DDI has filed the Certification of Jack Laudermilk (DE 18, Ex. A), Assistant General Counsel for DDI, which specifies what witnesses DDI may call and the significance of their testimony. *Id.* (noting that party seeking transfer must state with particularity by affidavit or other proof the witnesses to be called, the significance of their testimony, and the extent of their inconvenience). Specifically, DDI states that Allison Wallach, Director of the Fund Management, is a potential witness who would testify in all respects as to the organization, management, and operation of the Fund. (DE 18, Ex. A, Certification of Jack Laudermilk, P 4.) Michael Mershimer, Director of DDI's Loss Prevention Department, is a potential witness who would testify as to the operation and administration of the Loss Prevention Program. (*Id.* at P 5.) Jack Laudermilk is a potential witness who would testify to as to the litigation that occurred [*9] between DDI and its franchisees as alleged in the Plaintiffs' Complaint. (*Id.* at P 6.) And Gary Zullig, Supervisor of Credit and Collections for DDI, is a potential witness who would testify as

to the operation and administration of DDI's collection department. (*Id.* at P 7.) All these potential witnesses reside and work in or near the District of Massachusetts. (*Id.* at PP 1, 4, 5 & 7.)

The Plaintiffs state in response that they will retain several expert witnesses, all of whom reside in Florida, who will testify as to the damages sustained by the Plaintiffs and class members as a result of DDI's wrongful conduct. (DE 22, Decl. of Manoochehr Fallah Moghaddam, P 8.)

After considering this factor, the Court finds that the convenience of witnesses clearly weighs in favor of transfer. The Court notes that while DDI's witnesses would have an incentive to travel to the Southern District of Florida and testify on behalf of their employer, the inconvenience of doing so clearly weighs in favor of DDI. *McEvily, 878 F. Supp. at 347.* As noted above, all these witnesses would testify as to matters relevant to the issues raised in the Plaintiffs' Complaint, they all [*10] live and work in Massachusetts, and they all would be inconvenienced if their presence was required for trial in South Florida. Therefore, the Court finds that this factor clearly weighs in favor of transfer.

C. *Access to Proof and Location of Relevant Documents*

Here, the Court notes that the Plaintiffs' are alleging a class action on behalf of all franchisees who executed a franchise agreement with DDI between January 1, 1989 and August 31, 1999. (Compl. P 25.) Clearly, the potential amount of documentation in this case is enormous. Moreover, the vast majority of these documents, including those concerning the Fund, DDI's Loss Prevention Program, DDI's litigation, and DDI's collections department are all in Massachusetts. (DE 18, Ex A., Certification of Jack Laudermilk, PP 4, 5, 7, 9 & 10.) In contrast, the only documents located here in South Florida are those relating to the Plaintiffs' franchisees. (DE 22, Decl. of Manoochehr Fallah Moghaddam, P 5.) Because the bulk of the relevant documents are located in Massachusetts, the Court finds that this factor clearly weighs in favor of transfer. *See Jewelmasters, Inc. v. May Dep't Stores Co., 840 F. Supp. 893, 896 (S.D.Fla. 1993)* [*11] (location of majority of documents in California favored transfer to that district); *Cortez v. First City Nat'l Bank of Houston, 735 F. Supp. 1021, 1024 (M.D.Fla. 1990)* ([HN7] relative ease of access to sources of proof an important consideration in motion to transfer).

D. *Financial Ability to Bear Cost of Change*

As to the financial ability to bear the costs of changing venue, the Court notes that the Plaintiffs have stated that they would incur significant additional expenses, experience disruption in the operation of their busi-

nesses, and be inconvenienced by a transfer. (DE 22, Decl. of Manoochehr Fallah Moghaddam, P 9.) The Court further notes, however, that [HN8] while "the relative bargaining power and financial positions of the parties can be a significant factor in a transfer decision," it alone cannot defeat transfer where, as here, the other factors clearly favor transfer. *Bolton, 549 F. Supp. at 1317.* Moreover, the Court notes that maintaining the above-styled cause in the Southern District of Florida would place a financial burden upon those witnesses who would have to take time off from their employment to travel and attend trial in the Southern [*12] District of Florida as opposed to the District of Massachusetts. Therefore, the Court finds that this factor clearly weighs in favor of transfer.

