IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CASE NO.  3-08cv1196-L |
| CENTEX HOMES, INC., A Florida Corporation | § § § | |
| Defendant. | § § § | |

**APPENDIX**
**TO**
**DEFENDANT'S MOTION FOR SANCTIONS**

In support of its Motion for Sanctions, Defendant, Centex Homes, a Nevada

General Partnership provides the following attached documents:

| DOCUMENT DESCRIPTION | DOCUMENT RANGE |
|---|---|
| Motions and Applications for Admission Pro Hac Vice for Gregg I. Shavitz, Richard B. Celler, Lauren G. Dreilinger, and Carlos Leach | APP 1-32 |
| *Hamm v. TBC Corp.,* No. 07-80829-CIV, 2009 WL 289822 (S.D. Fla. Feb. 3, 2009) | APP 33-48 |
| Declaration of Travis Bradey with attached Exhibit A | APP 49-55 |
| Excerpts from Russell Hutchins Deposition | APP 56-64 |
| Declaration of Edwin Woods | APP 65-66 |

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 4 2008

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

JASON R. ODEM, on his own behalf and
others similarly situated,

     Plaintiff,

v.                            Case No.: 3:08-CV-1196-L

CENTEX HOMES, INC.,
a foreign Corporation,

     Defendant.

_____/

## MOTION FOR ADMISSION *PRO HAC VICE* WITHOUT LOCAL COUNESL OF GREGG I. SHAVITZ

Movant, Gregg I. Shavitz, certifies as follows as part of the instant Motion for Admission *Pro Hac Vice* Without Local Counsel of Gregg I. Shavitz, Esquire counsel of Plaintiff, JASON R. ODEM, on behalf of himself and others similarly situated to him, in accordance with Local Rules of the Northern District of Texas:

1.     Mr. Shavitz states he is in good standing of the Bar of the State of Florida. He further states that he is an attorney with the law firm, Shavitz Law Group, located at 1515 S. Federal Highway, Boca Raton, Florida, 33432.

2.     Mr. Shavitz, Esq. hereby moves for admission *pro hac vice* to without local on behalf of Plaintiff, JASON R. ODEM, on behalf of himself and others similarly situated to him.

3.     Mr. Shavitz states he has not been the subject of any disciplinary action by the Florida Bar or by Courts or the Bar of any State. Mr. Shavitz further verifies he has never been denied admission to the Courts of any state or to any federal court.

APP 1

4.    Mr. Shavitz states he has reviewed the Local Rules of Civil Procedure for the Northern District of Texas and is familiar with these rules and shall at all times abide by and comply with the Local Rules for the entirety of this action.

5.    Mr. Shavitz understands that by appearing in this case, he becomes subject to the rules of this Court and is subjecting himself to the discipline of this Court.

6.    Mr. Shavitz is not associated with any local counsel practicing in the Northern District of Texas and therefore, respectfully requests, based upon the above, to be admitted *pro hoc vice* without local counsel for the purposes of the above-captioned case only.

Wherefore, Gregg I. Shavitz, Esq., respectfully requests that their motion to appear *pro hoc vice* without local counsel be granted.

Dated: August 1, 2008

Respectfully submitted,

Gregg I. Shavitz, Esq.
Florida Bar No. 0011398
E-mail: gshavitz@shavitzlaw.com
Shavitz Law Group, P.A.
1515 South Federal Hwy, Suite 404
Boca Raton, Florida 33432
Telephone: (561) 447-8888
Facsimile: (561) 447-8831
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via U.S. Mail on all counsel or parties of record on the attached service list, this 1 day of August 2008.

Gregg I. Shavitz

**APP 2**

**SERVICE LIST**
**Jason Odem v. Centex Homes, Inc.**
**Case No.: 3:08-cv-1196-L**
**United States District Court, Northern District of Texas**

LITTLER MENDELSON, P.C.
4767 New Broad Street
Orlando, Florida 32814
Telephone: (407) 514-2637
Facsimile: (407) 514-2638

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, Texas 75201
Telephone: (214) 880-8100
Facsimile:  (214) 880-0181

Jeffrey B. Jones
Fl Bar Number 0039950
jbjones@littler.com
Kimberly River Miers
TX Bar Number 24041482
kmiers@littler.com
Steven R. McCown
smccown@littler.com
TX Bar Number 13466500
Jennifer A. Youpa
TX Bar Number 01383400
jyoupa@littler.com
Allan G. King
TX Bar Number 11433200
aking@littler.com
Scott C. Sherman
TX Bar Number 24041906
ssherman@littler.com

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| JASON ODEM , | § | FILED |
| Plaintiff | § | AUG 1 2 2008 |
| v. | § | CLERK, U.S. DISTRICT COURT |
| CENTEX , | § | By _____ Deputy |
| Defendant | § | 3:08-cv-1196-L |
|  | § | Case Number |

## APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

**I.**    Applicant is an attorney and a member of the law firm of (or practices under the name of)

_____Shavitz Law Group, P.A.____, with offices at _____1515 South Federal Hwy, Suite 404_____,

                                                (Street Address)

_____Boca Raton_____, _____FL_____, ___33432___, ___561-447-8888___.

(City)                        (State)              (Zip Code)        (Telephone No.)

**II.**    Applicant will sign all pleadings with the name _____Gregg I. Shavitz_____.

**III.**    Applicant has been retained personally or as a member of the above-named firm by

Plaintiff, Jason Odem and those similarly situated to him.

### (List All Parties Represented)

to provide legal representation in connection with the above-styled matter now pending before the United

States District Court; for the Northern District of Texas.

**IV.**    Applicant is a member in good standing of the bar of the highest court of the state of

_____Florida_____ , where Applicant regularly practices law.

Bar license number:_____11398_____   Admission date:_____September 23, 1994_____.

**V.**    Applicant has also been admitted to practice before the following courts:

| Court: | Admission Date: | Active or Inactive: |
|---|---|---|
| Middle District of Florida | 06/20/2000 | Active |
| Northern District of Florida | 07/13/2001 | Active |
|  |  |  |
|  |  |  |

**APP 4**

**VI.**  Applicant has never involuntarily lost, temporarily or permanently, the right to practice before any court or tribunal, or resigned in lieu of discipline, except as provided below:

N/A

**VII.**  Applicant has never been subject to grievance proceedings or involuntary removal proceedings—regardless of outcome—while a member of the bar of any state or federal court or tribunal that requires admission to practice, except as provided below:

The Florida Bar File No. 2008-51,316 (15A), grievance proceeding - Florida Bar found no probable cause.

**VIII.**  Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

N/A

**IX.**  Applicant has filed for *pro hac vice* admission in the United States District Court for the Northern District of Texas during the past three (3) years in the following matters:  *N/A*

Date of Application                    Case No. And Style

_____        _____

_____        _____

(If necessary, attach statement of additional applications.)

**X.**  Local counsel of record associated with Applicant in this matter is  *Motion to Proceed filed Without Local Counsel*

who has offices at_____,

                              (Address)

_____.

(Telephone No.)

**XI.**  Check the appropriate box below.

For Application in a **Civil Case**

☑    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☐    Applicant has read and will comply with the local criminal rules of this court.

**APP 5**

**XII.**    Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

SIGNED this _____30_____ day of _____July_____, 20__08__ .

_____
Gregg I. Shavitz

**Printed Name of Applicant**

_____

**Signature**

     I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this _____30_____ day of _____July_____, ____2008____ .

_____
Gregg I. Shavitz

**Printed Name of Applicant**

_____

Signature

---

## ORDER

     The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☐     the application be granted.  The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐     the application be denied.  The Clerk of Court shall return the admission fee to the Applicant.

_____8/ 5 /08_____                    _____
**DATE**                                             **JUDICIAL OFFICER**

**APP 6**

3:08 cv 1196-L
PHV Fee Paid
Gregg I. Shavitz

```
Court Name: Texas Northern District Cour
t
Division: 3
Receipt Number: DS024046
Cashier ID: rgarcia
Transaction Date: 08/04/2008
Payer Name: PHV
-----------------------------------
PRO HOC VICE
 For: R CellarG I Shavitz  L G Dreil
 Case/Party: D-TXN-8-08-PR-000001-001
 Amount:      $25.00
PRO HOC VICE
 For: R CellarG I Shavitz  L G Dreil
 Case/Party: D-TXN-8-08-PR-000001-001
 Amount:      $25.00
PRO HOC VICE
 For: R CellarG I Shavitz  L G Dreil
 Case/Party: D-TXN-8-08-PR-000001-001
 Amount:      $25.00
-----------------------------------
CHECK
 Check/Money Order Num: 12122
 Amt Tendered: $75.00
-----------------------------------
Total Due:      $75.00
Total Tendered: $75.00
Change Amt:      $0.00
```

**APP 7**

NOD

L

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 1 1 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

JASON R. ODEM, on his own behalf and
others similarly situated,

     Plaintiff,

v.                                                    Case No.: 3:08-CV-1196-L

CENTEX HOMES, INC.,
a foreign Corporation,

     Defendant.

_____/

## MOTION FOR ADMISSION *PRO HAC VICE* WITHOUT LOCAL COUNSEL OF RICHARD B. CELLER

     Movant, Richard B. Celler, certifies as follows as part of the instant Motion for Admission *Pro Hac Vice* Without Local Counsel of Richard B. Celler, Esquire counsel of Plaintiff, JASON R. ODEM, on behalf of himself and others similarly situated to him, in accordance with Local Rules of the Northern District of Texas:

     1.     Mr. Celler states he is in good standing of the Bar of the State of Florida. He further states that he is an attorney with the law firm, Morgan and Morgan, located at 7450 Griffin Road, Suite 230, Davie, Florida, 33314.

     2.     Mr. Celler, Esq. hereby moves for admission *pro hac vice* to without local on behalf of Plaintiff, JASON R. ODEM, on behalf of himself and others similarly situated to him.

     3.     Mr. Celler states he has not been the subject of any disciplinary action by the Florida Bar or by Courts or the Bar of any State. Mr. Celler further verifies he has never been denied admission to the Courts of any state or to any federal court.

**APP 8**

4.      Mr. Celler states he has reviewed the Local Rules of Civil Procedure for the Northern District of Texas and is familiar with these rules and shall at all times abide by and comply with the Local Rules for the entirety of this action.

5.      Mr. Celler understands that by appearing in this case, he becomes subject to the rules of this Court and is subjecting himself to the discipline of this Court.

6.      Mr. Celler is not associated with any local counsel practicing in the Northern District of Texas and therefore, respectfully requests, based upon the above, to be admitted *pro hoc vice* without local counsel for the purposes of the above-captioned case only.

Wherefore, Richard B. Celler, Esq., respectfully requests that their motion to appear *pro hoc vice* without local counsel be granted.

Dated: August 6, 2008                         Respectfully submitted,


                                              _____
                                              RICHARD CELLER
                                              FL Bar No.: 173370
                                              MORGAN & MORGAN
                                              7450 Griffin Road, Suite 230
                                              Davie, Florida 33324
                                              Tel: 954-318-0268
                                              Fax: 954-333-3515
                                              E-Mail: RCeller@forthepeople.com
                                              *Attorney for Plaintiffs*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via U.S. Mail on all counsel or parties of record on the attached service list, this 6th day of August 2008.


                                              _____
                                              Richard B. Celler

**APP 9**

**SERVICE LIST**
**Jason Odem v. Centex Homes, Inc.**
**Case No.: 3:08-cv-1196-L**
**United States District Court, Northern District of Texas**

LITTLER MENDELSON, P.C.
4767 New Broad Street
Orlando, Florida 32814
Telephone: (407) 514-2637
Facsimile: (407) 514-2638

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, Texas 75201
Telephone: (214) 880-8100
Facsimile: (214) 880-0181

Jeffrey B. Jones
Fl Bar Number 0039950
jbjones@littler.com
Kimberly River Miers
TX Bar Number 24041482
kmiers@littler.com
Steven R. McCown
smccown@littler.com
TX Bar Number 13466500
Jennifer A. Youpa
TX Bar Number 01383400
jyoupa@littler.com
Allan G. King
TX Bar Number 11433200
aking@littler.com
Scott C. Sherman
TX Bar Number 24041906
ssherman@littler.com

**APP 10**

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
_____DALLAS_____ DIVISION

_____JASON ODEM_____,

**Plaintiff**

v.

