IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON R. ODEM, on his own behalf and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:08-CV-1196-L (BF) |
| CENTEX HOMES, a Nevada General Partnership, | § § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On November 4, 2009, the District Court denied Plaintiff's and Opt-In Plaintiffs' Motion for Reconsideration of the District Court's June 16, 2009 Order and directed this Court to abide by that order. The District Court's June 16, 2009 Order referred to the United States Magistrate Judge for recommendation after reconsideration under the more stringent "similarly situated" inquiry the issue of whether to grant conditional class certification and court-facilitated notice pursuant to the Fair Labor Standards Act ("FLSA"). (Order, doc. 171, citing *Valcho v. Dallas County Hosp. Dist*., 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008).)

**Factual and Procedural Background**

Jason R. Odem ("Plaintiff") worked as a salaried "Field Manager" in Sarasota County, Florida for Defendant Centex Homes ("Defendant"), which was engaged in the business of constructing and selling single-family homes and townhomes. As Defendant's employee, Plaintiff had various duties and responsibilities in carrying out daily operations within Defendant's construction processes.

Plaintiff alleges he was not paid for the time spent working in excess of forty hours within one or more work weeks. Specifically, Plaintiff alleges Defendant improperly classified Plaintiff as exempt from overtime pay requirements prescribed by the FLSA. Plaintiff states that, as a non-exempt employee, he was entitled to receive time-and-a-half pay for all work exceeding forty hours per week, as required by the FLSA. In moving for conditional certification and notice pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), Plaintiff alleges that similarly-situated employees were also improperly denied payment for overtime work at Centex locations nationwide.

Defendant denies Plaintiff's allegations and opposes conditional certification. Defendant states that the members of the putative class were properly classified as exempt from overtime requirements, and thus are not entitled to overtime pay. Defendant argues that certification is inappropriate because Plaintiff's claims and alleged injuries are so highly individualized that a collective action cannot be maintained and that the proposed class is unmanageable. Because the status of discovery on the certification issue is critical to the Court's application of the more stringent standard of review, the Court will consider the status of discovery on the certification issue.

## Consideration of Discovery

As this Court stated in its Order of November 4, 2009, since Plaintiff filed his original complaint on January 24, 2008, he diligently has conducted discovery on the certification issue on his own behalf and on behalf of those similarly situated. This Court has taken into consideration any discovery that is still outstanding and agrees with the District Court that the record contains enough evidence to consider the disparate factual and employment settings of the individual plaintiffs.

**Standard of Review**

The FLSA allows one or more employees to sue their employer on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b). When employees do so, the resulting lawsuit is called a "collective action." *See, e.g.*, *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007). An FLSA collective action, unlike a class action, requires potential plaintiffs to opt-in to the lawsuit. Like a class action, a collective action must first be certified by the court. *Id.*

Courts generally follow a two-stage approach to determine whether to certify an FLSA collective action. At the first, or "notice" stage, the court determines whether similarly-situated potential plaintiffs exist such that court-facilitated notice is warranted. *Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008). At that stage, "a court ordinarily possesses 'minimal evidence' and is thus instructed to apply a lenient standard in determining whether to conditionally certify." *Harris v. Fee Transp. Servs., Inc.*, No. 3:05-CV-0077-P, 2006 WL 1994586, at *3 (N.D. Tex. May 15, 2006) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003). At the second, or "certification" stage, the court determines whether the representative plaintiff and the opt-in plaintiffs are sufficiently similarly situated to enable the lawsuit to proceed as a collective action. *Mooney*, 54 F.3d at 1214. At this stage, the court generally has much more information upon which to base its decision than it has at the notice stage, and as a result, employs a stricter standard. *See Harris*, 2006 WL 1994586, at *3.

When parties have had an opportunity to conduct discovery on the certification issue, as they have in this case, the similarly situated inquiry is more stringent and the two-step inquiry collapses into one step. *Id.*; *Valcho*, 574 F. Supp. 2d at 622.