E. *Public Interest*

Finally, the Court notes that the public interest weighs in favor of transferring this case to the District of Massachusetts. The Plaintiffs have alleged that DDI misused advertising fees paid to it by franchisees from all over the United States. If this is true, such wrongdoing occurred at DDI's principle place of business in Randolph, Massachusetts. Therefore, the alleged acts that gave rise to this action occurred in the District of Massachusetts and the case should be tried there. Moreover, as noted above, many of the witnesses involved in the matter reside and work in Massachusetts. Therefore, the Court finds that transferring this case to the District of Massachusetts would promote the public interest.

III. *Conclusion*

In conclusion, the Court finds that after careful consideration of the above mentioned factors transferring the above-styled cause to the District of Massachusetts is

appropriate. In particular, the Court finds that because this is a class action with potentially numerous plaintiffs and voluminous [*13] documentary evidence, the convenience of the witnesses and the location of the relevant documents, both located at DDI's principle place of business in Randolph, Massachusetts, weigh heavily in favor of transfer. *See Bolton, 549 F. Supp. at 1316* (noting that many class actions are transferred to the district wherein the defendant corporation's home office, as well as many of the relevant documents, defendants, and witnesses are located).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Defendant, Dunkin Donuts Inc.'s Motion To Transfer Venue To The United States District Court For The District of Massachusetts (DE 8) be and the same is hereby **GRANTED;**

2. The Clerk of the United States District Court for the Southern District of Florida is hereby **DIRECTED** to take all necessary steps and procedures to effect the expeditious transfer of the above-styled action to the United States District Court for the District of Massachusetts; and

3. To the extent not otherwise disposed of herein, all pending Motions are hereby **DENIED** without prejudice, with leave for refiling in the transferee court.

**DONE AND ORDERED** [*14] in Chambers at Fort Lauderdale, Broward County, Florida, this *13th* day of August, 2002.

WILLIAM J. ZLOCH

Chief United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO. 8:08-CV-00166-T-27MAP |
| CENTEX HOMES, INC., A Florida Corporation, | § § § | |
| Defendant. | § § § | |

**Attachment**

**to**

**DEFENDANT'S MOTION TO TRANSFER VENUE AND INCORPORATED**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

*Roy v. Alliance Capital Mgmt., L.P., et al.*, 2002 U.S. Dist. LEXIS 26660
(M.D. Fla. Mar. 12, 2002)

LEXSEE 2002 U.S. DIST. LEXIS 26660

⚠
Caution
As of: Apr 17, 2008

SUSANNE ROY, Plaintiff, v. ALLIANCE CAPITAL MANAGEMENT, L.P. and
ALLIANCE PREMIER GROWTH FUND, Defendants.

Case No. 8:01-cv-2449-T-24MSS

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLOR-
IDA, TAMPA DIVISION

*2002 U.S. Dist. LEXIS 26660*

March 12, 2002, Decided
March 13, 2002, Filed

**SUBSEQUENT HISTORY:** Transferred to, Claim dis-
missed by *Benak v. Alliance Capital Mgmt. L.P., 2004
U.S. Dist. LEXIS 12231 (D.N.J., Feb. 9, 2004)*

**DISPOSITION:**    [*1] Defendant's Motion to Transfer
Action to District of New Jersey GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff shareholder filed
a derivative action on behalf of nominal defendant in-
vestment fund, alleging that defendant investment ad-
viser breached its fiduciary duties to the fund sharehold-
ers because one of the investment adviser's directors had
a conflict of interest while serving as a director of an-
other company. The investment adviser filed a motion to
transfer the action to a district court in New Jersey pur-
suant to *28 U.S.C.S. § 1404.*

**OVERVIEW:** The investment adviser contended that
the action needed to be transferred to a district court in
New Jersey, because the action was identical to an action
filed in New Jersey some two weeks before the lawsuit at
issue was filed. The court determined initially that venue
of the action was proper in the State of New Jersey. The
investment adviser asserted that the "first-filed" rule
should apply. The court agreed, finding that the share-
holder had not identified any compelling circumstances
that would justify a departure from the "first-filed" rule.
The fact that the Florida attorney general was conducting
a civil Racketeer Influenced and Corrupt Organizations

Act investigation of the investment adviser did not estab-
lish compelling circumstances that would justify a depar-
ture from the first filed rule. The court found that the
convenience of the parties, particularly defendants and
the witnesses, and the interests of justice supported a
transfer of the action to New Jersey because a majority
of the witnesses and the documents necessary were lo-
cated in New Jersey and transfer would also preserve
judicial resources.