_____CENTEX_____,

**Defendant**

§
§
§
§
§
§

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG 1 2 2008

CLERK, U.S. DISTRICT COURT
By _____
**Deputy**

3:08-cv-1196-L

**Case Number**

## APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE*

**I.** Applicant is an attorney and a member of the law firm of (or practices under the name of)
_____Morgan and Morgan, P.A._____, with offices at _____7450 Griffin Road, Suite 230_____,
(Street Address)

_____Davie_____, _____Florida_____, _____33314_____, _____954-318-0268_____.
(City)                    (State)                    (Zip Code)        (Telephone No.)

**II.** Applicant will sign all pleadings with the name _____Richard Celler_____.

**III.** Applicant has been retained personally or as a member of the above-named firm by

PLAINTIFF- JASON ODEM

(List All Parties Represented)

to provide legal representation in connection with the above-styled matter now pending before the United States District Court; for the Northern District of Texas.

**IV.** Applicant is a member in good standing of the bar of the highest court of the state of
_____Florida_____, where Applicant regularly practices law.

Bar license number: _____173370_____ Admission date: _____September 17, 1999_____.

**V.** Applicant has also been admitted to practice before the following courts:

| Court: | Admission Date: | Active or Inactive: |
|---|---|---|
| Southern District of Florida | 2/14/00 | Active |
| Middle District of Florida | 2/15/00 | Active |
| Northern District of Florida | 2/14/00 | Active |
| 11th Circuit Court of Appeals | 8/28/00 | Active |

**APP 11**

**VI.**   Applicant has never involuntarily lost, temporarily or permanently, the right to practice before any court or tribunal, or resigned in lieu of discipline, except as provided below:

N/A

**VII.**   Applicant has never been subject to grievance proceedings or involuntary removal proceedings—regardless of outcome—while a member of the bar of any state or federal court or tribunal that requires admission to practice, except as provided below:

N/A

**VIII.**   Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

N/A

**IX.**   Applicant has filed for *pro hac vice* admission in the United States District Court for the Northern District of Texas during the past three (3) years in the following matters:  *N/A*

| Date of Application | Case No. And Style |
|---|---|
| _____ | _____ |
| _____ | _____ |

(If necessary, attach statement of additional applications.)

**X.**   Local counsel of record associated with Applicant in this matter is *Motion to Proceed Without Local Counsel will be submitted*

who has offices at_____

(Address)

_____.

(Telephone No.)

**XI.**   Check the appropriate box below.

For Application in a **Civil Case**

☒   Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☐   Applicant has read and will comply with the local criminal rules of this court.

**APP 12**

**XII.**     Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

SIGNED this _____21_____ day of _____July_____, 20__08__.

                                                    Richard Celler
                                    _____
                                    Printed Name of Applicant


                                    _____
                                    Signature


        I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this _____21_____ day of _____July_____, ____2008____.

                                                    Richard Celler
                                    _____
                                    Printed Name of Applicant


                                    _____
                                    Signature


## ORDER

        The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:


        ☒         the application be granted.  The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.


        ☐         the application be denied.  The Clerk of Court shall return the admission fee to the Applicant.

_8 / 5 / 08_____
DATE                                    _____
                                        JUDICIAL OFFICER

**APP 13**

3:08 cv 1196-L
PHV Fee Paid
Richard Celler

Court Name: Texas Northern District Court
t
Division: 3
Receipt Number: 3103846
Cashier ID: agency
Transaction Date: 05.04.2008
Payer Name: bmb

PHV May Wick
Corp # Celler & I Shevitz  U S Dreil
Case/Party: D TXN 8-08-CV 003651 001
Amount:        $25.00

PHV for Wick
Corp # Celler & I Shevitz  U S Dreil
Case/Party: D TXN 8-08-CV 003651 001
Amount:        $25.00

PHV for Wick
Corp # Celler & I Shevitz  U S Dreil
Case/Party: D TXN 8-08-CV 003651 001
Amount:        $25.00

CASH
Check/Money Order Num: 12122
Amt Tendered: $75.00

Total Due:    $75.00
Total Tendered: $75.00
Change Amt:    $0.00

**APP 14**

ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ~~FLORIDA~~ TX

DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

AUG - 4 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

JASON R. ODEM, on his own behalf and
others similarly situated,

    Plaintiff,

v.

                           Case No.: 3:08-CV-1196-L

CENTEX HOMES, INC.,
a foreign Corporation,

    Defendant.

_____/

## MOTION FOR ADMISSION *PRO HAC VICE* WITHOUT LOCAL COUNESL OF LAUREN G. DREILINGER

    Movant, Lauren G. Dreilinger, certifies as follows as part of the instant Motion for Admission *Pro Hac Vice* Without Local Counsel of Lauren G. Dreilinger co-counsel of Plaintiff, JASON R. ODEM, on behalf of himself and others similarly situated to him, in accordance with Local Rules of the Northern District of Texas:

    1.     Ms. Dreilinger states she is in good standing of the Bar of the States of New York and Illinois and is currently affiliated with the law firm, Shavitz Law Group, located at 1515 S. Federal Highway, Boca Raton, Florida, 33432.

    2.     Ms. Dreilinger hereby moves for admission *pro hac vice* to without local on behalf of Plaintiff, JASON R. ODEM, on behalf of himself and others similarly situated to him.

    3.     Ms. Dreilinger states she has not been the subject of any disciplinary action by the New York or Illinois Bars or by Courts or the Bar of any State. Ms. Dreilinger further verifies he has never been denied admission to the Courts of any state or to any federal court.

**APP 15**

4.      Ms. Dreilinger states he has reviewed the Local Rules of Civil Procedure for the Northern District of Texas and is familiar with these rules and shall at all times abide by and comply with the Local Rules for the entirety of this action.

5.      Ms. Dreilinger understands that by appearing in this case, she becomes subject to the rules of this Court and is subjecting himself to the discipline of this Court.

6.      Ms. Dreilinger Shavitz is not associated with any local counsel practicing in the Northern District of Texas and therefore, respectfully requests, based upon the above, to be admitted *pro hoc vice* without local counsel for the purposes of the above-captioned case only.

Wherefore, Lauren G. Dreilinger respectfully requests that their motion to appear *pro hoc vice* without local counsel be granted.

Dated: August 1, 2008

Respectfully submitted,

Lauren G. Dreilinger
New York Bar No.: 750288890
Illinois Bar No.: 6274840
Shavitz Law Group
1515 S. Federal Highway, Suite 404
Boca Raton, FL 33432
(561) 447-8888
(561) 447-8831

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via U.S. Mail on all counsel or parties of record on the attached service list, this _1_ day of August 2008.

Lauren G. Dreilinger

## SERVICE LIST
**Jason Odem v. Centex Homes, Inc.**
**Case No.: 3:08-cv-1196-L**

**APP 16**

**United States District Court, Northern District of Texas**

LITTLER MENDELSON, P.C.
4767 New Broad Street
Orlando, Florida 32814
Telephone: (407) 514-2637
Facsimile: (407) 514-2638

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, Texas 75201
Telephone: (214) 880-8100
Facsimile: (214) 880-0181

Jeffrey B. Jones
Fl Bar Number 0039950
jbjones@littler.com
Kimberly River Miers
TX Bar Number 24041482
kmiers@littler.com
Steven R. McCown
smccown@littler.com
TX Bar Number 13466500
Jennifer A. Youpa
TX Bar Number 01383400
jyoupa@littler.com
Allan G. King
TX Bar Number 11433200
aking@littler.com
Scott C. Sherman
TX Bar Number 24041906
ssherman@littler.com

**APP 17**

ORIGINAL

#24046

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ~~FLORIDA~~ TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 12 2008

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

DALLAS DIVISION

JASON R. ODEM, on his own behalf and
Others similarly situated,

     Plaintiff,

v.                                                        Case No.: 3:08-CV-1196-L

CENTEX HOMES, INC.,
a foreign Corporation,

     Defendant.

_____/

### <u>Application and Order for Admission *Pro Hac Vice*</u>

I.      Applicant is an attorney admitted to practice in New York, Illinois, and the United States District Courts for the Eastern and Southern Districts of New York and the Northern and Central Districts of Illinois. Applicant passed the February 2008 Florida bar exam and her admission is currently pending. She is currently working as a Law Clerk, until her admission in Florida is finalized, at the Shavitz Law Group located at 1515 S. Federal Highway, Suite 404, Boca Raton, Florida, 33432, (561) 447-8888.

II.     Applicant will sign all pleadings with the name: Lauren G. Dreilinger.

III.    Applicant will represent Plaintiff, Jason R. Odem, and those similarly situated to him and will provide legal representation in connection with the above-styled matter now pending before the United States District Court, for the Northern District of Texas.

**APP 18**

IV. Applicant is a member in good standing in the bar of the highest court of the state of New York, Bar license number: 750288890, Admission date: May 24, 1999 and is a member in good standing in the bar of the highest court of the state of Illinois, Bar license number: 6274840, Admission date: December 18, 2001.

V. Applicant has also been admitted to practice before the following courts:

| Court: | Admission Date: | Active/Inactive: |
| --- | --- | --- |
| U.S. District Court, SDNY | On or about June 2000 | Active |
| U.S. District Court, EDNY | On or about Dec. 2003 | Active |
| U.S. District Court, NDIL[1] | October 18, 2001 | Active |
| U.S. District Court, CDIL | On or about Dec. 2001 | Active |
| U.S. District Court, SDFL | On or about 2005[2] | Inactive |
| U.S. District Court, MDFL | On or about 2005[3] | Inactive |
| U.S. District Court, Puerto Rico | On or about 2007[4] | Inactive |

VI. Applicant has never involuntarily lost temporarily or permanently, the right to practice before any court or tribunal, or resigned in lieu of discipline.

VII. Applicant has never been subject to grievance proceedings or involuntary removal proceedings—regardless of outcome--- while a member of the bar of any state or federal court or tribunal that requires admission to practice.

VIII. Applicant has not been charged, arrested, or convicted of a criminal offense or offenses (omit minor traffic offenses).

---

[1] Certificate of Good Standing from the U.S. District Court for the Northern District of Illinois is attached as Exhibit A.
[2] Admitted only as U.S. Government Attorney.
[3] Admitted only as U.S. Government Attorney.
[4] Admitted only as U.S. Government Attorney.

2

IX.    Applicant has never filed for *pro hac vice* admission in the United States District Court for the Northern District of Texas.

X.    Applicant does not have any local counsel associated with this matter. *Motion to Appear Without Local Counsel is also being filed.*

XI.    Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n,* 121 F.R.D. 284 (N.D. Tex 1998)(en banc), and the local civil rules of this court and will comply with the standards of practice adopted in *Dondi* and with the local civil rules.

XII.    Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

SIGNED this _____1st_____ day of ___August___, 2008.

Lauren G. Dreilinger
Printed Name of Applicant

*[signature]*
Signature

I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this ___1st___ day of August, 2008.

Lauren G. Dreilinger
Printed Name of Applicant

*[signature]*
Signature

**APP 20**

## ORDER

The Court, having considered the above Application for *Pro Hac Vice*, orders that:

X̲ the application be granted. The Clerk of the Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

___ the application be denied. The Clerk of the Court shall return the admission fee to the Applicant.

8/5/08
DATE

Sam A. Lindsay
JUDICIAL OFFICER

**APP 21**

# CERTIFICATE OF GOOD STANDING



*United States of America*

}ss. Lauren G Dreilinger

*Northern District of Illinois*

I, Michael W. Dobbins, Clerk of the United States District Court for the Northern District of
Illinois,

DO HEREBY CERTIFY That Lauren G Dreilinger
was duly admitted to practice in said Court on (10/18/2001)
and is in good standing as a member of the bar of said court.