## Analysis

A court typically considers three factors in determining whether potential plaintiffs are similarly situated for purposes of the more stringent standard: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appeared to be individual to each plaintiff; and (3) fairness and procedural considerations. *Harris*, 2006 WL 1994586, at *3 (citations omitted). Although Plaintiff's position need not be identical to the positions of the putative class members, he must show that his position is similar to those of the potential class members. *Mooney*, 54 F.3d at 1214. Moreover, a plaintiff requesting class certification must "propose a class that is sufficiently defined and manageable from the outset." *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

Plaintiff worked for Defendant as a salaried "Field Manager" in Sarasota County, Florida. (Compl. ¶¶ 1-2.) Defendant builds and sells a variety of homes, including single-family detached homes as well as townhomes. (Def.'s App. 917-22, Richter Decl. ¶ 3.) Defendant operates in six hundred neighborhoods throughout twenty-four states and the District of Colombia. (*Id.*) Defendant is headquartered in Dallas, Texas, but its operational functions have a decentralized management structure. (*Id.* ¶ 4.) Defendant has twenty-six divisions which are managed independently by Division Presidents who have profit and loss responsibilities for their divisions, as well as the autonomy to establish goals and objectives, policies and procedures, bonus plans, and

incentive programs, and otherwise run the business of the divisions. (*Id.* ¶ 5.) Each division has various employees who perform duties such as sales, construction management, customer care, warranty management, quality control management, and other jobs. (*Id.* ¶ 6.) Each division determines the duties its employees will perform. (*Id.*) Each division employs Field Managers to manage the building and development of Defendant's housing communities. (*Id.* ¶¶ 7-8.) Subcontractors actually perform the manual labor required to build the homes, and one of the job duties of Field Managers is to supervise and manage the subcontractors. (Id.)

### Job Duties of Field Managers

The job duties and responsibilities of Field Managers vary from division to division and from community to community within those divisions based on a variety of factors. (*Id.* ¶ 11; Def.'s App. 439-49, Buss Decl., ¶ 30; Def.'s App. 485-95, Bailey Decl., ¶ 28; Def.'s App. 248-59, Bobin Decl., ¶ 29.) Some of the factors are the management structures developed by the various divisions, including the preferences and temperament of the individuals supervising the Field Managers. Also important are the number and types of homes in a community and the community's stage of development. Additional factors include weather conditions, labor force and building material issues, market conditions, local building codes, local building processes, and local customers' preferences. (Def.'s App. 1-38, Ex. A., Sum. Ex. Decl. Test.; Def.'s App. 730-34, Ex. B, Sum. Ex. Req. for Admis. Evid.)

Defendant has five different levels of Field Managers, Field Managers I - V. (Def.'s App. 917-22, Richter Decl., ¶ 13.) The job duties and responsibilities of Field Managers vary according to their level. (*Id.*) For example, higher-level Field Managers sometime supervise other Field

Managers, manage a larger number of homes, and assume job duties and responsibilities other than managing the building of homes. (*Id.*)

The differences in job duties among the various divisions are shown by Plaintiff's deposition testimony, the deposition testimonies of the six opt-in plaintiffs, the sworn declarations of current and former Field Managers who are putative class members, and the deposition testimonies of current and former Centex Field Managers. (Def.'s App. 1-729, Ex. A, Sum. Ex. Decl. Test.; Def.'s App. 735-891, Ex. C, Depo. Excerpts.) Moreover, the record includes declarations from sixty current and former Field Managers. (Def.'s App. 1-891.) The evidence submitted demonstrates a wide disparity in the duties performed by Plaintiff, the opt-in plaintiffs, and the additional former and current Centex Field Managers. Plaintiff, the opt-in plaintiffs, and the current and former Centex Field Managers performed a wide variety of administratively-exempt duties. (Exs. A and B.)[1] Weighing against conditional certification are: (1) Defendant's autonomous divisions and demonstrated differences in duties nationwide; (2) Plaintiff's failure to show that Field Managers in categories I, II, and III are more than superficially similar; and (3) the disparate factual and employment settings of the individual plaintiffs. The Court will now consider whether Defendant has raised defenses which appear to be individual to each plaintiff.

## Defendant's Defenses

After a thorough review of the record, the Court finds that Defendant asserts defenses that are individual to each Plaintiff. Defendant asserts the defense, *inter alia*, that Odem and opt-in plaintiff Chad Boehne are precluded, as a matter of law, from pursuing their claims against

---

[1] For examples of the disparity in duties and responsibilities, *see* Def.'s Resp. to Pl.'s Opposed Mot. for Cert. at 8-10.