**OUTCOME:** The court granted the investment adviser's
motion to transfer the action to a district court in New
Jersey.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Federal Venue Transfers >
Convenience Transfers*
[HN1] A motion to transfer is governed by *28 U.S.C.S. §
1404(a). Section 1404(a)* states that for the convenience
of parties and witnesses, in the interest of justice, a dis-
trict court may transfer any civil action to any other dis-
trict or division where it might have been brought. The
purpose of *§ 1404(a)* is that where a civil action to vindi-
cate a wrong presents issues and requires witnesses that
make one district court more convenient than another,
the trial judge can, after findings, transfer the whole ac-
tion to the more convenient court. The moving party car-
ries the burden of demonstrating that the transfer should
be granted. Unless the moving party demonstrates that

the balance of convenience is strongly in favor of the transfer, plaintiff's choice of forum should be maintained.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*

[HN2] Under *28 U.S.C.S. § 1404(a)*, the district court is left with broad discretion to transfer any action for the convenience of the parties and witnesses and in the interests of justice. In determining whether a case should be transferred, courts must make two inquiries: whether the action could have been filed in the proposed transfer district and whether various factors demonstrate that the proposed transfer district is, indeed, a more convenient forum. Factors relevant to the court's inquiry include: (1) plaintiff's initial choice of forum; (3) convenience of the parties and witnesses; (3) ease of access to sources of proof; (4) ability to obtain witnesses; (5) location of relevant documents; and (6) all other practical problems that make trial of the case easy, expeditious, and inexpensive. When weighing these factors, a court should make its determination based on the particular facts in the case before it.

*Civil Procedure > Joinder of Claims & Remedies > General Overview*

[HN3] The purpose of the "first-filed" rule is to conserve judicial resources and avoid conflicting rulings.

*Civil Procedure > Joinder of Claims & Remedies > General Overview*

[HN4] Although the United States Court of Appeals for the Eleventh Circuit follows the "first-filed" rule, courts may depart from this rule in certain compelling circumstances.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*

[HN5] The United States Supreme Court has stated that *28 U.S.C.S. § 1404(a)* is intended to prevent unnecessary inconvenience and expense to parties, witnesses, and the public.

**COUNSEL:** For SUSANNE ROY, on behalf of Alliance Premier Growth Fund, plaintiff: Peter Antonacci, Lori S. Rowe, Gray, Harris & Robinson, P.A., Tallahassee, FL.

For ALLIANCE CAPITAL MANAGEMENT L.P., defendant: John Eamon Johnson, Edward C. LaRose, Marvin E. Barkin, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL USA.

For ALLIANCE CAPITAL MANAGEMENT L.P., defendant: James N. Benedict, Mark A. Kirsch, Sean M. Murphy, Clifford, Chance, Rogers & Wells, LLP, New York, NY.

**JUDGES:** SUSAN C. BUCKLEW, United States District Judge.

**OPINION BY:** SUSAN C. BUCKLEW

**OPINION**

*ORDER*

This cause comes before the Court on Defendant Alliance Capital Management L.P.'s Motion to Transfer the Action to the District of New Jersey. (Doc. No. 8). Plaintiff opposes this motion. (Doc. No. 17).

*I. Background*

Plaintiff is a shareholder of Nominal Defendant Alliance Premier Growth Fund ("Fund"). Plaintiff brings this derivative action on behalf of the Fund pursuant to Section 36(b) of the Investment Company Act of 1940 ("ICA"), *15 U.S.C. § 80a-35*. In her Complaint, Plaintiff [*2] alleges that the Fund's investment adviser, Alliance Capital Management L.P. ("Defendant"), breached its fiduciary duty to Fund shareholders because one of Defendant's directors, Frank Savage, also served as a director of Enron Corporation ("Enron"). Plaintiff further alleges that Defendant improperly invested in Enron at a time when Mr. Savage allegedly had knowledge of fraudulent activities in which Enron was alleged to have participated.