Dated at Chicago, Illinois
on (07/24/2008 )

Michael W. Dobbins, Clerk,

By: Teresa Cervantes
Deputy Clerk

**APP 22**

*3:08 cv 1196-L*
*PHV Fee Paid*
*Lauren G. Dreilinger*

```
Court Name: Texas Northern District Cour
t
Division: 3
Receipt Number: DS024046
Cashier ID: rgarcia
Transaction Date: 08/04/2008
Payer Name: PHV
----------------------------------
PRO HOC VICE
 For: R CellarG I Shavitz  L G Dreil
 Case/Party: D-TXN-8-08-PR-000001-001
 Amount:      $25.00
PRO HOC VICE
 For: R CellarG I Shavitz  L G Dreil
 Case/Party: D-TXN-8-08-PR-000001-001
 Amount:      $25.00
PRO HOC VICE
 For: R CellarG I Shavitz  L G Dreil
 Case/Party: D-TXN-8-08-PR-000001-001
 Amount:      $25.00
----------------------------------
CHECK
 Check/Money Order Num: 12122
 Amt Tendered: $75.00
----------------------------------
Total Due:      $75.00
Total Tendered: $75.00
Change Amt:     $0.00
```

**APP 23**

12-3-48

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

**JASON R. ODEM, on his own behalf
and on behalf of those similarly
situated,**

          **CASE NO.:  3-08CV-1196-L**

    **Plaintiffs,**

**vs.**

**CENTEX HOMES, INC., a Foreign
Corporation,**

     **Defendant.**    /
_____/

## MOTION FOR ADMISSION *PRO HAC VICE* WITHOUT
## LOCAL COUNSEL OF CARLOS LEACH

Movant, Carlos Leach, Esquire, certifies as follows as part of the instant Motion

for Admission *Pro Hac Vice* Without Local Counsel of Carlos Leach, Esquire, counsel of

Plaintiff, JASON R. ODEM, on behalf of himself and on behalf of those similarly

situated, in accordance with Local Rules of the Northern District of Texas:

  1.  Mr. Leach states he is a member in good standing of the Bar of the State

of Florida. He further states that he is an attorney at the law firm of Morgan & Morgan,

P.A., located at 20 North Orange Avenue, 4th Floor, Orlando, Florida 32801.

  2.  Mr. Leach hereby moves for admission *pro hac vice* without local counsel

on behalf of Plaintiff, JASON R. ODEM, on his own behalf and on behalf of those

similarly situated.

  3.  Mr. Leach states he has not bee the subject of any disciplinary action by

the Florida Bar or by Courts or the Bar of any State. Mr. Leach further verifies that he has

**APP 24**

never been denied admission to the Courts of any state or to any federal court. *See* Certificate of Good Standing for the United States District Court, Middle District of Florida, attached as Exhibit "A."

4.      Mr. Leach states he has reviewed the Local Rules of Civil Procedure for the Northern District of Texas and is familiar with these rules and shall at all times abide by and comply with the Local Rules for the entirety of this action.

5.      Mr. Leach understands that by appearing in this case, he becomes subject to the rules of this Court and is subjecting himself to the discipline of this Court.

6.      Mr. Leach is not associated with and local counsel practicing in the Northern District of Texas and therefore, respectfully requests, based upon the above, to be admitted *pro hac vice* without local counsel for the purposes of the above-captioned case only.

WHEREFORE, Carlos Leach, Esquire, respectfully requests that his Motion to appear *pro hac vice* without local counsel be granted.

Dated: December ___3rd___, 2008

Carlos V. Leach, Esquire
FLBN: 0540021
MORGAN & MORGAN, P.A.
20 North Orange Ave., 4th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 420-5956
Email: cleach@forthepeople.com
Attorney for the Plaintiff

**APP 25**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via U.S. Mail-postage paid, to all parties of record in the attached service list this _____ day of December, 2008.

Carlos V. Leach, Esquire
FBN 0540021
Morgan & Morgan, P.A.
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:    (407) 420-1414
Facsimile:    (407) 425-8171
Email: CLeach@forthepeople.com
Attorneys for Plaintiffs

**SERVICE LIST**
**Jason Odem v. Centex Homes, Inc.**
**Case No.: 3:08-cv-1196-L**
**United States District Court, Northern District of Texas**

LITTLER MENDELSON, P.C.
4767 New Broad Street
Orlando, Florida 32814
Telephone: (407) 514-2637
Facsimile: (407) 514-2638

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Lock Box 116
Dallas, Texas 75201
Telephone: (214) 880-8100
Facsimile:  (214) 880-0181

Jeffrey B. Jones
Fl Bar Number 0039950
jbjones@littler.com
Kimberly River Miers
TX Bar Number 24041482
kmiers@littler.com
Steven R. McCown
smccown@littler.com
TX Bar Number 13466500
Jennifer A. Youpa
TX Bar Number 01383400
jyoupa@littler.com
Allan G. King
TX Bar Number 11433200
aking@littler.com
Scott C. Sherman
TX Bar Number 24041906
ssherman@littler.com

**APP 27**

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

Dallas _____ **DIVISION**

|   |   |   |
|---|---|---|
| Jason Odem, et al , | § | |
| | § | |
| **Plaintiff** | § | |
| | § | 3:08-CV-1196-L |
| v. | § | **Case Number** |
| | § | |
| Centex Homes, Inc. , | § | |
| | § | |
| **Defendant** | | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 1 0 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**APPLICATION AND ORDER FOR ADMISSION *PRO HAC VICE***

I.    Applicant is an attorney and a member of the law firm of (or practices under the name of)

_____ Morgan & Morgan, P.A. _____ , with offices at _____ 20 North Orange Ave., 4th Floor, P.O. Box 4979 _____
(Street Address)

_____ Orlando _____ , _____ FL _____ , _____ 32801 _____ , _____ (407) 420-1414 _____ .
(City)                    (State)                (Zip Code)           (Telephone No.)

II.   Applicant will sign all pleadings with the name _____ Carlos Leach _____ .

III.  Applicant has been retained personally or as a member of the above-named firm by

Plaintiff, Jason Odem

(List All Parties Represented)

to provide legal representation in connection with the above-styled matter now pending before the United

States District Court; for the Northern District of Texas.

IV.   Applicant is a member in good standing of the bar of the highest court of the state of

_____ Florida _____ , where Applicant regularly practices law.

Bar license number: _____ 0540021 _____ Admission date: _____ January 28, 2002 _____ .

V.    Applicant has also been admitted to practice before the following courts:

| Court: | Admission Date: | Active or Inactive: |
|---|---|---|
| Middle District of Florida | November 3, 2004 | Active |
| Northern District of Florida | October 9, 2008 | Active |
| | | |
| | | |

**APP 28**

**VI.**   Applicant has never involuntarily lost, temporarily or permanently, the right to practice before any court or tribunal, or resigned in lieu of discipline, except as provided below:

N/A

**VII.**   Applicant has never been subject to grievance proceedings or involuntary removal proceedings—regardless of outcome—while a member of the bar of any state or federal court or tribunal that requires admission to practice, except as provided below:

N/A

**VIII.**   Applicant has not been charged, arrested, or convicted of a criminal offense or offenses, except as provided below (omit minor traffic offenses):

Reckless Driving- 10/2000 (dismissed)
Public Intoxication- 2/1998 (dismissed)

**IX.**   Applicant has filed for *pro hac vice* admission in the United States District Court for the Northern District of Texas during the past three (3) years in the following matters:

Date of Application               Case No. And Style

_____ N/A _____     _____

_____     _____

(If necessary, attach statement of additional applications.)

**X.**   Local counsel of record associated with Applicant in this matter is _____

who has offices at_____ Motion to proceed without local counsel will be submitted _____,
                    (Address)

_____.
(Telephone No.)

**XI.**   Check the appropriate box below.

For Application in a **Civil Case**

☑       Applicant has read *Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D.

284 (N.D. Tex. 1988) (en banc), and the local civil rules of this court and will comply with

the standards of practice adopted in *Dondi* and with the local civil rules.

For Application in a **Criminal Case**

☑       Applicant has read and will comply with the local criminal rules of this court.

**APP 29**

XII.    Applicant respectfully requests to be admitted to practice in the United States District Court for the Northern District of Texas for this cause only.

SIGNED this ____5TH____ day of _December_, 20 08 .

_____
Printed Name of Applicant

_____
Signature

    I hereby certify that I have served a true and correct copy of this document upon each attorney of record and the original upon the clerk of court accompanied by a $25.00 filing fee on this ___5TH___ day of _December_____, 2008 .

_____
Printed Name of Applicant

_____
Signature

---

## ORDER

    The Court, having considered the above Application for Admission *Pro Hac Vice*, orders that:

☒    the application be granted.  The Clerk of Court shall deposit the application fee to the account of the Non-Appropriated Fund of this Court.

☐    the application be denied.  The Clerk of Court shall return the admission fee to the Applicant.

_12/10/08_____
DATE

_____
JUDICIAL OFFICER

Page 3 of 3

**APP 30**

AO 136 (Rev. 9/98) Certificate of Good Standing

# *United States District Court*

## MIDDLE DISTRICT OF FLORIDA

## CERTIFICATE OF GOOD STANDING

I, Sheryl L. Loesch , Clerk of this Court,

certify that CARLOS V. LEACH, Bar Number 540021,

was duly admitted to practice in this Court on

November 3, 2004, and is in good standing

as a member of the Bar of this Court.

Dated at Orlando, Florida, on December 2, 2008

_____
SHERYL L. LOESCH
Clerk

I. Cammarota, Deputy Clerk

**APP 31**

3:08cv1196-L
PHV Fee Paid
Carlos Leach

Court Name: Texas Northern District Cour
t
Division: 3
Receipt Number: DS027265
Cashier ID: dthornto
Transaction Date: 12/09/2008
Payer Name: MORGAN AND MORGAN
------------------------------------
PRO HOC VICE
 For: CARLOS LEACH
 Case/Party: D-TXN-8-08-PR-000001-001
 Amount:        $25.00
------------------------------------
CHECK
 Check/Money Order Num: 269869
 Amt Tendered: $25.00
------------------------------------
Total Due:     $25.00
Total Tendered: $25.00
Change Amt:     $0.00

**APP 32**



--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court,
S.D. Florida.
Donald HAMM, Elliot Cook, Ronald Simms, Mark
Wagner, Martha Harris, and Timothy Bridges, indi-
vidually and on behalf of persons similarly situated,
Plaintiffs,
v.
TBC CORPORATION, a Delaware corporation,
and Tire Kingdom, Inc., a Florida corporation, De-
fendants.
Case No. 07-80829-CIV.

Feb. 3, 2009.

**Background:** Employees brought proposed collect-
ive action to recover unpaid overtime compensation
from employers under the Fair Labor Standards Act
(FLSA). Employers moved for sanctions against
employees' law firm for directly soliciting putative
class members.

**Holdings:** The District Court, Kenneth L.
Ryskamp, J., adopted the report and recommenda-
tion of Ann E. Vitunac, United States Magistrate
judge, which held that:
(1) firm improperly solicited clients, and
(2) sanctions barring firm from representing or col-
lecting fees for future opt-in plaintiffs who did not
work with any of the named plaintiff employees
was justified.

Motion granted in part and denied in part.

**[1] Labor and Employment 231H ⊂⇒2374**

231H Labor and Employment
   231HXIII Wages and Hours
     231HXIII(B) Minimum Wages and Overtime
Pay
      231HXIII(B)6 Actions
       231Hk2373 Actions on Behalf of Oth-
ers in General

        231Hk2374 k. In General. Most
Cited Cases
The potential abuses present in collective actions
under the Fair Labor Standards Act (FLSA) with re-
spect to misuse of the class device include
heightened susceptibilities of nonparty class mem-
bers to solicitation amounting to barratry as well as
the increased opportunities of the parties and coun-
sel to drum up participation in the proceeding and
unapproved communications to class members that
misrepresent the status or effect of the pending ac-
tion. Fair Labor Standards Act of 1938, §§ 1-19, 29
U.S.C.A. §§ 201-219.