Defendant by judicial estoppel. (Doc. 73 at 6-9.) Defendant claims that other putative class members, but not all of them, are barred by the statute of limitations. (*Id.*) Defendant contends that still other putative plaintiffs executed arbitration agreements that may preclude them from proceeding in this case. (Def.'s App. 786-90, Daigle Dep., Ex. 14, Separation Agreement ("Sep. Agrmt."); Def.'s App. 799-803, Hendershot Dep., Ex. 7, Sep. Agrmt.; Def.'s App. 751-57, Thomas Dep., Ex. 6, Sep. Agrmt; Def.'s App. 814-16, Arnold Dep., Ex. 4, Sep. Agrmt.) Defendant claims it is entitled to have a jury determine, *inter alia*, whether it has proved its claimed exemptions with respect to each plaintiff and if not, the amount of back pay it owes each plaintiff.

Additionally, Defendant shows that the job duties for many of the putative class members have changed dramatically during the relevant time period because of several reductions in force and resulting reassignment of duties. (Def.'s App. 778, Daigle Dep. at 42:10-16.) For example, one opt-in plaintiff testified that the job positions and roles in the various housing communities changed because of the downturn in the housing industry. (Def.'s App. 743-46, Thomas Dep. at 86:11-89:12.) Thus, a Field Manager may have been exempt from the FLSA during only part of his employment. These changes must be examined by the fact-finder to determine whether Defendant has shown an exemption to the FLSA. The variety of job duties and Defendant's defenses that are individual with respect to each putative plaintiff weigh heavily in favor of denying certification of a nationwide class which would likely to result in thousands of opt-in plaintiffs.

### Fairness and Procedural Considerations

Finally, the Court turns to fairness and procedural considerations, such as whether Plaintiff proposes a class that is sufficiently defined and manageable from the outset. Defendant points to *Reich v. Page & Addison, P.C.*, a case in this district in which the jury had to determine whether

legal assistants at a law firm were exempt from the FLSA. (Def.'s App. 892-910, Court's Charge to the Jury in Case No. 3:91-CV-2655-P (N.D. Tex. 1994).) The jury charge in *Reich* contained the following question for the jury with respect to each and every paralegal:

QUESTION NO. 1

    (a) During the period from January 1989 through the present, do you find that any of the following paralegal employees are exempt on a week-by-week basis from the overtime requirements of the Fair Labor Standards Act?

Answer:

| Kathy Broussard | Mary Fletcher |
|---|---|
| Yes_____ No_____ | Yes_____ No_____ |

(repeated for each paralegal).

(*Id.*) The Court agrees with Defendant that because the proposed class in this case involves so many distinct questions that must be posed to the jury, the class would be unmanageable. Here, the jury would have to answer an analogous question for each of the thousands of potential opt-in Field Managers. Additionally, the material change in job duties for many of the putative class members might require multiple questions for each potential opt-in plaintiff. The prospect that jury interrogatories would have to be answered literally thousands of times is raised by the factual differences among the plaintiffs in this case and Defendant's right to have the jury determine the facts relevant to its individual defenses. The jury questions, as well as other procedural considerations such as the prospect of multiple motions for summary judgment, weigh against conditional certification.

**Conclusion**

Plaintiff has not met his burden to show that the class would be manageable. The record demonstrates that the Court would have great difficulty in managing this case consistent with the due process rights of the parties. The job duties and responsibilities of the plaintiffs who have opted-in demonstrate the difficulties inherent in allowing even more plaintiffs to opt-in. Additionally, Defendant has shown that it has individualized defenses with respect to Plaintiff and the opt-in plaintiffs. All of these factors weigh heavily in favor of denial of conditional class certification.

### Recommendation

On reconsideration--as directed in the District Court's Orders of June 16, 2009 and November 4, 2009-- this Court finds that conditional class certification in this case would be futile, resulting only in unnecessary multiplication of the proceedings, a serious increase in the costs to all parties, and the inefficient or inappropriate use of precious judicial resources. The District Court should deny Plaintiff's Motion to Certify Class of an FLSA Collective Action (doc. 68) and dismiss without prejudice the opt-in plaintiffs who have joined this proceeding, allowing this case to proceed on Plaintiff's individual claims. *See Mooney*, 54 F.3d at 1214.

**SO RECOMMENDED** this 30th day of November, 2009.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).