Defendant asserts that this action is identical to a complaint filed in the District of New Jersey two weeks prior to Plaintiff's filing the instant action in this Court, (Doc. No. 8, Exh. E ("Murphy Aff.")), and as such, this action should be transferred to the District of New Jersey. In support of its motion, Defendant argues that the "First-Filed" rule requires that this action be transferred to the District of New Jersey. Defendant also asserts that the action should be transferred for the convenience of the parties and witnesses and in the interest of justice. Specifically, Defendant argues that venue is proper in the District of New Jersey; Plaintiff's choice of forum should be given little, if any, deference in the case at bar; the location [*3] of witnesses and evidence favors transfer; the material events occurred in or near the District of New Jersey; and transfer should not delay resolution of this action.

Plaintiff counters that the interests of justice require that this action proceed before this Court. Specifically, Plaintiff asserts that Defendant has already agreed to produce documents to the Florida Attorney General pur-

suant to a Civil RICO subpoena; Defendant's witnesses will testify in Florida in connection with the civil RICO investigation; the docket of the Middle District compares favorably with docket of the District of New Jersey; and the Middle District is well-equipped to manage the issues raised in Plaintiff's action. Plaintiff also argues that Defendant's arguments in favor of transfer are not supported by the facts of this case. Plaintiff specifically states that the "First-Filed" rule should not be applied in this case; that because witnesses are dispersed throughout Florida, New York, Texas, and Minnesota, there is no compelling reason to try this matter in New Jersey; and that because there is no geographical focal point in this litigation, the Middle District of Florida is the appropriate judicial [*4] forum.

## II. *Standard*

[HN1] A motion to transfer is governed by *28 U.S.C. § 1404(a)*. Section 1404(a) states that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of *§ 1404(a)* is that "where a 'civil action' to vindicate a wrong. . .presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26, 4 L. Ed. 2d 1540, 80 S. Ct. 1470 (1960)*. The moving party carries the burden of demonstrating that the transfer should be granted. Unless the moving party demonstrates that the "balance of convenience is 'strongly in favor' of the transfer," Plaintiff's choice of forum should be maintained. *American Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc., 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999)*.

[HN2] Under *§ 1404(a)*, the district court is left with broad discretion to transfer any action for the convenience of the parties and witnesses and [*5] in the interests of justice. *See Central Money Mortgage Co., Inc. v. Holman, 122 F. Supp. 2d 1345, 1346-47 (M.D. Fla. 2000)*; *Laffal v. Overseas Adventure Travel Partners Inc., 2000 U.S. Dist. LEXIS 4547 at *3 (M.D. Fla. March 31, 2000)*. In determining whether a case should be transferred, courts must make two inquiries: whether the action could have been filed in the proposed transfer district and whether various factors demonstrate that the proposed transfer district is, indeed, a more convenient forum. *See Meterlogic, Inc. v. Copier Solutions, Inc., 185 F. Supp. 2d 1292, 2002 U.S. Dist. LEXIS 2820 at *17-18 (S.D. Fla. 2002)*. Factors relevant to the court's inquiry include: (1) plaintiff's initial choice of forum; (3) convenience of the parties and witnesses; (3) ease of access to sources of proof; (4) ability to obtain witnesses; (5) location of relevant documents; and (6) "all other practi-

cal problems that make trial of the case easy, expeditious, and inexpensive." *Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F. Supp. 281, 283 (M.D. Fla. 1996)*. When weighing these factors, a court should [*6] make its determination based on the particular facts in the case before it. *American Aircraft Sales, 55 F. Supp. 2d at 1351*.

## III. Analysis

The initial inquiry is whether this case could have been brought in the proposed district of transfer, the District of New Jersey. *Central Money, 122 F. Supp. 2d at 1346*. Defendant asserts that venue is proper in the District of New Jersey. Because both Defendant and the Fund do business in New Jersey, the New Jersey District Court may exercise personal jurisdiction over them. Plaintiff does not dispute that the action could have been brought in the District of New Jersey. As such, this Court finds that New Jersey is a proper venue for this case.