**[2] Attorney and Client 45 ⊂⇒32(9)**

45 Attorney and Client
   45I The Office of Attorney
     45I(B) Privileges, Disabilities, and Liabilities
      45k32 Regulation of Professional Con-
duct, in General
       45k32(9) k. Advertising or Soliciting.
Most Cited Cases
Law firm, which represented employees seeking al-
legedly unpaid overtime compensation from em-
ployers in proposed FLSA collective action, im-
properly solicited clients in violation of state bar
rules prohibiting solicitation for pecuniary gain and
requiring firm to ensure that conduct of its nonlegal
staff was consistent with firm's ethical obligations,
where three non-party employees received phone
calls from firm's administrative assistant in which
they were asked if they would like to join the suit
against employers in order to recover money owed
to them, none of these non-party employees were
asked the kind of questions that would lend credib-
ility to firm's contention that the purpose of the
calls was to gather information to substantiate the
claims of party employees, firm's attorney admitted
that the more clients firm added to the suit, the
more work it would perform for which it would
later seek compensation if the suit concluded with a
favorable result, and firm had failed to properly
train assistant regarding solicitation of clients. Fair

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 33**

Labor Standards Act of 1938, §§ 1-19, 29 U.S.C.A. §§ 201-219; West's F.S.A. Bar Rules 4-5.3, 4-7.4(a).

**[3] Attorney and Client 45 ⇒36(2)**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k36 Jurisdiction of Courts
                45k36(2) k. Power of Judge at Chambers. Most Cited Cases
Certain implied powers must necessarily result to a court from the nature of their institution, powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others; these powers include the power of the court to discipline attorneys who appear before it.

**[4] Attorney and Client 45 ⇒36(2)**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k36 Jurisdiction of Courts
                45k36(2) k. Power of Judge at Chambers. Most Cited Cases

**Attorney and Client 45 ⇒38**

45 Attorney and Client
    45I The Office of Attorney
        45I(C) Discipline
            45k37 Grounds for Discipline
                45k38 k. Character and Conduct. Most Cited Cases

**Constitutional Law 92 ⇒4273(3)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(G) Particular Issues and Applications
            92XXVII(G)12 Trade or Business
                92k4266 Particular Subjects and Regulations
                    92k4273 Attorneys

92k4273(3) k. Conduct and Discipline. Most Cited Cases
A court must exercise caution in the exercise of their inherent power to discipline attorneys who appear before it, must provide the attorney facing sanctions due process, and must only impose sanctions where the court finds conduct that amounts to bad faith. U.S.C.A. Const.Amend. 5.

**[5] Federal Civil Procedure 170A ⇒161**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)1 In General
                170Ak161 k. In General. Most Cited Cases
A district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

**[6] Federal Civil Procedure 170A ⇒177.1**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)2 Proceedings
                170Ak177 Notice and Communica- tions
                    170Ak177.1 k. In General. Most Cited Cases
A district court's authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties is not unlimited, and an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.

**[7] Federal Civil Procedure 170A ⇒177.1**

170A Federal Civil Procedure
    170AII Parties

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 34**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 3

170AII(D) Class Actions
    170AII(D)2 Proceedings
       170Ak177 Notice and Communica- tions
       170Ak177.1 k. In General. Most
Cited Cases
While specific findings of abuses may justify a ban on communications between class action parties and potential class members, the mere possibility of abuse does not justify adoption of a communications ban that interferes with formation of a class or the prosecution of a class action.

**[8] Attorney and Client 45 ☜⟶59.15**

45 Attorney and Client
    45I The Office of Attorney
       45I(C) Discipline
       45k59.1 Punishment; Disposition
        45k59.15 k. Other Disposition. Most
Cited Cases
Law firm's improper solicitation of clients, in violation of state bar rules prohibiting solicitation for pecuniary gain and requiring firm to ensure that conduct of its nonlegal staff was ethical, justified sanctions barring firm from representing or collecting fees for work performed in representing any current or future opt-in plaintiff who did not work with any of the named plaintiff employees in action by employees seeking allegedly unpaid overtime compensation from employers in proposed FLSA collective action. Fair Labor Standards Act of 1938, §§ 1-19, 29 U.S.C.A. §§ 201-219; West's F.S.A. Bar Rules 4-5.3, 4-7.4(a).

Gregg I. Shavitz, Hal B. Anderson, The Shavitz Law Group, P.A., Boca Raton, FL, D. Culver Smith, III, Fox Rothschild LLP, West Palm Beach, FL, Kevin David Smith, Ford & Harrison, Miami, FL, for Plaintiffs.

Chad Kevin Lang, Kevin David Smith, Ford & Harrison, Miami, FL, for Defendants.

***ORDER ADOPTING THE REPORT AND RE-***

***COMMENDATION***

KENNETH L. RYSKAMP, District Judge.

**\*1** THIS CAUSE comes before the Court upon the report and recommendation of Magistrate Judge Ann E. Vitunac **[DE 147]** entered on December 30, 2008. Pending before Judge Vitunac was defendants' motion for sanctions **[DE 58]**. Judge Vitunac held a hearing on July 31, 2008. Plaintiffs' objected to the report **[DE 151]** on January 21, 2009.

While plaintiffs agreed to some of Judge Vitunac's recommendations, they did object to others arguing that they were too broad in scope. Specifically, Judge Vitunac recommended that The Shavitz Law Group withdraw as counsel for any current or future opt-in plaintiff who did not work with any of the named plaintiffs. Judge Vitunac recommended that this Court bar The Shavitz Law Group from collecting any fees or costs for work preformed in representing those individuals. The Shavitz Law Group agrees with Judge Vitunac with respect to any current opt-in plaintiffs, but argues that it should not be barred from representing any future opt-in plaintiffs, regardless of whether the future opt-in plaintiff worked with a named plaintiff. This Court disagrees. The report and recommendation achieves two purposes: first, ensuring that counsel acts ethically in this litigation and second, sanctioning The Shavitz Law Group for unethically soliciting clients. Part of that sanction includes barring The Shavitz Law Group from representing any future opt-in client not directly associated with the named plaintiffs.

This Court would also note that, according to the Administrative Office of the United States Courts, for the past five years the Southern District of Florida has averaged 28.7% of all FLSA cases filed in the United States. This would cause one to wonder if the employers in the Southern District are willfully ignoring the FLSA. The more logical conclusion is that FLSA cases are heavily weighted in favor of the plaintiff. Most cases are filed against small businesses which quickly realize that it is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 35**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 4

cheaper to pay a small claim and the plaintiff's attorney's fee than it is to defend the claims. Very few FLSA cases go to trial. It is clear that the volume of cases in the Southern District is attorney-driven. This Court would note further that in the past five years the Shavitz Law Group has filed 1437 cases in the Southern District of Florida which represents 23% of all cases filed in this district. These figures lead credence to the factual findings of the Magistrate Judge.

This Court has read and considered all of the above submissions in light of the record. Accordingly, it is hereby,

ORDERED AND ADJUDGED that:

(1) The Report of Magistrate Judge Vitunac [**DE 147**] be, and the same hereby is, RATIFIED, AFFIRMED and APPROVED in its entirety;

(2) Defendants' motion for sanctions [**DE 58**] is GRANTED in the following respects;

(A) The Shavitz Law Group is hereby barred from representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action: Donald Hamm, Elliot Cook, Ronald Simms, mark Wagner, Martha Harris, and Timothy Bridges;

**\*2** (B) The Shavitz Law Group is barred from collecting any fees or costs for work preformed in representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action;

(C) The Shavitz Law Group is ordered to formulate and implement a formal written policy on solicitation to inform and govern the conduct of all Shavitz Law Group attorney and non-attorney staff;

(D) A copy of this Order, and Judge Vitunac's report and recommendation, will be forwarded to the Florida Bar for possible further action; and

(E) The Shavitz Law Group is ordered to reimburse defendants for all reasonable fees and costs incurred in bringing and prosecuting the motion.

### *REPORT AND RECOMMENDATION*

ANN E. VITUNAC, United States Magistrate Judge.

This Cause is before the Court on Order of Reference (DE 114), filed July 21, 2008, from United States District Judge Kenneth L. Ryskamp "for a hearing ... and decision on defendants' motion for sanctions [**DE 58**]." Before the Court is Defendants' Motion for Sanctions Against the Shavitz Law Group for Directly Soliciting Putative Class Members (DE 58), filed December 28, 2007. Plaintiff filed a Response (DE 66) on January 17, 2008. Defendants filed a Reply (DE 71) on January 28, 2008. The Court held an evidentiary hearing on July 31, 2008. The matter is ripe for review.

### *BACKGROUND*

Plaintiffs, a group of workers employed by Defendant corporations, brought this case as a proposed collective action to recover unpaid overtime compensation from Defendants under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219 (DE 5). The action is in its earliest stages, and has not yet been conditionally certified. Plaintiffs filed a Motion to Authorize Notice to Potential Class Members (DE 46) on November 28, 2007, which states that in addition to the six named Plaintiffs, twenty-four individuals had opted in to the collective action as of that date.

On December 28, 2007, Defendants filed their Motion seeking court-imposed sanctions against Plaintiffs' counsel, the Shavitz Law Group (SLG), for direct solicitation of putative class members in violation of the Rules Regulating the Florida Bar (DE 58). After the parties fully briefed the issue, the Court heard oral argument on February 8, 2008 (DE 91). On March 11, 2008, this Court stayed the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 36**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
(Cite as: 2009 WL 289822 (S.D.Fla.))

litigation so that the Florida Bar could investigate Defendants' claims (DE 109). On July 9, 2008, the Florida Bar informed the Court that it declined to review the charges or make any determination on the merits based on Rule 15.55 of the Rules Regulating the Florida Bar, which states that the Bar should stay any investigation if a court has concurrent jurisdiction over the matter (DE 113). Based upon this information, the Court denied Plaintiffs' Motion to Lift Stay and Reopen Case (DE 110) in order for the Court to first issue a ruling on Defendants' Motion for Sanctions. The Court indicated that "[u]pon resolution of that motion, the Court will lift the stay and continue the litigation" (DE 113).

### PARTIES' CONTENTIONS

#### Defendant's Written Motion for Sanctions

**\*3** Defendants allege that SLG violated Southern District Local Rule 11.1.C and Florida Rule of Professional Conduct 4-7.4(a) by soliciting at least four employees of Defendant Tire Kingdom [FN1] (TK). Defendants claim that on the morning of Saturday, December 15, 2007, an SLG employee called the personal cellular phones of three current TK employees and one former TK employee living in Missouri. One employee, Shane Cook, stated that the woman caller "identified herself as working for an attorney for some plaintiffs who were suing [TK]" and that they "had gotten [his] name and number from a former employee."According to Cook, after she explained that the suit was for unpaid overtime owed to employees who worked during their lunch breaks, she asked if he "would like to join the lawsuit and 'recover the money that [TK] owes [him].'" Cook's response was to tell her he "thought the allegations were 'bull\* \* \* \*,' as ... no one is ever forced to work through their breaks."

A second employee, Nick Kilgore, said the woman caller "identified herself as working for a Florida attorney's office handling a lawsuit that a number of [TK] employees had filed."According to Kilgore,

after she explained that the suit "concerned claims that employees were working through their lunch breaks and not being paid for them," she asked if he "would be interested in joining the lawsuit in order to 'recover [his] lost pay.'" Kilgore told the caller he "was not interested in suing anyone, particularly since [he] did not believe the claims against [TK] were true."Defendants claim that these two employees, together with a third current employee, Victor Harris, and a fourth former employee, Matt Bitner,[FN2] reported the phone calls to TK Store Manager Chris Blum the next day. Blum reported the calls to his Area Director, who then contacted Defendants' counsel.