Defendant asserts that because jurisdiction in the District of New Jersey is proper and because a nearly identical complaint was filed in that court two weeks prior to Plaintiff's filing of her Complaint in this Court, the "First-Filed" rule requires that the action be transferred. *See Jasper Corp. v. Nat'l Union Fire Ins. Co., 1999 U.S. Dist. LEXIS 15334 at * 13 (M.D. Fla. Sept. 3, 1999)*. [HN3] The purpose of this rule is "to conserve judicial resources [*7] and avoid conflicting rulings." *Id.*

[HN4] Although the Eleventh Circuit follows the "First-Filed" rule, courts may depart from this rule "in certain compelling circumstances." *Id.* Plaintiff argues that such compelling circumstances exist in the case at bar which justify a departure from the "First-Filed" rule. Specifically, Plaintiff asserts that the Florida Attorney General's civil RICO investigation of Defendant, which will include inquiries into many of the areas at issue in the instant case, requires a departure from the "First-Filed" rule as 'volumes of documents' will be sent to the State of Florida and several witnesses will be compelled to testify in Florida. The Court, however, does not find the investigation by a state attorney general for civil RICO violations to be so substantially connected to a derivative action by a shareholder before a federal district court as to constitute "compelling circumstances" which justify a departure from the "First-Filed" rule. To the contrary, Plaintiff's complaint essentially mirrors that complaint which was filed in the District of New Jersey two weeks prior to the initiation of Plaintiff's cause of action in this Court. As such, this [*8] Court finds there are no compelling reasons to depart from the "First-Filed" rule.

The Court further finds that the action should be transferred for the convenience of the parties and wit-

2002 U.S. Dist. LEXIS 26660, *

nesses and in the interests of justice. First, Defendant asserts that potential witnesses include its employees with direct knowledge of the Fund's investments in Enron, Defendant's directors and senior officers, and the Fund's directors and senior officers -- of whom the vast majority reside in the New York City/New Jersey metropolitan area. Defendant asserts that none of these potential witnesses have any connection to the Middle District of Florida. Plaintiff counters that any inconveniences claimed by Defendant are highly suspect because many of these same witnesses are expected to testify in Florida in connection with the Attorney General's investigation and that two potential witnesses have already agreed to appear before a Florida House Committee within the next few weeks. However, the fact that some witnesses may be compelled by subpoena to testify in connection with the Attorney General's investigation while other potential witnesses will shortly appear before a Florida House Committee does [*9] not render yet another trip to Florida to testify in a separate civil action before this Court any less inconvenient.

Second, the vast majority of documents relevant to this case are located at offices in the New York City/New Jersey metropolitan area, or in Minnesota. In response, Plaintiff again asserts that because Defendant has previously been served with a document subpoena by the Attorney General and has already agreed to provide the Attorney General with all requested documents by February 28, 2002, a substantial depository of documents is expected to be established in Florida. However, Plaintiff ignores the fact that although many of the relevant documents may be located in Florida at the Attorney General's office, they would still have to be produced again for this Court. On the other hand, transferring this case to the District of New Jersey would not likely require Defendants to produce more copies of the relevant documents as that District is already handling a case which is nearly identical to the instant action. Transferring the case to the District of New Jersey will likely eradicate the need for multiple document production.

Finally, the interests of justice require [*10] that this Court transfer the action to the District of New Jersey. [HN5] The Supreme Court has stated that *§ 1404(a)* was intended to prevent "unnecessary inconvenience and expense to parties, witnesses, and the public." *Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 21, 4 L. Ed. 2d 1540, 80 S. Ct. 1470 (1960).* Although transferring the case will undoubtedly inconvenience Plaintiff, the inconvenience the transfer will impose upon her does not compare to that which would be imposed upon Defendant if the case were to remain pending in this Court. In light of the fact that this case is a derivative action, it is highly unlikely that Plaintiff's presence "would help to make whatever case can be made [on] behalf of the corporation." *Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 525, 91 L. Ed. 1067, 67 S. Ct. 828 (1947).* Plaintiff has not indicted that she possesses any information which would be helpful to the resolution of the matters at issue in the case at bar, nor has she indicted that she intends to serve as a witness at trial. As such, it appears that the burden on Defendant in having to defend this action in this Court would be much greater than that which will be [*11] imposed upon Plaintiff in pursuing this case in the District of New Jersey. Most importantly, transfer of this case to the District of New Jersey is necessary to preserve judicial resources and to avoid the potential for inconsistent judgments.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Transfer the Action to the District of New Jersey (Doc. No. 8) is **GRANTED**. This cause is hereby transferred to the District of New Jersey. As the Court has granted Defendant's motion to transfer, Defendant's Motion to Dismiss (Doc. No. 28) is hereby transferred to the District of New Jersey.

**DONE AND ORDERED** at Tampa, Florida this 12th day of March, 2002.

SUSAN C. BUCKLEW

United States District Judge