Defendants contend that the sole purpose of the calls was to directly solicit Cook and Kilgore to join as members of the putative class in violation of Rule 4-7.4. Defendants point to Plaintiffs' proposed notice, filed as part of their Motion to Authorize Notice, as evidence that SLG's solicitation was for pecuniary gain in that the notice does not inform potential class members that they may contact counsel of their own choice or choose to opt-out and pursue their own action. Instead, the notice indicates that a putative class member must contact and agree to retain SLG in order to join the litigation. Defendants also argue that SLG's placement of the calls ten days before Christmas, a time when people focus on holiday debt, evidences an intent to solicit individuals at a time when they have "'impaired capacity for reason, judgment, and protective self-interest,' which Rule 4-7.4(a) was designed to protect against."Defendants argue that there is no way to know if SLG has solicited other putative class members and whether any of the named Plaintiffs or opt-in Plaintiffs were joined in the suit as the result of improper solicitations by SLG.

**\*4** By way of relief, Defendants ask this Court to (1) issue an injunction barring SLG from further contact with any potential class member to enjoin SLG from soliciting, entering an agreement for, charging, or collecting a fee for employment from

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 37**

any potential class member from this date forward, (2) compel SLG to produce for in camera review all documents relating to any communications between SLG and all current Plaintiffs, opt-in Plaintiffs, or prospective class member, (3) prohibit SLG from contacting putative class members in any manner other than Court approved written notice, (4) require SLG to provide Defendants with name and contact information for any putative class members they contacted and permit Defendants to depose them regarding solely these communications separate and apart from the ten-deposition limit, and (5) require SLG to reimburse Defendants for fees and costs for bringing the instant Motion.

*Plaintiffs' Response*

Plaintiffs agree that SLG assigned administrative assistant Tayara Oliveira to call Cook, Kilgore, and Harris the morning of December 15, 2007, but disagree with Defendants' version of her communications with them. According to Plaintiffs, Oliveira contacted these employees as a follow up on potential witnesses identified by an existing client "to corroborate [that client's] claim for overtime violations" and "as part of investigating the client's claim." To support this claim, Plaintiffs rely on two pages of a fourteen-page fax filed under seal. The fax, dated December 13, 2007, is addressed to Tayara Oliveira from Matthew C. Bitner with a reference line of "Nation Tire & Battery." The second page states "Other NTB employees" with a list of six names, including Kilgore, Cook, and Harris, and their phone numbers. The other three names on the list are redacted.

Plaintiffs deny anyone at SLG's office asking Cook or Kilgore if they wanted to recover money owed to them. According to Oliveira's declaration, during her call to Cook, she "explained that we are a law firm representing workers in NTB stores who were not paid overtime ... [stated] that one client had provided [Cook's] name as a possible witness to overtime deductions ... [and] asked him if he had any knowledge of that problem." She stated that

Cook's "immediate response was to say that it never happened and that people were making it up" before launching "into a stream of profanity" after which she ended the call. She stated that Cook "immediately called back ... the call was answered by my co-worker Adriana Castrillon-McNish" and that he "again started with a stream of profanity, and [McNish] ended the call and alerted [Oliveira] to the situation." According to Oliveira, Cook called a third time and "again resorted to profanity," so she ended the call and ignored a fourth call reflecting Cook's number on the caller ID. Oliveira maintains that she had the same conversation with Kilgore as with Cook and that Kilgore's "immediate response was to deny any problem." Plaintiffs submitted declarations by administrative assistants Oliveira and McNish to support their version of the communications that occurred that Saturday morning.

*5 Plaintiffs argue that there is no proof of any solicitation by SLG; all that occurred was a brief attempt to contact potential witnesses identified by an existing client. Plaintiffs further claim that Oliveira's calls reflect SLG's efforts to comply with their Rule 11 duty to duly and diligently investigate their clients' case. Moreover, Plaintiffs claim that Oliveira properly disclosed SLG's role as counsel to a group of workers claiming unpaid overtime from the start of each call and immediately ended the calls when Cook and Kilgore denied witnessing any overtime compensation problems.

*Defendants' Reply*[FN3]

Defendants argue that SLG's response reveals their failure to abide by Rule 11 and Florida Bar Rules in that administrative assistants with no legal training were purportedly conducting Rule 11 due diligence investigations regarding claims of SLG clients rather than attorneys. Defendants further argue that the document filed under seal is "grossly incomplete" in that it is only two pages of a fourteen page fax with no mention of why the six names and numbers were provided, nor any indication that the indi-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 38**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 7

viduals listed were potential witnesses. Defendants suggest that the other twelve pages of the fax not provided by Plaintiffs may reveal why the names and contact numbers were provided to SLG. Defendants also suggest that the three redacted names may represent individuals who could corroborate Cook and Kilgore's claims of solicitation. Defendants question why SLG did not produce telephone records to confirm their version of the communications. Attached to the Reply was Cook's cellular phone records, which confirm that Cook received a two-minute phone call from SLG at 10:31 a.m. on December 15, 2007. The records also show that Cook placed an outgoing one-minute phone call to SLG at 10:51 a.m. Defendants explain that Cook called SLG "to sarcastically inquire into the possibility of" suing SLG. Defendants end by characterizing the declarations of Oliveira and McNish as self-serving and not credible.

On February 4, 2008, Defendants filed a declaration of TK employee Christopher Johnson (DE 81-2), a Kansas resident, stating that he received a call from SLG in mid-November, 2007. According to Johnson's declaration, the woman caller explained that the suit was due to Defendant corporation's "taking money from people by not paying them for the time when they had to work through lunches" and that their firm "would love to help [him] recover [his] money."After learning Johnson was not interested, the caller allegedly "asked if [he] knew of any coworkers ... who may want to get their money back."

### FEBRUARY 8, 2008 HEARING

The Court held oral argument on February 8, 2008. As part of their argument, Defendants noted that the six named Plaintiffs are from Florida, Georgia, North Carolina and Pennsylvania while during the time between the filing of the Complaint and the hearing, 40 individuals from Texas, Louisiana, Alabama, Ohio, Maryland, Missouri, Massachusetts and Illinois had consented to opt in to the suit. Defendants argued that the reason these individuals

with no apparent connection to the named Plaintiffs joined the suit was due to unethical solicitation by SLG. Defendants went on to reiterate their version of the communications that took place according to the sworn declarations of Cook, Kilgore, and Johnson. Plaintiffs responded that all of the individuals who opted in to the suit voluntarily came forward and that SLG's administrative assistants were merely placing calls to investigate potential witness testimony.

**\*6** The Court noted its failure "to see how the people of Kansas and Missouri are going to help substantiate a situation at a local store here in Florida."After hearing from both sides, the Court described Defendants' claims as "serious charges" and noted that a review of the number of cases filed by SLG since 2000 that never reached trial is indicative of "nuisance type claims that get bought off."The Court indicated that a resolution of the issues raised, issues that caused concern to the Court, would require determinations regarding credibility and the "clear factual issue" of whether the Defendants' employees were solicited or not.

### JULY 31, 2008 EVIDENTIARY HEARING

#### Nick Kilgore

The court held an evidentiary hearing on July 31, 2008. Nick Kilgore testified for the defense. Kilgore had worked at a NTB store in Kansas City, Missouri for a year and a half, first as a sales associate and then as a retail manager. (T.21).[FN4] Kilgore testified, consistent with his written declaration, that he was called on the morning of December 15, 2007, by a woman who identified herself as being from a law firm. (T.22). Kilgore remembered that she had an unusual name that he could not pronounce. The caller stated that SLG had received Kilgore's phone number from former employee Matt Bitner and that SLG wanted to know if Kilgore was interested in joining the suit. (T.22). Kilgore recalled that the caller stated the suit "was for

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 39**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 8

unpaid lunch breaks or employees being forced to work through the lunch break" and the caller "wanted to know if [he] was interested in recovering some of [his] lost money."(T.22). Kilgore informed the caller he was not interested in joining the suit and had never been forced to work through a lunch break. Kilgore called his boss, Christopher Blum, and informed him of the call. (T.24).

According to Kilgore, the caller never asked if Kilgore witnessed Bitner or any other TK employees being forced to work through lunch breaks. (T.23). Kilgore admitted that although his declaration states that the phone call lasted approximately five minutes, the call actually lasted only about one minute. (T.25). Kilgore attributed the discrepancy to the fact that he made his declaration four to six weeks after the call occurred. Since making his declaration, Kilgore obtained and viewed his phone records showing the duration of the call being shorter than he originally remembered. (T.30).

On cross-examination, Plaintiff's counsel asked Kilgore if the suit about which he was contacted "had to do with overtime issues."(T.37). Kilgore corrected counsel's statement and stated: "She didn't say overtime issues, she said that it was due to people being forced to work through the lunch break or not being paid for the lunch break."(T.37). He again stated that the caller told him that Matt Bitner had identified him as a possible interested party in the suit. (T.37). According to Kilgore, the caller never asked him if he knew or had worked with Matt Bitner. (T.38). Kilgore had previously worked with Matt Bitner when they were both sales associates. (T.38). Kilgore stated that the caller did not go into details about the allegations of the suit, and that "her main interest was wondering if I wanted to join."(T.39).

*Chris Johnson*

**\*7** Chris Johnson testified for the Defendants. Johnson worked for NTB for three years, first as a tire technician and later as a sales representative. (T.42). Johnson worked at NTB's stores in Over-

land Park, Kansas; Shawnee Mission, Missouri; and Kansas City, Missouri. (T.43). Johnson's employment with NTB was interrupted by a fourteen-month break during which he served on active duty with the U.S. Army in Iraq. (T.43). Johnson later left NTB to work for Citibank as a customer service sales representative. (T.41).

Johnson testified that he received a call on December 7, 2007, from a caller who identified herself as working in a law office. (T.44). According to Johnson, the caller told him "about a lawsuit that's being brought up against NTB involving lost wages for certain employees" and that the caller "asked me if I felt I had any lost wages, if I'd like to be a part of that particular lawsuit."(T.45). Johnson told her he was not interested. The caller asked if Johnson knew anyone else who had lost wages. Johnson told the caller he would keep the number and get back to her if he lost any wages. He saved the number in his cellular phone. (T.45).

Johnson stated that the caller never asked if he had ever been forced to work off the clock, or if he had ever witnessed anyone else forced to work off the clock. (T.46). The caller did not mention any other NTB employee, nor did she mention how she obtained Johnson's number. (T.46). Johnson mentioned the call to his service manager the following day at work, who told him not to worry about it. (T.46). When Johnson later transferred to the Kansas City store, he overheard two other employees, Shane Cook and Chris Blum, talking about the suit against NTB. (T.47). Johnson informed them of the call he had received. (T.47). Johnson testified that while his declaration stated that he was called on November 7, 2007, the call actually happened December 7, 2007 and Johnson had confused the timing. (T.47). Johnson never knew Matt Bitner and never worked with him. (T.49). Johnson did not know any of the named Plaintiffs in the suit against NTB.

*Shane Cook*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 40**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 9

Shane Cook testified for the Defendants. Cook had been a mechanic for NTB for almost three years at the Kansas City store. (T. 53-54). Cook testified that he received a call on December 15, 2007 from a law firm asking "if [he] would like to join a lawsuit for people that had basically been forced to work through lunch or forced to work through overtime and not being paid for it."(T.54). The caller told him that "Matt Bitner had given them [his] name saying [he] might be interested in joining."(T.55). Cook told her he thought the allegations were "B.S." and that he was not interested in joining the suit. (T.55).

According to Cook, the caller did not ask if he had witnessed Matt Bitner or any other employee being forced to work through lunch, or if Cook had been forced to work through lunch himself. (T.56). The call lasted under a minute. After the call ended, Cook told his store manager, Chris Blum, about the call. (T.56). Cook stated that he later used his cellular phone to call the law firm back and ask them if they would like to join a suit he was bringing because SLG was filing frivolous suits. (T.56). Cook stated that he "quite often" makes such callbacks for his own entertainment "when [he is] solicited." (T.56). Cook admitted to having used profanity during the phone call he received, and that it is part of his everyday way of talking. (T.57). Cook stated that he knew Matt Bitner as a coworker at the store. (T.58). Cook did not know any of the named Plaintiffs in the suit against NTB. (T.59).

*8 On cross-examination, Cook offered the same recollection of what occurred during the phone call with the woman from SLG that he had given on direct examination. (T.62). Cook stated that he did not tell the caller that TK owed him money, but that the caller told Cook that TK owed him money. (T.62). Cook elaborated that "it was almost like a sales pitch to me" and "it was basically if I'd like to join the lawsuit to recover monies that was owed to me."(T.63). Cook stated that he did not mention calling the law firm back in his first declaration because he had not remembered doing it at the time

he made his first declaration.[FN5](T.65).

*Christopher Blum*

Christopher Blum testified for the Defendants. Blum was employed by NTB for two years, as a sales associate, an assistant manager, a store manager, and most recently a service manager. Blum was the manager at Store 676 in Kansas City. (T.70). On December 15, 2007, Blum received a call from Nick Kilgore informing him that a former employee, Matt Bitner, was suing his store. Blum knew Bitner well as a former employee. (T.71). Blum stated that other employees in his store informed him that they had received calls from the same phone number regarding the same issue as that reported by Kilgore. Chris Johnson came forward later when he heard Blum, Kilgore, and Cook discussing the case.

*Gregg Shavitz*

Gregg Shavitz of the Shavitz Law Group testified for the Plaintiff. Shavitz testified that SLG does labor and employment law with a concentration on wage and hour law. The firm almost always represents plaintiffs. At the time of the hearing, the firm employed approximately six attorneys and eleven non-attorneys. (T.84). Shavitz testified that in this case there were already thirty plaintiffs in the case, and nothing to be gained by adding three or five to that number. (T.92). Shavitz testified that current or former TK employees would be the best source of information about whether people regularly worked through lunch breaks in the region in which they worked. (T.94). Shavitz stated that the common way to identify witnesses to substantiate claims is for SLG clients to identify other employees who could support their testimony. (T.94). Shavitz stated that Kilgore, Cook, and Johnson could not have become part of the case against TK because they were ineligible. (T.97).

Shavitz testified that SLG provides training for its employees on how to call prospective witnesses

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 41**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

about a case. (T.98). Shavitz described how a larger case such as this one would have a paralegal and an administrative assistant assigned to it. (T.98). An administrative assistant will "already have been with the firm for some period of time in which they'll have received incoming calls and then get comfortable in speaking to clients and going through a script or an incoming call situation about one calling about a new case."(T.99). According to Shavitz, the administrative assistant on a particular case would have attended many meetings in which the allegations in that case were discussed. If the administrative assistant was asked to call potential witnesses, the attorney on the case would describe "with particularity the information that is being sought on the call."(T.99). Shavitz has provided training by discussing solicitation at monthly firm meetings and circulating articles on solicitation from the Bar Journal and other sources. (T.100).

*9 On cross-examination, Shavitz stated that any time an administrative assistant is put on a case, he or she is reminded not to solicit. Shavitz estimated that Tayara Oliveira had approximately ten cases during her time at SLG that would have triggered such training. (T.107). Shavitz admitted that SLG does not have a written policy on solicitation. (T.107). He sends an e-mail with an article attached to the firm. (T.107). Sometimes SLG gives administrative assistants a script to work from when they make calls. (T.108). Tayara Oliveira did not have such a script in this case. (T.108). There was no attorney or paralegal sitting with Oliveira when she called Christopher Johnson, Nick Kilgore, and Shane Cook on December 7, 2007. (T.109).

Shavitz also stated that he did not know if SLG called the third parties to corroborate the allegations made by the named plaintiffs in the suit before filing the Complaint. (T.114). Shavitz admitted that contrary to his earlier testimony, Christopher Johnson would be a potential plaintiff in the case based upon his position with TK. (T.122). Shavitz also stated that Nick Kilgore would be a potential plaintiff but SLG would not wish to represent him

in order to avoid conflicts because Kilgore had since become a manager. (T.123). Shavitz stated that the questions an administrative assistant calling a potential witness might ask could be anything, depending on the attorney who directed him or her to make the call. (T.124). The administrative assistant may or may not know the position currently or formerly held by the potential witness. (T.125).

Shavitz admitted that the form of notice that SLG attached to its motion for class notice in this case did not advise potential plaintiffs that they could seek other counsel besides SLG. (T.132), In response to the Court's questions, Shavitz stated he did not give Oliveira a script to follow in this case because the issue was fairly narrow and Oliveira was already familiar with the issues in the case. (T.138). Shavitz also stated that neither he nor SLG attorney Hal Anderson was supervising Oliveira by telling her what to ask and what not to ask potential witnesses in her calls. (T.141). The administrative assistant would only e-mail Shavitz or Anderson if he or she had something specifically to share with them. (T.141). Shavitz did not recall if Oliveira had done so in this particular case. (T.146).

Shavitz stated that if an administrative assistant informed him that a potential witness was interested in joining the suit as a plaintiff, Shavitz would express that he hoped the witness had expressed interest to SLG rather than the administrative assistant reaching out to the potential plaintiff. (T.144). Shavitz did not know if he was the attorney who directed Oliveira to make the calls to Johnson, Cook, and Kilgore. (T.145). Shavitz testified that his administrative assistants don't solicit, "based upon their training, based upon their understanding of the Bar rules and there's no advantage to the case to do so."(T.146). Shavitz admitted that if more plaintiffs opted-in to a FLSA collective action, SLG would spend more attorney time supplementing disclosures under Rule 26(a)(1), for which they would seek reimbursement at the end of the case if they won. (T.149).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 42**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
(Cite as: 2009 WL 289822 (S.D.Fla.))

*Tayara Oliveira*

**\*10** Tayara Oliveira testified for the Plaintiff. She was in her second year of college at the time of the hearing and had been an administrative assistant at SLG since October 2006. (T.151). She does not possess a law degree or paralegal certification. (T.171). Oliveira testified that her duties include making calls to witnesses, speaking with clients, and assisting incoming callers. (T.153). Oliveira was assigned to this case. (T.154). She made calls to witnesses to obtain information about SLG's clients' claims. (T.154). Oliveira stated that Gregg Shavitz offered SLG employees "extensive training" about what they could not say in phone calls, and that SLG educated them about other firms that had experienced issues with solicitation. (T.154). Oliveira testified that they were told not to solicit at any point in time by asking people to join the case. (T.156).

Oliveira stated that on December 15, 2007, she was calling people that SLG client Matthew Bitner had identified. (T.157). Bitner had faxed a typed list of names and telephone numbers to SLG. (T.158). The list included the names of Nick Kilgore, Shane Cook, and Victor Harris. (T.163). Oliveira testified she called Cook and Harris with the intention of getting information about SLG's clients' claims, and not to entice them to join the case as plaintiffs. (T.164).

Oliveira's stated recollection of the phone conversation with Cook differed from Cook's recollection. According to Oliveira, she explained who she was and explained that Bitner had provided SLG with Cook's name and number, and told SLG that Cook might have information to substantiate Bitner's claims. (T.164). Oliveira claimed she did not get far because Cook launched into a stream of profanity regarding the case and she ended the call. (T.165). Oliveira maintained that at no time did she inquire whether Cook was interested in joining the suit or urge him to do so. (T.165). Oliveira stated she did not get as far as asking Cook his position with TK before she ended the call. (T.164). Someone called

SLG back, and Adrienne Castrillon-McNish answered the call and said it was someone yelling and cursing. (T.165). Another call came in, but Oliveira and Castrillon-McNish did not answer it, believing it was Cook again. (T.165).

Oliveira also called Nick Kilgore the same day. She testified that she began the call the same way she did her call to Shane Cook. (T.166). Oliveira's testimony also conflicts with Kilgore's. Oliveira testified that she informed Kilgore that Matthew Bitner provided Kilgore's name and number to provide SLG information regarding Bitner's claims. (T.166). Kilgore stated he did not have information and was not interested in speaking with Oliveira at that time, and ended the call. (T.166). Again, Oliveira stated she never asked Kilgore whether he was interested in joining the suit. (T.166). She never asked him whether he ever experienced any wrongful deduction of pay. (T.166). Oliveira had no recollection of ever speaking with Christopher Johnson.

**\*11** On cross-examination, Oliveira stated that SLG later provided her a written script to follow when making calls. (T.172). Oliveira testified that she could not recall exactly when SLG provided her the script, only that it was after her calls to Kilgore, Cook, and Johnson. (T.172). She testified that she has never seen the Florida Bar rule on solicitation. (T.172). Oliveira did not recall contacting a number of the opt-in plaintiffs in the case from other states, and could not say for sure who contacted them. (T.174). She admitted she contacted a plaintiff in Maryland, Lorenzo Ramsay, "to corroborate the lunch deductions issue that other tire technicians suffered while working for Tire Kingdom as a whole."(T.176-77). Oliveira could not recall which specific or potential SLG client's claims she was trying to corroborate by calling Mr. Ramsay. (T.177).

Oliveira stated she did not know what Matt Bitner meant by writing "Other NTB employees" at the top of the fax he sent to Oliveira containing names. (T.181). She admitted that Bitner could have meant

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 43**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 12

other NTB employees who would like to join the suit. (T.181). Oliveira did not recall what names were redacted from the fax or whether they worked with Bitner. (T.182). Oliveira could not recall if she ever spoke to any TK/NTB employee who corroborated Bitner's allegations in the case. (T.188). There was never a lawyer or certified paralegal sitting next to her when she made the calls on this case or any other case for which she made calls to potential witnesses. (T.190).

Oliveira stated that she or another administrative assistant have regular weekly or bi-weekly meetings with Shavitz. (T.196). Oliveira did not have a training file. (T.197). She did not have a written job description and was not sure if one existed. (T.197). She takes notes when she makes calls to people, on a spreadsheet on the computer. (T.197). She records the information they provide or notes that they did not want to speak to her. (T.198). She was instructed by Gregg Shavitz orally to make the calls in this case. (T.199). There was no one "specifically set up to supervise" her but she was able to go to Shavitz with any questions or concerns. (T.200). If Shavitz was not in the office, she would phone him, email him, or wait a day or two and ask him in person. (T.201).

SLG did not bring supporting materials to the evidentiary hearing regarding the spreadsheets. However, given the seriousness of the allegations against SLG, the Court granted SLG leave to provide supporting materials after the hearing. The Court ordered SLG to provide the Court with the emails regarding the phone calls to the witnesses who were allegedly solicited, its training materials concerning Oliveira, and the fax from Bitner to Oliveira filed under seal. (T.203). SLG provided the Court the following materials, which the Court has reviewed [FN6]:

Exhibit A: "Spreadsheets, Emails, & Notes": This exhibit consists of a spreadsheet that contains, names, phone numbers, addresses, and brief notes of conversations. It also includes several e-mails from Tayara Oliveira to several people confirm-

ing conversations.

**\*12** Exhibit B: "Training Documentation": This exhibit consists of e-mails from Gregg Shavitz to SLG employees and others.

Exhibit C: "Facsimile": This exhibit is the fax from Matthew Bitner to Tayara Oliveira discussed at the July 31, 2008 evidentiary hearing.

On November 18, 2008, the Court ordered (DE 137) the parties to file their final memoranda of law on Defendant's Motion for Sanctions. Defendants filed their Final Memorandum of Law (DE 140) in Support of Motion for Sanctions on November 24, 2008. Plaintiffs filed their Final Memorandum in Opposition (DE 144) on December 9, 2008. Defendants filed a Reply (DE 145) on December 15, 2008.

### DISCUSSION

The issues before the Court are whether SLG's pre-certification telephone communications with Defendants' current and former employees constituted improper solicitation of putative class members and, if so, what sanctions this Court should impose to address that conduct.

Local Rule 11.1.C states that "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating the Florida Bar." Rule 4-7.4(a) of the Rules Regulating the Florida Bar prohibits a lawyer from personally soliciting professional employment from a prospective client "when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." This rule prohibits a lawyer from entering into an agreement for a fee, or from collecting a fee, for employment obtained in violation of this solicitation rule. The rule further states that a lawyer shall not permit his or her employees or agents to solicit on the lawyer's behalf. The commentary to the rule notes the "potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services" in that such clients often feel

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 44**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

Page 13

"overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest."

Rule 4-5.3 of the Rules Regulating the Florida Bar addresses lawyer liability for the conduct of their nonlawyer assistants. Under this rule, any lawyer having "direct supervisory authority" over nonlegal staff is responsible for making "reasonable efforts" to ensure that the nonlawyer's conduct is consistent with the attorney's own professional obligations. An opinion by the Professional Ethics Committee of the Florida Bar explains that Rule 4-5.3, among other rules, holds nonlegal staff to the same obligations as lawyers regarding solicitation of new business. Fla. Bar Prof'l Ethics Comm. Op. 89-4 (1989). Therefore, any lawyer who orders or ratifies improper solicitation by a nonlawyer at their firm would be held liable for violation of the Rules of Professional Conduct. *Id.*

[1] The misconduct alleged by Defendants occurred in the context of pre-certification communications in a proposed collective action. The United States Supreme Court has recognized that while "[c]lass actions serve an important function in our system of civil justice," they also present "opportunities for abuse." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99-100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Supreme Court has further recognized that the same unique potential for abuse inherent in class action suits is also present in collective actions with respect to "misuse of the class device." *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (applying *Gulf Oil* to collective actions). The potential abuses include "heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of the parties and counsel to 'drum up' participation in the proceeding" and "[u]napproved communications to class members that misrepresent the status or effect of the pending action." *Gulf Oil,* 452 U.S. at 101 n. 12, 101 S.Ct. 2193.

*13 [2] After observing all of the testimony at the evidentiary hearing and fully considering the materials submitted by the parties in support of their positions, the Court finds that SLG solicited Nick Kilgore, Shane Cook, and Chris Johnson to join the suit against TK. The Court finds the testimonies of Kilgore, Cook, and Johnson credible in their accounts of the calls they received from SLG. The Court finds, based on their testimonies, that each of these three witnesses received a phone call from SLG in which he was asked if he would like to join the suit against TK or NTB in order to recover money owed to him. Cook and Kilgore specifically recalled the caller informing them that Matt Bitner had provided them names.

The Court further finds that SLG's motive in soliciting Kilgore, Cook, and Johnson was pecuniary gain. The Court specifically finds, based on the testimonies of Cook, Kilgore, and Johnson, that none was asked the kind of "witness-type" questions that would lend credibility to SLG's contention that the purpose of the calls was to gather information to substantiate the claims of existing SLG clients. Gregg Shavitz admitted that the more clients SLG added to the suit, the more work it would perform for which it would later seek compensation if the suit concluded with a result favorable to SLG. The Court finds wholly unpersuasive SLG's argument that it would not attempt to solicit Cook, Johnson, and Kilgore based on their lack of eligibility to participate as plaintiffs due to their positions. Indeed, Shavitz admitted on cross-examination that Kilgore and Johnson were eligible to become part of the suit. However, even assuming that Cook, Kilgore and Johnson were ineligible to join the suit as plaintiffs does not compel the conclusion that they were not solicited.

The Court finds that SLG failed to train its administrative assistant, Tayara Oliveira, regarding solicitation of clients. The Court further finds as to this point, based on the testimony of Oliveira and Gregg Shavitz, that attorneys Gregg Shavitz and Hal Anderson of SLG had direct supervisory authority

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 45**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)                                   Page 14
(Cite as: 2009 WL 289822 (S.D.Fla.))

over Oliveira as a member of SLG's nonlawyer staff. In opening statements at the evidentiary hearing, counsel for SLG stated that Tayara Oliveira would testify "about the extensive training she receives at the Shavitz Law Group to avoid solicitation."(T.16). Oliveira's testimony at the hearing failed to establish the existence of such training, nor did that of Gregg Shavitz. Oliveira admitted that she had never seen the Florida Bar rule on solicitation. Gregg Shavitz testified that SLG does not have a written solicitation policy in place.

The testimonies of Oliveira and Shavitz and the materials submitted by SLG in an effort to show training reveal an attempt by SLG to characterize the loose day-to-day supervision of Oliveira in her duties as something akin to formal training on solicitation. For instance, SLG attempted to establish through Shavitz's testimony that an administrative assistant such as Oliveira would be familiar with the case and in constant contact with a supervising attorney. Even if this were sufficient to show training, Shavitz undermined his earlier testimony when he testified that an administrative assistant such as Oliveira would only contact him "if she has something to share."(T.141).

*14 The Court notes that Shavitz's testimony regarding both training and the specific solicitation alleged in defendants' motion was vague and lacking in detail on important points. Shavitz resorted to generalities in his testimony about what "would happen" and who "will be" supervising the administrative assistants on a given case. Shavitz's ability to state specifically how Oliveira was supervised on this particular case lacked detail. Shavitz could not remember if he was the attorney who directed Oliveira to make the phone calls at issue in this motion. Shavitz did not provide details that would support the assertion that SLG provided Oliveira substantial training on solicitation or that solicitation did not occur in this particular case.

SLG contends the fax that it provided the Court proves that Matt Bitner sent Oliveira the names of potential witnesses. However, the fax does not support SLG's position. The FAX does not contain any notation that it was a list of potential witnesses. Oliveira's spreadsheets similarly fail to contain information that supports SLG's argument that it did not solicit plaintiffs in this case. Additionally, the emails SLG provided to the Court show only that SLG staff was occasionally warned not to solicit. The emails fail to show that SLG ever explained and identified solicitation to its staff and trained them on how to avoid it. The Court finds, based on the testimony at the hearing and the additional materials submitted by SLG, that SLG failed to provide formal, substantial, and informative training to its staff on compliance with the Florida Bar rules on solicitation.

[3][4] SLG improperly solicited clients in violation of Rules Regulating the Florida Bar. The Court now addresses the appropriate means by which to sanction SLG for its conduct. "It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Thomas v. Tenneco Packaging Co. Inc.,* 293 F.3d 1306, 1320 (11th Cir.2002) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). These powers include the power of the Court "to discipline attorneys who appear before it." *Chambers,* 501 U.S. at 43, 111 S.Ct. 2123.However, courts are to exercise caution in the exercise of their inherent power, provide the attorney facing sanctions due process, and only impose sanctions where the court finds conduct that amounts to bad faith. *Thomas,* 293 F.3d at 1320.The Court does not take up the task of imposing sanctions lightly.

[5][6][7]"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil,* 452 U.S. at 100, 101 S.Ct. 2193.This "discretion is not unlimited," however, and "an order limiting commu-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

APP 46

nications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101-02, 101 S.Ct. 2193.While specific findings of abuses may justify a ban on communications, the mere possibility of abuse does not justify "adoption of a communications ban that interferes with formation of a class or the prosecution of a class action." *Id.* at 104, 101 S.Ct. 2193.

**\*15 [8]** The Court has found specific abuses in the present case that require the imposition of appropriate sanctions. However, the Court is mindful of the disfavor on communication bans expressed by the Supreme Court in *Gulf Oil.*Furthermore, the Court does not seek to punish SLG's legitimately-obtained clients by hampering SLG's ability to prosecute its case as to those clients through a ban on communication with potential witnesses. The appropriate sanction in the present case prevents SLG from reaping financial benefit from clients obtained by solicitation.

### RECOMMENDATION

For the reasons stated above, this Court respectfully RECOMMENDS to the District Court that the Defendant's Motion for Sanctions (DE 58) be GRANTED IN PART and DENIED IN PART, as follows:

1) that Shavitz Law Group be barred from representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action: Donald Hamm, Elliot Cook, Ronald Simms, Mark Wagner, Martha Harris, and Timothy Bridges;

2) that Shavitz Law Group be barred from collecting any fees or costs for work performed in representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action: Donald Hamm, Elliot Cook, Ronald Simms, Mark Wagner, Martha Harris, and

Timothy Bridges;

3) that Shavitz Law Group be ordered to formulate and implement a formal written policy on solicitation to inform and govern the conduct of all SLG attorney and non-attorney staff;

4) that a copy of this Report and Recommendation and any Order adopting it be forwarded to the Florida Bar for possible further action;

5) that Shavitz Law Group be ordered to reimburse Defendants for all reasonable fees and costs incurred in bringing and prosecuting Defendants' Motion for Sanctions.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Kenneth L. Ryskamp, within ten (10) days after being served with a copy. *See*28 U.S.C. § 636(b)(1)(c). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. *See United States v. Warren,* 687 F.2d 347, 348 (11th Cir.1982)cert. denied, 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351(1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 30th day of December 2008.

> FN1. The record and hearing transcript also contains references to National Tire & Battery, or "NTB", also a division of TBC Corporation.

> FN2. Defendants did not submit declarations of Victor Harris or Matt Bitner. Store Manager Chris Blum's declaration indicated that these two employees reported receiving phone calls similar to those described by Cook and Kilgore.

> FN3. On February 3, 2008, Plaintiffs filed a Motion for Leave to File Surreply (DE 76) claiming that Defendants' Reply inserted a new theory of inadequate claims in-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 47**

--- F.Supp.2d ----
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)
**(Cite as: 2009 WL 289822 (S.D.Fla.))**

vestigation in the "4 pages of new argument under Rule 11 that Defendants introduced for the first time in their Reply," (DE 76). In an Endorsed Order (DE 87), filed February 7, 2008, the Court denied this motion and indicated that to "the extent that this Court determines that Defendants made new arguments in its reply, this Court will refuse to consider those arguments when rendering a decision."

FN4. All references to the transcript (DE 130) of the Evidentiary Hearing are cited as (T.___).

FN5. Defendants filed a "Second Declaration of Shane Cook" (DE 71-2), addressing the callback issue.

FN6. The Court later entered several Orders (DE 131, DE 133, DE 135) that Plaintiffs file the electronically stored information in a manner accessible to the Court and in a manner replicating the originals.

S.D.Fla.,2009.
Hamm v. TBC Corp.
--- F.Supp.2d ----, 2009 WL 289822 (S.D.Fla.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**APP 48**

## DECLARATION OF TRAVIS BRADEY

I, Travis Bradey, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.    I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge. This declaration is given voluntarily. I have not been promised any benefit, coerced or threatened in any manner in exchange for the testimony in this declaration.

2.    I was employed by Centex Homes in its Triad Division in North Carolina as a Field Manager II from May 2005 through May 2007.

3.    In May 2008, I was directly contacted on my cellular phone by an individual named Ric Susman. Mr. Susman identified himself as working for the law firm of Morgan and Morgan and explained that he and his firm represented a former Field Manager in a lawsuit against Centex Homes, in which they were seeking unpaid overtime for Field Managers. Mr. Susman told me that they were trying to make the lawsuit into a class action and he asked if I would be interested in joining the lawsuit. He also indicated that they could get me overtime compensation for hours worked over 40 each week during my employment with Centex Homes because I did not supervise other employees. He also provided examples of dollar amounts that other former Field Managers from Centex Homes might be eligible to receive.

4.    During this phone conversation, I informed Mr. Susman that I was not interested in joining the lawsuit. Nevertheless, he asked for my e-mail address and said he would e-mail a form to me for my review. He said that, if I changed my mind, I could sign the form and send it back to him. On May 23, 2008, Mr. Susman sent me an e-mail

**APP 49**

with that form attached.  A copy of the e-mail and the form is attached to this Declaration at Exhibit A.

     5.     I do not know how Mr. Susman or Morgan and Morgan obtained my cell phone number.  I had no contact with them at all prior to them contacting me by telephone.

     6.     Even after I informed Mr. Susman that I was not interested in joining the lawsuit, he or someone else from his law firm contacted me on 3 or 4 other occasions during June and July 2008 to ask if I had changed my mind.

     7.     I have not consented to join the lawsuit and I am not represented by Morgan and Morgan.

     8.     I verify that the information I have provided in this declaration is true and correct.

     9.     Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Signature

Travis Bradey
Print Name

3/25/09
Date

# EXHIBIT A

---

> Subject: Morgan and Morgan
> Date: Fri, 23 May 2008 09:07:55 -0400
> From: RSusman@forthepeople.com
> To: tmbradey@hotmail.com
>
> Please let me know if you have any further questions.
>
> Ric Susman
> Wage/Hour Department
> Morgan and Morgan
> 20 N Orange Ave.
> Orlando, FL 32817
> 1-800-768-5455 x 5996
> 407-236-5996
> rsusman@forthepeople.com
>
>
> ATTORNEY-CLIENT PRIVILEGED; DO NOT FORWARD WITHOUT PERMISSION.
> Communications from attorneys may not be forwarded without the sender's
> express permission.
>
> <<Deco-Sheet.doc>>

---

Keep your kids safer online with Windows Live Family Safety. Help protect your kids.
<http://www.windowslive.com/family_safety/overview.html?ocid=TXT_TAGLM_W
L_Refresh_family_safety_052008>

**APP 51**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON R. ODEM, ON HIS OWN
BEHALF AND ON BEHALF  OF
THOSE SIMILARLY SITUATED,

   **CASE NO.:  8:08-CV-166-JDW-MAP**

   Plaintiffs,

vs.

CENTEX HOMES, INC., A FLORIDA
CORPORATION,

   Defendant.

_____/

## DELCARATION OF _____

1.  My name is _____.

2.  I am an opt-in Plaintiff in the above-referenced action.

3.  I make this Declaration based upon personal knowledge.

4.  CENTEX, Inc. is one of the nation's leading home builders.  Its operation covers several states in the United States and is one of the largest multi-market, single-family home builders in the United States.

5.  From approximately ___ until ___, I worked for Defendant, Centex, Inc., as Field Manager **I, II or III** in the ___ ( area) and _____(state).  As a Field Manager **I, II or III** for Defendant, I was primarily responsible for ensuring Defendant's homes were produced on the schedule it set and based upon the blueprints/designs it created, and by the subcontractors it contracted with to perform the construction work.

**APP 52**

6.      In order to ensure that homes were built with uniformity, Centex issued all Field Managers a policy and procedure manual.  The manual set strict guidelines that directed the manner in which Field Managers performed our jobs for each phase of the home.  For example, the manual set forth guidelines on quality control inspections on doorframes performed by subcontractors, timetables on when certain phases of the home should be finished, and even provided us with a written script of what to say to home buyers at different stages of the home.

7.      Field Managers were to perform their duties consistent with the policy and procedures manual.  Centex assigned Quality Inspectors ("Q.I.") to perform periodic inspections to ensure that the homes were constructed according to their procedures.

8.      As a result of Defendant's uniform and established construction practices in this regard, Field Managers performed similar duties despite working at multiple work sites across many states.

9.      I, like other Field Managers, was paid a salary throughout my entire employment with Centex.

10.     During my employment with Defendant, I typically worked in excess of forty (40) hours per workweek and was not paid proper overtime compensation for all hours worked in excess of forty (40) within a workweek.  No additional pay was given for hours worked in excess of forty (40) during the regular workweek.  As a result of this practice, Defendant failed to pay me full and proper overtime compensation as required by the FLSA.

**APP 53**

11.     As I mentioned, I worked in the _____market during my employment at Centex, Inc.  To my knowledge, there are/were approximately thirty (30) similarly situated individuals employed by Centex in the _____ area while I worked for Centex, and they were paid in the same manner in which I was paid.

12.     I anticipate that other current and former Field Managers who were paid a salary will join this litigation if they are given notice of it and an opportunity to join it.   Upon learning their rights, I believe they will exercise the right to join and recover the unpaid overtime due.

13.     I have personally spoken with ___ former similarly situated Field Managers that have already joined the current case.  Additionally, I am aware of other Field Managers who have expressed an interest in joining the lawsuit, have complained about Centex's payroll practices forming the basis of this suit, and/or are fearful of joining without an assurance from the Court that retaliation is prohibited.

14.     I file this declaration to state that once I was informed that I may have been wrongfully deprived of overtime pay, I became interested in pursuing my rights as well.

15.     I was originally informed of my potential rights to overtime by_____.  I am aware of other Field Managers who would like to join as well.  One named ____ is interested in joining this suit as well.

16.     I declare under penalty of perjury that the foregoing allegations contained within this Declaration are true and correct.

_____
OPT-IN PLAINTIFF


_____
DATE

1          UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF TEXAS

2

3   JASON R. ODEM, on his
    own behalf and others

4   similarly situated,

5     Plaintiff,
                                    CASE NO.:
6   vs                              3:08-CV-1196-L

7   CENTEX HOMES, a Nevada
    general partnership,

8
      Defendants.

9

10

11     DEPOSITION OF:      RUSSELL HUTCHINS

12     PURSUANT TO:        Notice by Counsel for
                           Defendant

13
       DATE:               November 19, 2008

14
       TIME:               9:38 to 12:20

15
       PLACE:              U.S. Legal Support
16                         4350 West Cypress Street
                           Suite 701
17                         Tampa, Florida 33607

18     REPORTED BY:        Lori Law, RPR, FPR
                           Notary Public
19                         State of Florida at Large

20

21
                           Pages 1 - 143
22

23

24                    COPY

25                                           **APP 56**

```
 1   APPEARANCES:

 2

 3           Morgan & Morgan, P.A.
             CARLOS LEACH, OF COUNSEL
 4           20 North Orange Avenue, Suite 1600
             Orlando, FL 32802

 5

 6           Appeared on behalf of Plaintiff

 7

             Littler Mendelson, PC
 8           SCOTT SHERMAN, OF COUNSEL
             2001 Ross Avenue, Suite 1500
 9           Lock Box 116
             Dallas, TX 75201

10

11           Appeared on behalf of Defendant

12

13

14

15

16

17

18

19

20

21

22

23

24

25                                           APP 57
```

1    A    Okay.

2    Q    Have you taken any medication or

3    substance in the last 24 hours --

4    A    No.

5    Q    -- that would affect your ability

6    to testify today?

7    A    No.

8    Q    Anything that would impair your

9    ability to testify at all?

10   A    No.

11   Q    Do you know Jason Odem?

12   A    No.

13   Q    How did you find out about this

14   lawsuit?

15   A    I was called by Shavitz.

16   Q    So they called you directly?

17   A    Yes.

18   Q    Do you know how they got your

19   contact information?

20   A    No, I don't.

21   Q    Do you know approximately when it

22   was that you were contacted?

23   A    Actually, no, I don't.

24   Q    Do you know who it was that

25   contacted you?                    **APP 58**

10

```
 1        A    I don't remember her name either.

 2        Q    Was it Lauren Renada?  You don't

 3   remember the name?

 4        A    No.

 5        Q    But it was somebody in Greg

 6   Shavitz' office?

 7        A    Yes.  I believe she no longer

 8   works there.

 9        Q    Did you review any documents in

10   preparation for your deposition today?

11        A    Yes.

12        Q    What documents did you review?

13        A    I reviewed other depositions.

14        Q    Whose deposition did you review?

15        A    I don't remember actually.

16        Q    Were they other depositions --

17        A    I think it was Jason's, but I'm

18   not sure.

19        Q    Jason's is this afternoon.

20        A    Okay.  Then it wasn't him.

21        Q    But they were depositions in this

22   same case?

23        A    Yes.

24        Q    Any other documents that you

25   reviewed?                              APP 59
```

```
1                    CERTIFICATE OF OATH

2

3          STATE OF FLORIDA

4          COUNTY OF HILLSBOROUGH

5

6          I, the undersigned authority, certify

7   that RUSSELL HUTCHINS personally appeared before

8   me and was duly sworn.

9

10

11         WITNESS my hand and official seal this

12  date:  11/26/2008.

13

14

15

16

17              _____

18

19              LORI LAW, RPR, FPR

20              Notary Public

21              State of Florida

22              My Commission Expires 3/29/12

23              Commission No. DD758258

24

25                                    APP 60
```

1

2                    CERTIFICATE OF REPORTER

3

4    STATE OF FLORIDA

5    COUNTY OF HILLSBOROUGH

6

7         I, LORI LAW, Registered Professional

8    Reporter, certify that I was authorized to and did

9    stenographically report the foregoing deposition;

10   that a review of the transcript was requested, and

11   that the transcript is a true record of the

12   testimony given by the witness.

13        I further certify that I am not a

14   relative, employee, attorney, or counsel of any of

15   the parties, nor am I a relative or employee of

16   any of the parties' attorney or counsel connected

17   with the action, nor am I financially interested

18   in the action.

19

20        Dated:  11/26/2008.

21

22                    _____

23                    LORI LAW, RPR, FPR

24

25                                        **APP 61**

```
 1
     11/26/2008
 2
     Morgan and Morgan
 3   CARLOS LEACH, ESQ.
     20 North Orange Avenue, Suite 1600
 4   Orlando, FL  32802
 5   Re:  JASON R. ODEM, on his own behalf and others
     similarly situated vs. CENTEX HOMES, a Nevada
 6   general partnership
 7   Dear Mr. Leach:
 8   The transcript of RUSSELL HUTCHINS taken in the
     above-styled case is now ready for signature.
 9   Please make arrangements with RUSSELL HUTCHINS for
     the reading of said transcript to make any
10   amendments or corrections (with the reasons
     therefore) on the errata sheet, and sign the
11   errata sheet.  Once completed, return to COUNSEL
     OF RECORD.
12
     The Rules of Civil Procedure provide 30 days from
13   receipt of this letter for you to exercise your
     right to read and sign.  Failure to do so will
14   constitute waiver of your right to read and sign.
15   If you have any questions, please don't hesitate
     to call us.  Thank you for your attention to this
16   matter.
17   Sincerely,
18
19   Lori Law, RPR, FPR
     Notary Public, State of Florida
20
21
22
23
24
25                                         APP 62
```

```
 1                          ERRATA SHEET

 2

 3
          TO BE ATTACHED TO DEPOSITION OF RUSSELL

 4  HUTCHINS,

 5
          TAKEN November 19, 2008, IN THE CASE OF

 6  JASON R. ODEM, on his own behalf and others
    similarly situated vs CENTEX HOMES, a Nevada

 7  general partnership.
    ---------------------------------------------------

 8

 9

    PAGE LINEERROR OR AMENDMENT and REASON FOR
10  CHANGE

11  ---- -------------------------------------------

12  ---- -------------------------------------------

13  ---- -------------------------------------------

14  ---- -------------------------------------------

15  ---- -------------------------------------------

16  ---- -------------------------------------------

17  ---- -------------------------------------------

18  ---- -------------------------------------------

19  ---- -------------------------------------------

20  ---- -------------------------------------------

21  ---- -------------------------------------------

22  ---- -------------------------------------------

23  Under penalties of perjury, I declare that I have
    read my deposition and that it is true and

24  correct, subject to any changes in form or
    substance entered here.

25                                      APP 63
```



1   _____          _____

    DATE                          RUSSELL HUTCHINS

**APP 64**

# DECLARATION OF EDWIN WOODS

I, Edwin Woods, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.    I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based upon my personal knowledge.

2.    I am employed by Centex Homes in the position of Area Construction Manager in the Charlotte, North Carolina division.

3.    While working as an Area Construction Manager, I supervised Brian Yarmon. Brian worked for Centex Homes as a Customer Care Representative and Field Manager. He was with Centex from 2003 until 2006.

4.    On or about February 18, 2009, Brian called me and left a voicemail message for me to return his call. I called him back and Brian informed me that he had been contacted by an attorney named Carlos Leach with the law firm Morgan and Morgan. Brian indicated that the attorney had contacted him by telephone to ask him to join a lawsuit by Field Managers against Centex Homes. I believe that Brian also stated that the attorney had also contacted him by e-mail.

5.    I did not attempt to persuade Brian from joining the lawsuit and it is my understanding that he has done so.

6.    I verify that the information I have provided in this declaration is true and correct.

7.    Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**APP 65**

Signature

Edwin K. Wodd

Print Name

3/9/09

Date

**APP 66**